## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (BALTIMORE DIVISON)

| | | |
|---|---|---|
| YOLANDA RENE TRAVIS, and<br>LEAH ZITTER,<br>on behalf of themselves and a class of<br>others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALDEN UNIVERSITY, LLC, and<br>LAUREATE EDUCATION, INC.<br><br>Defendants.<br><br>    Serve Defendants:<br>    650 S. Exeter St.<br>    Baltimore, Maryland 21202-4382 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.**   1:15-cv-235<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff Yolanda Rene Travis ("Plaintiff Travis") and Plaintiff Leah Zitter ("Plaintiff Zitter") (collectively, "Plaintiffs"), by and through undersigned counsel, bring this Class Action Complaint for Damages ("Complaint"), on behalf of themselves and all others similarly situated, against Defendant Walden University, LLC ("Walden University") and Defendant Laureate Education, Inc. ("Laureate").

### THE PARTIES

1.     Plaintiff Travis is, and has been at all relevant times, a resident and citizen of the State of California who has attended Walden University as a doctoral student from March 8, 2010 to the present.

1

2.      Plaintiff Zitter is, and has been at all relevant times, a resident and citizen of either the State of Illinois or State of California who attended Walden University from September 5, 2006 to 2012.

3.      Walden University is a limited liability company organized under the laws of the State of Florida with its principle place of business in Baltimore, Maryland. Walden University is, thus, a citizen of both Florida and Maryland. Upon information and belief, Walden University is a wholly owned subsidiary of Laureate.

4.      Laureate is a corporation organized under the laws of the State of Maryland with its principle place of business in Baltimore, Maryland. Laureate, thus, is a citizen of Maryland. Upon information and belief, Laureate is the sole parent company of Walden University.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain members of the Class and Defendants are citizens of different states.

6.      This Court has personal jurisdiction over Laureate because Laureate is organized under the laws of the Maryland, is authorized to do business in Maryland, conducts significant business in Maryland, and maintains its principle place of business in Maryland.

7.      This Court has personal jurisdiction over Walden University because Walden University is authorized to do business in Maryland, conducts significant business in Maryland, and maintains its principle place of business is Maryland.

8.      Venue is proper in the United States District Court for the District of Maryland (Baltimore Division), pursuant to 28 U.S.C. § 1391, because both Walden University and

Laureate maintain their principle places of business in this judicial district, engage in substantial business throughout this district, and many of the acts complained of herein emanated from and/or took place within this district.

## THE ORIGINS AND RAPID ASCENT OF WALDEN UNIVERSITY

9.      Walden University is a for-profit, online university that offers bachelor's and graduate level degrees to students, both domestically and internationally.

10.     Walden University was originally founded in 1970 as a university that awarded doctoral degrees in school administration for working adults. In 1995, Walden University began offering an online master's degree in education. Since that time, Walden University has rapidly increased its degree offerings to include bachelor's degrees, master's degrees, and doctoral degrees in a diverse array of disciplines.

11.     Enrollment at Walden University has increased significantly over the last 15 years. In 2001, Walden University had an enrollment of 2,082 students. In 2010, Walden University's enrollment had grown by nearly 2000% to 47,456 students.

12.     The exponential increase in enrollment has led to a similar trajectory for Walden University's revenue. In 2006, Walden University had revenue of approximately $190,700,000. As early as 2009, Walden University's revenue had nearly doubled to approximately $377,000,000.

13.     Like most for-profit colleges, the vast majority of Walden University's revenue is derived from federally funded student loans. In 2010, 78.8% ($348,000,000) of Walden University's revenue was derived from federal funds.

14.     As a for-profit college, Walden University necessarily devotes substantial portions of revenue to both marketing and profit. As of 2009, Walden University spent

approximately 26.8% of revenue ($101,000,000) on marketing and recruitment of new students. Likewise, in 2009, Walden University allocated approximately 26.8% of revenue ($101,000,000) to profit. The amount that Walden University spends on marketing and recruitment, as well as amounts allocated to profit, is higher than average for other for-profit colleges.

15.     In just three years between 2006 and 2009, the profit generated by Walden University increased from $33,000,000 to $101,000,000.

16.     In 2009, Walden University spent only $1,574 per student on instruction compared to $2,230 per student on marketing. Even more striking, Walden University realized $1,915 in profits per student. By way of comparison, the University of Minnesota spent $13,247 per student on instruction during the same time period.

17.     Walden University continues to increase the amount of revenue it allocates to marketing and recruitment of new students. The increased marketing and recruitment budget results in increased revenue. The increased revenue results in increased profits for the shareholder(s) of Walden University. As the total revenue figure grows, the cycle and exponential enrollment growth continues. However, this rapid expansion of enrollment, degree offerings, and fields of study has caused significant logistical issues for Walden University students.

**FACTUAL ALLEGATIONS COMMON TO THE PLAINTIFFS AND THE CLASS**

18.     Walden University originated as an institution that allowed working adults to obtain graduate level degrees in school administration. Despite the unprecedented growth of Walden University's bachelor's degree program, the school continues to offer a diverse selection of master's and doctoral degrees to online students.

19.     Upon information and belief, Walden University presently offers multiple master's degrees.

20.     Upon information and belief, Walden University presently offers multiple doctoral degrees.

21.     Master's and doctoral degrees differ from a bachelor's degree in several important respects; however, most pertinent to this Complaint, master's and doctoral degrees require independent study and research by the student.

22.     At Walden University, some master's degree candidates must go through the process of completing a thesis.

23.     Similarly, at Walden University, each doctoral degree candidate must go through the process of completing a dissertation.

24.     Both the thesis and dissertation require the consultation and approval of faculty and institutional entities at Walden University before the degrees may be completed. In fact, it is imperative that students be able to work closely with the faculty members, whose approval is necessary for the advancement of the thesis or dissertation.

## THE DOCTORAL STUDENT'S DISSERTATION PROCESS

25.     There are five stages of the dissertation process: the Premise, Prospectus, the Proposal, conducting the study and/or research that is the subject of the dissertation, and defending the completed dissertation.

26.     Importantly, at each stage of the process, the student must gain approval of the dissertation supervisory committee chair and member. Further, at each stage of the dissertation process, the student depends on the timely response of the dissertation supervisory committee chair and member to advance in the process.

27.     The first step of the dissertation process is to enroll in the dissertation course for a student's respective field of study. Walden University represents that the dissertation can be completed in as few as thirteen months if planned properly.

28.     Once enrolled in the dissertation course, the student must develop and draft a Premise. The Premise is a brief document which identifies a preliminary topic for the dissertation. The Premise is also used to locate faculty members who will form the dissertation supervisory committee.

29.     After determining a topic and drafting the Premise, the student must nominate the dissertation supervisory committee. The dissertation supervisory committee has two members – a committee chair and a committee member. The dissertation supervisory committee is supposed to provide guidance to the student on both the content and the methodology of their dissertation. Further, once the committee chair and member accept their nominations, they must approve of the Premise.

30.     The Prospectus is meant to build on the Premise and serve as the foundation of the Proposal. The goal of the Prospectus is to develop a plan for the Proposal and ultimately outline the basic structure of the dissertation. The Prospectus must be approved by both the dissertation supervisory committee chair and the committee member before proceeding to the next step, the Proposal.

31.     The Proposal is essentially the first three chapters of the dissertation, outlining the rationale for conducting the study and describing the design and methodology of the study. Students must work closely with the dissertation supervisory committee chair and member to complete the Proposal.

32.     The Proposal must be approved by the dissertation supervisory committee chair and member.

33.     In addition to approval by the dissertation supervisory committee chair and member, the Institutional Review Board ("IRB") must approve the Proposal.

34.     After approval by the IRB, the student must conduct the study and/or research that is the subject of the dissertation. After completing the study and/or research, the student then completes the dissertation.

35.     The dissertation supervisory committee chair and member must approve the dissertation; it is then submitted to the University Research Review ("URR") for approval.

36.     At this point, the student must orally defend the dissertation.

37.     After successful oral defense of the dissertation and committee approval of the dissertation, the student has essentially completed the dissertation process and it may be submitted for publishing.

## THE MASTER'S STUDENT'S THESIS PROCESS

38.     Once a master's degree student has completed the necessary coursework, Walden University allows the student to begin the thesis process. A thesis is the master's degree corollary to the dissertation in the doctoral degree program.

39.     Much like the dissertation supervisory committee, the first step of the thesis process is nominating a thesis supervisory committee chairperson. Simultaneous to the submission of a committee chair nomination, the student must submit a proposed Prospectus that provides an outline of the subject matter and road-map to the student's thesis.

40.     Once the student has successfully obtained a thesis supervisory committee chair, the student should work closely with the committee chair to finalize the Prospectus. Once the

thesis supervisory committee chair approves the Prospectus, it is submitted to the URR with a request to have a URR member assigned to the thesis supervisory committee.

41.     The URR member will conduct a review of the Prospectus and return the results to the student and the thesis supervisory committee.

42.     The student goes through a similar process with the Proposal. Initially, the student submits the Proposal to the thesis supervisory committee chair. Once the committee chair is satisfied with the Proposal, the Proposal and necessary evaluation documentation are submitted to the URR member.

43.     If the thesis supervisory committee chair and URR member are satisfied, then the Proposal is submitted to the IRB. After obtaining IRB approval of the Proposal, the student then begins to draft the thesis.

44.     After the thesis supervisory committee chair approves the drafted thesis, it is ready for oral presentation.

45.     Following final approval of the thesis supervisory committee, the thesis is submitted to the URR for final review. In addition, the thesis is submitted to the Walden University Chief Academic Officer for final review. If both the URR and the Chief Academic Officer approve of the thesis, then the student has successfully completed the thesis and may graduate.

### SYSTEMATIC PROLONGING OF THE THESIS AND DISSERTATION PROCESS

46.     The dissertation and thesis processes described above are plagued by lack of institutional oversight and a complete disregard for Walden University's own policies creating an endless process that drags on for quarter after quarter, year after year for students. This

prolonged process causes students to spend more money on tuition than was represented to them by Walden University.

47.     First, the process for students to obtain a dissertation or thesis supervisory committee chair and member is extremely difficult. Even worse, retaining the committee chair and committee member throughout the entire process is an additional challenge.

48.     Walden University instructs students to consult the Faculty Expertise Directory to find Walden University faculty capable of serving on the dissertation or thesis supervisory committee as either committee chair or committee member. The dissertation supervisory committee must feature an expert on the student's content and also an advisor on methodology. In order to obtain a dissertation or thesis supervisory committee chair and member, the student must submit a Committee Member Nomination form along with a copy of the Premise to the nominee. If the nominee agrees to serve on the committee and that nominee's service is approved by the program director, then the student may begin finalizing the Premise.

49.     However, the committee chair and member nomination process does not run as smoothly as Walden University leads students to believe. First, the student may spend multiple months attempting to obtain the agreement of a faculty member to serve as a dissertation or thesis supervisory committee chair or member.

50.     Even worse, once the faculty members agree to serve in the roles of dissertation or thesis supervisory committee chair and member, they frequently quit, are fired, or stop responding to the student. Retention of committee chairs and committee members is a systemic, institutional issue that is not regulated whatsoever by Walden University.

51.     When a Walden University student's dissertation or thesis supervisory committee member or committee chair chooses to quit his or her role on the committee, the student essentially starts over from scratch.

52.     The student must locate an additional faculty member to serve in the vacated role. However, even if the student locates a new faculty member to serve in the role, the new committee chair or member may disagree with the student's Prospectus or Proposal. As a result, regardless of whether or not the prior committee chair or member approved the Prospectus or Proposal, the student must now begin the process anew and address the new committee chair or member's concerns.

53.     Further, upon information and belief, the turnover rate of dissertation and thesis supervisory committee chairs and members is extremely high. This high turnover results in Walden University students being caught in a never-ending cycle of finding supervisory committee chairs and/or members, and gaining their approval, only to start the process again when the committee chair or member leaves Walden University or simply stops responding.

54.     In addition, Walden University students depend on the dissertation and thesis supervisory committee chair and member for guidance and feedback during the entire process. However, that much-needed counsel is consistently lacking, and frequently nonexistent.

55.     Walden University has a policy that the supervisory committee chair and member must respond to requests from students for commentary, feedback, or even formal review within fourteen business days.

56.     However, Walden University faculty serving in supervisory committee capacities do not abide by this fourteen business day response requirement. This is especially frustrating for

Walden University students because the students literally cannot progress beyond the Prospectus or Proposal without the approval of the supervisory committee chair and member.

57.     Upon information and belief, most Walden University doctoral and master's students experience a breach of the fourteen day response period at least once – and usually many more times – during the course of their dissertation or thesis. Walden University's breach of its own rules thus unnecessarily prolongs students' efforts to obtain their degrees, and results in students extending their enrollment in their respective dissertation or thesis course and paying additional tuition.

58.     Upon information and belief, most Walden University doctoral and master's students experience a loss of a supervisory committee chair or member at least once – and usually many more times – during the course of their dissertation or thesis. Walden University's failure to regulate the supervisory committee program thus unnecessarily prolongs students' efforts to obtain their degrees, and results in students extending their enrollment in their respective dissertation or thesis course and paying additional tuition.

59.     Dissertation and thesis courses at Walden University can cost upwards of $2,910 per academic quarter; as such, to be forced to enroll in unnecessary, additional dissertation or thesis courses is highly expensive for students and highly lucrative for Walden University.

60.     It is clear that Walden University has a combination of issues, including but not limited to: (1) logistical problems due to rapid enrollment expansion; (2) failure to enforce its own fourteen day response period for faculty members serving as dissertation and/or thesis supervisory committee chairs and members; (3) failure to regulate the rampant retention issues among faculty members serving as dissertation and/or thesis supervisory committee chairs and members;  and (4) failure to honestly and transparently represent to master's and doctoral

students the true cost of and time necessary to complete their degrees as a result of the previously discussed failings.

## PLAINTIFF TRAVIS' EXPERIENCE AT WALDEN UNIVERSITY

61.     Plaintiff Travis is a student at Walden University pursuing her PhD in Psychology with an emphasis in clinical psychology.

62.     Plaintiff Travis enrolled in her PhD program in the Spring Quarter of 2010.

63.     Between Spring Quarter of 2010 and Fall Quarter of 2012, Plaintiff Travis completed the following doctoral-level courses:

    a.   Foundations for Graduate Study;

    b.   History and Systems of Psychology;

    c.   Psychology of Personality;

    d.   Biopsychology;

    e.   Cognitive Psychology;

    f.   Social Psychology;

    g.   Statistics I;

    h.   Research Design;

    i.   Tests and Measurement;

    j.   Interview and Observation Strategies;

    k.   Statistics II;

    l.   Psych Assessment: Cognitive;

    m.   Psychotherapy Interventions I;

    n.   Psychotherapy Interventions II;

    o.   Psych Assessment: Personality;

    p.  Psychology and Social Change;

    q.  Ethics Standards in Professional Practice;

    r.  Advanced Psychopathology;

    s.  Multicultural Counseling;

    t.  Psychopharmacology; and

    u.  Culture and Psychology.

64.    Plaintiff Travis received an "A" in each of those courses except for three in which she received a "B."

65.    Plaintiff Travis also completed seventeen credit hours of required Practicum and Internship courses, obtaining the necessary satisfactory grades to advance from each of those courses.

66.    Plaintiff Travis also completed 50 credit hours of required Residency, Academic Year in Residence and Professional Conferences courses, obtaining the necessary satisfactory grades to advance from each of those courses.

67.    Upon completion of those required courses for a PhD in Psychology with an emphasis in clinical psychology, Plaintiff Travis began her PhD dissertation in the Fall Quarter of 2012.

68.    Plaintiff Travis has been enrolled in dissertation course for her PhD program during the Fall Quarter of 2012, Winter Quarter of 2012, Summer Quarter of 2013, Spring Quarter of 2013, Summer Quarter of 2014, and the Fall Quarter of 2014. Plaintiff Travis has paid $2,910; $2,910; $2,970; $2,595; $2,595; $2,595 for each of those respective academic quarters of dissertation courses. In total, Plaintiff Travis has paid $16,575 for dissertation courses. However,

progress on her dissertation remains elusive for this "A" student because of the systematic manner in which Walden University has delayed her.

69.     Plaintiff Travis began the process of securing a dissertation supervisory committee chair and committee member approximately one year prior to beginning her dissertation course work. On February 6, 2011, Dr. Monica Sutton agreed to be the dissertation supervisory committee member for Plaintiff Travis' dissertation. On February 8, 2011, Dr. Leslie Jackson agreed to become the dissertation supervisory committee chair for Plaintiff Travis' dissertation.

70.     On July 4, 2012, Plaintiff Travis informed Dr. Sutton and Dr. Jackson that she would begin her dissertation coursework during the Fall Quarter of 2012. On July 5, 2012, Dr. Jackson informed Plaintiff Travis that she would no longer serve as her dissertation supervisory committee chair, so Plaintiff Travis was forced to find a replacement.

71.     On July 9, 2012, Dr. Richard Cicchetti agreed to be Plaintiff Travis' dissertation supervisory committee chair. On July 21, 2012, Plaintiff Travis submitted her nomination forms for Dr. Sutton and Dr. Cicchetti. On that same day, Plaintiff Travis submitted her Premise to both Dr. Sutton and Dr. Cicchetti.

72.     On July 24, 2012, the Plaintiff Travis' Premise was approved by Dr. Cicchetti and Dr. Sutton. On August 9, 2012, the Program Director, Dr. Trybus, rejected Dr. Cicchetti as the chair of Plaintiff Travis' dissertation supervisory committee. Over the course of the next several weeks, Plaintiff Travis requested the help of many administrators in the Walden University Psychology Department for aid in finding a dissertation committee chair, but had no success.

73.     On September 4, 2012 (the first date that Plaintiff Travis' first quarter of dissertation course work began), Dr. Trybus officially approved Dr. Cicchetti to serve as Plaintiff Travis' dissertation supervisory committee chair.

74.     On October 3, 2012, Plaintiff Travis submitted her Prospectus to Dr. Sutton for review and comment. Dr. Sutton did not respond with comments and revisions until over a month later on November 13, 2012.

75.     On November 26, 2012, Plaintiff Travis submitted her Prospectus to Dr. Cicchetti for review and approval. Dr. Cicchetti agreed to review the Prospectus without the suggestions from Dr. Sutton, due to not hearing from Dr. Sutton during the review process. Dr. Cicchetti agreed to submit the Prospectus to Dr. Sutton for her approval before submitting it to the Program Director, Dr. Trybus.

76.     On December 13, 2012, Dr. Cicchetti still had not received a response from Dr. Sutton regarding Plaintiff Travis' Prospectus after submitting the Prospectus to Dr. Sutton in November 2012.

77.     On January 14, 2013, Dr. Cicchetti and Dr. Sutton approved the Prospectus and submitted it to Dr. Trybus for his approval.  Dr. Trybus did not respond until 21 days later on February 4, 2013, when he rejected the Prospectus.

78.     Due to this rejection of her Prospectus, Plaintiff Travis did not participate in the dissertation course during the Spring Quarter of 2013. Plaintiff Travis took the time to strengthen her Prospectus and again submitted it to Dr. Sutton and Dr. Cicchetti on May 4, 2013.

79.     On May 4, 2013, Dr. Sutton informed Plaintiff Travis that she was resigning from Walden University and could no longer server as Plaintiff Travis' dissertation supervisory committee chair.

80.      On May 28, 2013, Dr. Marc Mooney was provided with a copy of the Prospectus. On May 29, 2013, Dr. Mooney agreed to be the dissertation supervisory committee member for Plaintiff Travis. Yet, Plaintiff Travis received no response from Dr. Mooney regarding her Prospectus for many months even after repeated emails and repeatedly providing him with copies of the Prospectus

81.     On July 30, 2013, a full 62 days after Plaintiff Travis initially sent Dr. Mooney her Prospectus, Dr. Mooney answered Plaintiff Travis and apologized for not responding earlier, writing "[t]his is unacceptable. I really do understand that time is money."

82.     On August 1, 2013, Dr. Cicchetti submitted the Prospectus to the Research Department for approval. Dr. Mooney stated that he submitted the Prospectus to the Research Department as well; however, the Research Department indicated that they did not receive the necessary documents from Dr. Mooney.

83.     Due to her lack of progress caused by Walden University's systemic delays, Plaintiff Travis received approval for a leave of absence from the dissertation coursework on August 29, 2013.

84.     On September 5, 2013, Walden University informed Plaintiff Travis that Dr. Mooney was no longer a faculty member of Walden University and she would need to locate another dissertation supervisory committee member.

85.     On September 24, 2013, Dr. Marlo Walters was officially assigned to Plaintiff Travis' dissertation supervisory committee as a member.

86.     On October 16, 2013, the Research Department confirmed that Dr. Cicchetti and Dr. Walters submitted the Prospectus and necessary documentation. Dr. Trybus then had fourteen days to respond with approval or revisions for the Prospectus.

87.     Over a month after submitting the Prospectus to Dr. Trybus, her Prospectus was rejected on December 2, 2013.

88.     As a result, Plaintiff Travis again revised the Prospectus to appease Dr. Trybus.

89.     On January 1, 2014, Dr. Cicchetti informed Plaintiff Travis that he would give approval or revisions on the revised Prospectus by "the weekend." On February 2, 2014, Dr. Cicchetti apologized for taking longer than fourteen days to review the Prospectus.

90.     Due to delays, Plaintiff Travis requested to change her graduation date from March of 2014 to June of 2015.

91.     On June 25, 2014, the Research Department confirmed receiving the Prospectus and all necessary documentation from Dr. Walters and Dr. Cicchetti. On July 9, 2014, the Prospectus was approved.

92.     On August 1, 2014, Plaintiff Travis submitted her Proposal to Dr. Cicchetti and Dr. Walters. On that same day, Plaintiff Travis requested Walden University assign a URR member. Over five weeks later, Walden University appointed Dr. Hannah Lerman as URR member to review the Proposal.

93.     Over the course of Plaintiff Travis' time at Walden University, she has experienced inexplicable delays, repeated breaches of the mandatory fourteen day faculty response deadline, multiple instances of faculty members failing to fulfill their responsibilities as dissertation supervisory committee chairs and members, and gone through the process of nominating faculty members to serve on the dissertation supervisory committee multiple times.

94.     As of now, Plaintiff Travis has paid for four quarters of dissertation course work, been forced to take a leave of absence due to financial issues caused by Walden University, and is only now, after two years, at the Proposal stage of her dissertation.

95.     In sum, Walden University has unjustly prolonged Plaintiff Travis' work toward her doctoral degree and extracted extra tuition payments from Plaintiff Travis for dissertation coursework that would never have been necessary if Walden University followed its own policies.

**PLAINTIFF ZITTER'S EXPERIENCE AT WALDEN UNIVERSITY**

96.     Plaintiff Zitter was formerly a student at Walden University pursuing her PhD in Psychology.

97.     Plaintiff Zitter enrolled in her PhD program in the Spring Quarter of 2006.

98.     Between Fall Quarter of 2006 and 2012, Plaintiff Zitter completed the following doctoral-level courses:

a.   Foundations for Graduate Study;

b.   History and Systems of Psychology;

c.   Lifespan Development

d.   Biopsychology;

e.   Cognitive Psychology;

f.   Social Psychology;

g.   Statistics I;

h.   Research Design;

i.   Tests and Measurement;

j.   Philosophy Found in Psychology Research;

k.   Statistics II;

l.   Statistics III;

m.   Qualitative Analysis;

    n.  Psychology and Social Change;

    o.  Ethics Standards in Professional Practice;

    p.  Psychology and Personality;

    q.  Contemporary Issues in Personality;

    r.  Advanced Methods Mixed Qualitative and Quantitative;

    s.  Clinical Neuropsychology;

    t.  Health Psychology; and

    u.  Psychoneuroimmunology;

99.    Plaintiff Zitter earned a 3.27 Grade Point Average for the above courses.

100.    Plaintiff Zitter also completed twelve credit hours of required Residency, obtaining the necessary satisfactory grades to advance from each of those courses.

101.    Upon completion of those required courses for a PhD in Psychology, Plaintiff Zitter began her PhD dissertation in 2009.

102.    Plaintiff Zitter enrolled in, paid for and completed 27 hours of dissertation course work over five quarters, obtaining the necessary satisfactory grades in each course.

103.    Over the course of her time at Walden University, faculty members habitually failed to respond to Plaintiff Zitter within the required fourteen day period.

104.    In addition, Plaintiff Zitter was forced to seek new dissertation supervisory committee members due to faculty resignations, faculty dismissals, and unresponsiveness of faculty six times.

105.    Over the course of Plaintiff Zitter's time at Walden University, she has experienced inexplicable delays, repeated breaches of the mandatory fourteen day faculty response deadline, multiple instances of faculty members failing to fulfill their responsibilities as

dissertation supervisory committee chairs and members, and gone through the process of nominating faculty members to serve on the dissertation supervisory committee multiple times.

106.    As a result, Plaintiff Zitter withdrew from Walden University due to financial constraints and the need to care for her children as a single mother.

107.    As of now, Plaintiff Zitter has paid for five dissertation courses (27 credit hours) and is no closer to obtaining her PhD than she was in 2009.

108.    In sum, Walden University has unjustly prolonged Plaintiff Zitter's work toward her doctoral degree and extracted extra tuition payments from Plaintiff Zitter for dissertation coursework that would never have been necessary if Walden University followed its own policies.

## CLASS ACTION ALLEGATIONS

109.    Plaintiffs believe that Plaintiff Zitter and Plaintiff Travis' experiences at Walden University are, regrettably, incredibly common.

110.    Plaintiffs request the Court certify this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

111.    For Plaintiff's claims of Unjust Enrichment (First Cause of Action), Breach of Contract (Second Cause of Action), and Violations of the Maryland Consumer Protection Act (Third Cause of Action) Plaintiffs seek to certify the following nationwide Class pursuant to Rule 23:

> All current or former students at Walden University who, from three years prior to the filing of this Complaint until the Court certifies the Class, enrolled in and paid for a doctoral degree dissertation course and/or a master's degree thesis course at Walden University.

112.    In the alternative, should the Court decide not to certify a nationwide class under Maryland law, Plaintiff seeks a California Sub-Class. For Plaintiff's claims of Violations of the

20

California Unfair Competition Law (Fourth Cause of Action), Plaintiffs seek to certify the following California Sub-Class Class pursuant to Rule 23:

> All California residents who are current or former students at Walden University who, from four years prior to the filing of this Complaint until the Court certifies the Class, enrolled in and paid for a doctoral degree dissertation course and/or a master's degree thesis course at Walden University.

113.    In the alternative, should the Court decide not to certify a nationwide class under Maryland law, Plaintiff seeks an Illinois Sub-Class. For Plaintiff's claim of Violations of the Illinois Consumer Protection and Deceptive Business Practices Act (Fifth Cause of Action), Plaintiffs seek to certify the follow Illinois Sub-Class Class pursuant to Rule 23:

> All Illinois residents who are current or former students at Walden University who, from three years prior to the filing of this Complaint until the Court certifies the Class, enrolled in and paid for a doctoral degree dissertation course and/or a master's degree thesis course at Walden University.

114.    This action is brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal rules of Civil Procedure.

115.    Numerosity: Upon information and belief, the members of the Class number in at least the thousands. As a result, the Class is so numerous that joinder of all members in a single action is impracticable. The members of the Class should be readily identifiable from academic records and enrollment records of Walden University and Laureate. The disposition of these claims will provide substantial benefits to the Class.

116.    Commonality and Predominance: There is a well-defined community of interest and common questions of law and fact which predominate over any questions affecting only individual members of the Class. These common legal and factual questions which will generate common answers which are apt to drive the resolution of the litigation do not vary between members of the Class. These common questions may be determined without reference to

individual circumstances and will provide common answers. The following represent a non-exhaustive list of common questions:

    a.   Whether Walden University maintains institutional control over its master's and doctoral programs;

    b.   Whether Walden University systematically permits faculty members to resign dissertation and thesis supervisory committee chair and member positions;

    c.   Whether Walden University has a system in place to ensure that Walden University master's and doctoral students are able to obtain faculty members to serve on dissertation and thesis supervisory committees;

    d.   Whether Walden University enforces the fourteen day response time for dissertation and thesis supervisory committee chair and member positions to student requests for approval or revisions;

    e.   Whether Walden University and Laureate have been unjustly enriched by their conduct at the expense of the Class;

    f.   Whether Walden University and Laureate have breached their contracts with the Class;

    g.   Whether Walden University and Laureate have violated the Maryland Consumer Protection Act by virtue of their conduct toward the Class;

    h.   Whether Walden University and Laureate have violated the California Unfair Competition Law by virtue of their conduct toward the Class;

    i.   Whether Walden University and Laureate have violated the Illinois Consumer Fraud and Deceptive Trade Practices Act by virtue of their conduct toward the Class; and

    j.   Whether, as a result of Walden University and Laureate's conduct, Plaintiffs and the Class are entitled to damages, restitution, equitable belief and/or other relief, and, if so, the amount and nature of such relief.

117.   Typicality: The representative Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the class were injured by the same wrongful practices in which Walden University and Laureate have engaged. Further, the Plaintiffs and members of the Class seek relief based on the same legal theories. There may be differences in the amount of

damages sustained by each member of the Class; however, Class-wide and individual damages can be determined readily. Individual damages issues will not bar Class certification.

118.    Adequacy of Representation: Plaintiffs will fairly and adequately protect and pursue the interests of the Class. Plaintiffs understand the nature of the claims herein, their role in the proceedings, and have and will vigorously represent the class. Plaintiffs have retained Class counsel who are experienced in and qualified in prosecution of consumer protection class actions and other forms of complex litigation. Neither Plaintiffs, nor their attorneys, have interests which are contrary to or conflict with those of the Class.

119.    Superiority and Manageability: A class action is superior to all other available methods of adjudication of this lawsuit. Because individual litigation of the claims of Class members is economically infeasible and judicially impracticable, the class action device is the only way to facilitate adjudication of Plaintiffs' and the Class' claims. Although the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member resulting from Walden University and Laureate's wrongful conduct, are not significant enough for experienced counsel to handle on an individual basis. Further, due to the conduct of Walden University and Laureate, Plaintiffs and members of the Class have significant debt burdens from their time at Walden University and cannot afford to hire counsel to pursue their claims on an hourly-fee basis. Even assuming individual Class members could afford it, the likelihood of individual claims being pursued by the Class members is remote. Even then, the burden on the judicial system would be unjustifiable in light of the class action device. Individual members of the Class do not have significant interest in individually controlling the prosecution of separate actions and individualized litigation could result in varying, inconsistent or

contradictory judgments. Plaintiffs know of no reason that this litigation should not proceed as a class action.

120.    The nature of notice to the class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by best notice possible under the circumstances including, *inter alia*, email, publication in major newspapers, and maintenance of a website.

## FIRST CAUSE OF ACTION
### Unjust Enrichment

121.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

122.    Plaintiffs bring this cause of action on behalf of a nationwide Class under Maryland common law. Walden University and Laureate have each engaged in unjust conduct to the detriment of Plaintiffs and each member of the Class.

123.    Plaintiffs and each member of the Class provided value to Walden University and Laureate in the form of tuition payments for master's thesis courses and/or doctoral dissertation courses.

124.    Walden University and Laureate appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiffs and each member of the Class.

125.    Walden University and Laureate have not honored the Walden University commitment to provide its students with feedback on master's thesis and doctoral dissertation coursework within the required fourteen day period.

126.     Walden University and Laureate have either encouraged or permitted to happen the continual resignation, unresponsiveness, and/or dismissal of faculty members serving in the capacity of master's thesis or doctoral dissertation supervisory committee chair or member.

127.     This unjust conduct on the part of Walden University and Laureate has resulted in Walden University master's and doctoral students enrolling in thesis and dissertation courses that would not be necessary if Walden University and Laureate upheld the fourteen day response requirement and sufficiently managed the role of faculty in supervisory committee roles.

128.     Despite their inequitable conduct, Walden University and Laureate have retained the tuition payments made by Walden University master's and doctoral students pursuing thesis and dissertation coursework.

129.     As a result, Walden University and Laureate have been unjust enriched to the detriment of Plaintiffs and the members of the Class.

## SECOND CAUSE OF ACTION
### Breach of Contract

130.     Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

131.     Plaintiffs bring this cause of action on behalf of a nationwide Class under Maryland common law. Walden University and Laureate have each systematically violated their contracts with Plaintiffs and each member of the Class.

132.      Plaintiffs and each member of the Class contracted with Walden University and Laureate to obtain master's and/or doctoral education services.

133.     Plaintiffs and each member of the Class provided value to Walden University and Laureate in the form of tuition payments for master's thesis courses and/or doctoral dissertation courses as contracted.

134.    Walden University and Laureate have not honored the Walden University contractual commitment to provide its students with feedback on master's thesis and doctoral dissertation coursework within the required fourteen day period. The fourteen day response period was a material term of the contracts with Plaintiffs and each member of the Class.

135.    Walden University and Laureate have either encouraged or permitted to happen the continual resignation, unresponsiveness, and/or dismissal of faculty members serving in the capacity of master's thesis or doctoral dissertation supervisory committee chair or member.

136.    This breach of contract on the part of Walden University and Laureate has resulted in Walden University master's and doctoral students enrolling in thesis and dissertation courses that would not be necessary if Walden University and Laureate upheld the fourteen day response requirement and sufficiently managed the role of faculty in supervisory committee roles.

137.    Despite their breach of contract, Walden University and Laureate have retained the tuition payments made by Walden University master's and doctoral students pursuing thesis and dissertation coursework.

138.    Walden University and Laureate have breached their contracts for master's and doctoral education services with Plaintiffs and each members of the Class. Walden and Laureate's breach has caused damage to Plaintiffs and each member of the Class in the form of additional tuition payments for master's thesis and doctoral dissertation courses.

### THIRD CAUSE OF ACTION
### Violations of the Maryland Consumer Protection Act
### Md Code, § 13-301 of the Commercial Law Article, *et seq.*

139.    Plaintiffs and the members of the Class reallege and incorporate the preceding allegations by reference as if set forth fully herein.

140.     Plaintiffs bring this cause of action on behalf of a nationwide Class. Walden University and Laureate have engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

141.     Md. Code, § 13-303(3) of the Commercial Law Article ("C.L.") specifically prohibits the use of unfair or deceptive trade practices in the "offer for sale of course credit or other educational services."

142.     By engaging in the above-described acts and practices, Walden University and Laureate have each committed one or more acts of unfair and deceptive trade practices as those terms are defined in C.L. § 13-301.

143.     Walden University and Laureate made false and misleading statements about the nature, quality, length, and cost of their master's and doctoral education services.

144.     Walden University and Laureate knowingly failed to state material facts about their master's and doctoral education services that would tend to deceive students.

145.     Walden University and Laureate knew that the master's thesis and doctoral dissertation coursework was and continues to by systematically prolonged by the violations discussed above.

146.     In failing to disclose the failure of Walden University faculty members to respond during the required fourteen day period to master's thesis and doctoral dissertation students, Walden University and Laureate have knowingly and intentionally concealed material facts.

147.     In failing to disclose the complete inability of Walden University to properly regulate the master's thesis and doctoral dissertation supervisory committee nomination and retention process, Walden University and Laureate have knowingly and intentionally concealed material facts.

148.     Walden University and Laureate's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of Defendants' business. These actions constitute unfair and deceptive trade practices in violation of C.L. § 13-303.

149.     Plaintiffs and members of the Class relied on these representations and omissions in the course of pursuing their master's and doctoral degrees.

150.     As a direct and proximate result of Walden University and Laureate's unfair and deceptive practices and acts, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

**FOURTH CAUSE OF ACTION**
**(Alternative California Sub-Class)**
**Violations of the California Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq.***

151.     Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

152.     Plaintiffs bring this cause of action on behalf of a Class of California residents. Walden University and Laureate have engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

153.     By engaging in the above-described acts and practices, Walden University and Laureate have each committed one or more acts of unfair competition within the meaning of the Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq*.

154.     Plaintiff Travis and each member of the Class reasonably expected that their master's thesis and doctoral dissertation education services would not be designed so that the students would be required to take many more quarters of thesis and dissertation coursework than necessary to obtain a master's degree or PhD.

28

155.    Walden University and Laureate knew that the master's thesis and doctoral dissertation coursework was and continues to by systematically prolonged by the violations discussed above.

156.    In failing to disclose the failure of Walden University faculty members to respond during the required fourteen day period to master's thesis and doctoral dissertation students, Walden University and Laureate have knowingly and intentionally concealed material facts.

157.    In failing to disclose the complete inability of Walden University to properly regulate the master's thesis and doctoral dissertation supervisory committee nomination and retention process, Walden University and Laureate have knowingly and intentionally concealed material facts.

158.    Walden University and Laureate's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of Defendants' business. These unfair and deceptive trade practices and acts were and continue to be capable of deceiving a substantial portion of the public pursuing master's and doctoral degrees.

159.    The injury to Plaintiffs and members of the Class by this conduct greatly outweighs any alleged benefit to students or competition under the circumstances.

160.    As a direct and proximate result of Walden University and Laureate's unfair and deceptive practices and acts, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

161.    Each of Walden University's acts and practices are unlawful because they violate Civil Code §§ 1572, 1688, 1709-1710, 1770(a)(5), 1770(a)(7), 1770(a)(9), (1770(a)(19) and California Commercial Code §§ 17500, *et seq*. Specifically, Walden University and Laureate marketed and sold master's and doctoral education services while intentionally withholding the

systematic slowdown that exists within the degree programs that causes students to enroll in more coursework and pay more tuition than necessary. Walden University and Laureate were and are under a duty to disclose this systematic prolonging of education.  The marketing, sales and representations to potential students, as well as the concomitant omissions, were and are material.

162.    Each of Walden University and Laureate have been unjustly enriched and should be required to make restitution, ordered to disgorge improper tuition payments, provide injunctive relief to Plaintiffs and members of the Class, and any other relief allowed under the UCL, plus interest, attorneys' fees and costs pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

**FIFTH CAUSE OF ACTION**
**(Alternative Illinois Sub-Class)**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, *et seq.***

163.    Plaintiff Zitter realleges and incorporates the preceding allegations by reference as if set forth fully herein.

164.    Plaintiff Zitter brings this cause of action on behalf of a Class of Illinois residents. Walden University and Laureate have engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

165.    By engaging in the above-described acts and practices, Walden University and Laureate have each committed one or more acts of unfair competition within the meaning of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.

166.    Plaintiff Zitter and each member of the Class reasonably expected that their master's thesis and doctoral dissertation education services would not be designed so that the

students would be required to take many more quarters of thesis and dissertation coursework than necessary to obtain a master's degree or PhD.

167.    Walden University and Laureate knew that the master's thesis and doctoral dissertation coursework was and continues to by systematically prolonged by the violations discussed above. Upon information and belief, Walden University and Laureate intended for that Plaintiff Zitter and members of the Class be prolonged in their coursework so as to receive additional tuition funds from them.

168.    In failing to disclose the failure of Walden University faculty members to respond during the required fourteen day period to master's thesis and doctoral dissertation students, Walden University and Laureate have knowingly and intentionally concealed material facts.

169.    In failing to disclose the complete inability of Walden University to properly regulate the master's thesis and doctoral dissertation supervisory committee nomination and retention process, Walden University and Laureate have knowingly and intentionally concealed material facts.

170.    Walden University and Laureate's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of Defendants' business.

171.    As a direct and proximate result of Walden University and Laureate's unfair and deceptive practices and acts, Plaintiff Travis and the Class have suffered and will continue to suffer actual damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the Class request that the Court enter an order or judgment against Walden University and Laureate as follows:

A.      Certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.      Awarding Plaintiffs and other members of the Class damages and all other relief available under the claims alleged;

C.      Awarding Plaintiffs and other members of the Class pre-judgment and post-judgment interest as a result of the wrongs complained of herein;

D.      Awarding Plaintiffs and other members of the Class their costs and expenses in this litigation, including reasonable attorney's fees and other costs of litigation;

E.      Requiring Walden University and Laureate to disgorge the revenue earned through the excessive master's thesis and doctoral dissertation coursework;

F.      Enjoining Walden University and Laureate from engaging in the conduct described herein;

G.      Awarding Plaintiffs and other members of the Class restitution; and

H.      Awarding such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: January 27, 2015                    Respectfully Submitted,

**JOSEPH, GREENWALD & LAAKE, P.A.**


*/s/ Timothy F. Maloney*
Timothy F. Maloney          (Bar No. 03381)
Matthew M. Bryant          (Bar No. 18014)
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Telephone:  (301) 220-2200
Facsimile:   (301) 220-1214
Email:       tmaloney@jgllaw.com
             mbryant@jgllaw.com


**EDGAR LAW FIRM LLC**
John F. Edgar              (MO 47128)
(*to be admitted pro hac vice*)
Alexander T. Ricke          (MO 65132)
(*to be admitted pro hac vice*)
1032 Pennsylvania Ave.
Kansas City, MO 64105
Telephone:  (816) 531-0033
Facsimile:   (816) 531-3322
Email:       jfe@edgarlawfirm.com
             atr@edgarlawfirm.com


**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP**
James C. Shah              (CA SBN 260435)
(*to be admitted pro hac vice*)
35 East State Street
Media, PA 19063
Telephone:  (610) 891-9880
Facsimile:   (610) 891-9883
Email:       jshah@sfmslaw.com

*Counsel for Plaintiffs Yolanda R. Travis
and Leah Zitter and the Proposed Class*