**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISON)**

| | | |
|---|---|---|
| YOLANDA RENE TRAVIS, LEAH ZITTER and ABBIE GOLDBAS on behalf of themselves and a class of others similarly situated, | ) ) ) ) | |
| | ) | **Case No. 1:15-cv-00235-MJG** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WALDEN UNIVERSITY, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiffs, Yolanda Rene Travis ("Plaintiff Travis"), Leah Zitter ("Plaintiff Zitter") and Abbie Goldbas ("Plaintiff Goldbas") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Amended Class Action Complaint for Damages ("Complaint") on behalf of themselves and all others similarly situated against Defendant, Walden University, LLC ("Defendant," "Walden," or "Walden University").

1.     This action seeks redress for Plaintiffs and thousands of similarly situated students of Walden University who were harmed by Walden's practice of intentionally and knowingly constructing and implementing a dissertation and thesis process (in all available disciplines) which was intended to, and did, ensure that it would be exceedingly difficult, if not impossible, for students to timely complete the process. As such, as was intended by Walden, Plaintiffs and the other students they seek to represent, were required to enroll numerous additional semesters beyond that which was represented as being required by Walden and which the students reasonably believed would be necessary to achieve their educational objectives.

1

Walden's practice, as detailed herein, was intended to (and did) generate substantial additional revenue for Walden by way of additional tuition fees. The practice, however, has resulted in the members of the Class (defined below) paying substantially more for Defendant's educational services than promised by Walden (or reasonably anticipated by the students) and, in many instances, simply being unable to afford the continuing tuition demands, resulting in them being unable to complete the dissertation and/or thesis process. The crass and illegal conduct by Walden has caused substantial damage to Plaintiffs and the Class. If Walden had been honest about the realities of its dissertation and thesis process, Plaintiffs and the other members of the Class would have never paid for the educational services offered by Walden. Likewise, had Walden disclosed the nature of the scheme which it had implemented, Plaintiff and the other members of the Class would have never paid for the educational services offered by Walden.

## THE PARTIES

2.      Plaintiff Travis is, and has been at all relevant times, a resident and citizen of the State of California, who has attended Walden University as a doctoral student from March 8, 2010 to the present.

3.      Plaintiff Zitter is, and has been at all relevant times, a resident and citizen of either the State of Illinois or State of California who attended Walden University from September 5, 2006 to 2012.

4.      Plaintiff Goldbas is, and has been at all relevant times, a resident and citizen of the State of New York, who has attended Walden University from September 2010 to present (although presently on a leave of absence as of February 22, 2015).

5.      Walden University is a limited liability company organized under the laws of the State of Florida with its principle place of business in Baltimore, Maryland. Walden University

is, thus, a citizen of both Florida and Maryland. Upon information and belief, Walden University is a wholly-owned subsidiary of Laureate Education, Inc. ("Laureate").

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain members of the Class and Defendant are citizens of different states.

7.      This Court has personal jurisdiction over Walden University because Walden University is authorized to do business in Maryland, conducts significant business in Maryland, and maintains its principal place of business in Maryland.

8.      Venue is proper in the United States District Court for the District of Maryland (Baltimore Division), pursuant to 28 U.S.C. § 1391, because Walden University maintains its principal place of business in this judicial district, otherwise engages in substantial business throughout this district, and many of the acts complained of herein emanated from and/or took place within this district.

## THE ORIGINS AND RAPID ASCENT OF WALDEN UNIVERSITY

9.      Walden University is a for-profit, online university that offers bachelor's and graduate level degrees to students, both domestically and internationally.

10.     Walden University was originally founded in 1970 as a university that awarded doctoral degrees in school administration for working adults.  In 1995, Walden University began offering an online master's degree in education.  Since that time, Walden University has rapidly increased its degree offerings to include bachelor's degrees, master's degrees, and doctoral degrees in a diverse array of disciplines.

11.     Enrollment at Walden University has increased significantly over the last 15 years.  In 2001, Walden University had an enrollment of 2,082 students.  In 2010, Walden University's enrollment had grown by nearly 2,000%, to 47,456 students.

12.     The exponential increase in enrollment has led to a similar trajectory for Walden University's revenue.  In 2006, Walden University had revenue of approximately $190,700,000. In as early as 2009, Walden University's revenue had nearly doubled to approximately $377,000,000.

13.     Like most for-profit colleges, the vast majority of Walden University's revenue is derived from federally funded student loans.  In 2010, 78.8% ($348,000,000) of Walden University's revenue was derived from federal funds.

14.     As a for-profit college, Walden University necessarily devotes substantial portions of revenue to both marketing and profit.  As of 2009, Walden University spent approximately 26.8% of its revenue ($101,000,000) on marketing and recruitment of new students.  Likewise, in 2009, Walden University allocated approximately 26.8% of its revenue ($101,000,000) to profit.  The amount that Walden University spends on marketing and recruitment, as well as amounts allocated to profit, is higher than average for other for-profit colleges.

15.     In just three years between 2006 and 2009, the profit generated by Walden University increased from $33,000,000 to $101,000,000.

16.     In 2009, Walden University spent only $1,574 per student on instruction compared to $2,230 per student on marketing.  Even more striking, Walden University realized $1,915 in profits per student.  By way of comparison, the University of Minnesota spent $13,247 per student on instruction during the same time period.

17.     Walden University continues to increase the amount of revenue it allocates to marketing and recruitment of new students.  The increased marketing and recruitment budget results in increased revenue which, in turn, results in increased profits for Walden University. As the total revenue figure grows, the cycle and exponential enrollment growth continues. However, this rapid expansion of enrollment, degree offerings, and fields of study has caused significant logistical issues for Walden University students.  Moreover, it has caused Walden to focus on revenue generation, at the expense of Plaintiffs and the members of the Class they seek to represent.

**FACTUAL ALLEGATIONS COMMON TO THE PLAINTIFFS AND THE CLASS**

18.     Walden University originated as an institution that allowed working adults to obtain graduate level degrees in school administration.  Despite the unprecedented growth of Walden University's bachelor's degree program, the school continues to offer a diverse selection of master's and doctoral degrees to online students.

19.     Walden University presently offers multiple master's degrees.

20.     Walden University presently offers multiple doctoral degrees.

21.     Master's and doctoral degrees differ from a bachelor's degree in several important respects; however, most pertinent to this Complaint, master's and doctoral degrees require independent study and research by the student.

22.     At Walden University, some master's degree candidates must go through the process of completing a thesis.

23.     Similarly, at Walden University, each doctoral degree candidate, regardless of discipline, must go through the process of completing a dissertation.

24.     Both the thesis and dissertation require the consultation and approval of faculty and institutional entities at Walden University before the degrees may be completed.  In fact, it is imperative that students be able to work closely with the faculty members, whose approval is necessary for the advancement of the thesis or dissertation.

## THE DOCTORAL STUDENT'S DISSERTATION PROCESS

25.     There are five stages of the dissertation process: the Premise, Prospectus, the Proposal, conducting the study and/or research that is the subject of the dissertation, and defending the completed dissertation.

26.     Importantly, at each stage of the process, the student must gain approval of the dissertation supervisory committee chair and member.  Further, at each stage of the dissertation process, the student depends on the timely response of the dissertation supervisory committee chair and member to advance in the process.

27.     The first step of the dissertation process is to enroll in the dissertation course for a student's respective field of study.  Walden University represents that the dissertation can be completed in as few as 13 months if planned properly.

28.     Once enrolled in the dissertation course, the student must develop and draft a Premise.  The Premise is a brief document which identifies a preliminary topic for the dissertation.  The Premise is also used to locate faculty members who will form the dissertation supervisory committee.

29.     After determining a topic and drafting the Premise, the student must nominate the dissertation supervisory committee.  The dissertation supervisory committee has two members – a committee chair and a committee member.  The dissertation supervisory committee is supposed to provide guidance to the student on both the content and the methodology of his or her

dissertation.  Further, once the committee chair and member accept their nominations, they must approve of the Premise.

30.     The Prospectus is meant to build on the Premise and serve as the foundation of the Proposal.  The goal of the Prospectus is to develop a plan for the Proposal and ultimately outline the basic structure of the dissertation.  The Prospectus must be approved by both the dissertation supervisory committee chair and the committee member before proceeding to the next step, the Proposal.

31.     The Proposal is essentially the first three chapters of the dissertation, outlining the rationale for conducting the study and describing the design and methodology of the study. Students must work closely with the dissertation supervisory committee chair and member to complete the Proposal.

32.     The Proposal must be approved by the dissertation supervisory committee chair and member.

33.     In addition to approval by the dissertation supervisory committee chair and member, the Institutional Review Board ("IRB") must approve the Proposal.

34.     After approval by the IRB, the student must conduct the study and/or research that is the subject of the dissertation.  After completing the study and/or research, the student then completes the dissertation.

35.     The dissertation supervisory committee chair and member must approve the dissertation, which is then submitted to the University Research Review ("URR") for approval.

36.     At this point, the student must orally defend the dissertation.

37.     After successful oral defense of the dissertation and committee approval of the dissertation, the student has essentially completed the dissertation process and it may be submitted for publishing.

## THE MASTER'S STUDENT'S THESIS PROCESS

38.     Once a master's degree student has completed the necessary coursework, Walden University allows the student to begin the thesis process.  A thesis is the master's degree corollary to the dissertation in the doctoral degree program.

39.     Much like the dissertation supervisory committee, the first step of the thesis process is nominating a thesis supervisory committee chairperson.  Simultaneous to the submission of a committee chair nomination, the student must submit a proposed Prospectus that provides an outline of the subject matter and road-map to the student's thesis.

40.      Once the student has successfully obtained a thesis supervisory committee chair, the student should work closely with the committee chair to finalize the Prospectus.  Once the thesis supervisory committee chair approves the Prospectus, it is submitted to the URR with a request to have a URR member assigned to the thesis supervisory committee.

41.     The URR member will conduct a review of the Prospectus and return the results to the student and the thesis supervisory committee.

42.     The student goes through a similar process with the Proposal.  Initially, the student submits the Proposal to the thesis supervisory committee chair.  Once the committee chair is satisfied with the Proposal, the Proposal and necessary evaluation documentation are submitted to the URR member.

43.     If the thesis supervisory committee chair and URR member are satisfied, then the Proposal is submitted to the IRB.  After obtaining IRB approval of the Proposal, the student then begins to draft the thesis.

44.     After the thesis supervisory committee chair approves the drafted thesis, it is ready for oral presentation.

45.     Following final approval of the thesis supervisory committee, the thesis is submitted to the URR for final review.  In addition, the thesis is submitted to the Walden University Chief Academic Officer for final review.  If both the URR and the Chief Academic Officer approve of the thesis, then the student has successfully completed the thesis and may graduate.

## SYSTEMATIC PROLONGING OF THE THESIS AND DISSERTATION PROCESS

46.     The dissertation and thesis processes described above are plagued by lack of institutional oversight and a complete disregard for Walden University's own promises and policies creating an endless process that drags on for quarter after quarter, year after year for students.   This lack of oversight and disregard for the timeframes promised by Walden University is intentional.   That is, it is part of Walden's knowing and intentional scheme to unduly prolong the dissertation and thesis process to extract additional tuition from its students, for the purpose of increasing Walden's profits, at the expense of those students it is purportedly seeking to educate.

47.     First, the process for students to obtain a dissertation or thesis supervisory committee chair and member is extremely difficult.   Making matters worse, retaining the committee chair and committee member throughout the entire process is an additional challenge.

48.     Walden University instructs students to consult the Faculty Expertise Directory to find Walden University faculty members capable of serving on the dissertation or thesis supervisory committee as either committee chair or committee member.  The dissertation supervisory committee must feature an expert on the student's content and also an advisor on methodology.  In order to obtain a dissertation or thesis supervisory committee chair and member, the student must submit a Committee Member Nomination form, along with a copy of the Premise, to the nominee.  If the nominee agrees to serve on the committee and that nominee's service is approved by the program director, then the student may begin finalizing the Premise.

49.     However, the committee chair and member nomination process does not run as smoothly as Walden University represents to its students.  First, the student may spend multiple months attempting to obtain the agreement of a faculty member to serve as a dissertation or thesis supervisory committee chair or member.

50.     Even worse, once the faculty members agree to serve in the roles of dissertation or thesis supervisory committee chair and member, they frequently quit, are fired, or stop responding to the student.  Retention of committee chairs and committee members is a systemic, institutional issue that is not regulated whatsoever by Walden University.

51.     When a Walden University student's dissertation or thesis supervisory committee member or committee chair chooses to quit his or her role on the committee, the student essentially is required to start over from scratch.

52.     The student must locate an additional faculty member to serve in the vacated role.  However, even if the student locates a new faculty member to serve in the role, the new committee chair or member may disagree with the student's Prospectus or Proposal.  As a result, regardless of whether or not the prior committee chair or member approved the Prospectus or

Proposal, the student must now begin the process anew and address the new committee chair or member's concerns.

53.     Further, upon information and belief, the turnover rate of dissertation and thesis supervisory committee chairs and members is extremely high.   This high turnover results in Walden University students being caught in a never-ending cycle of finding supervisory committee chairs and/or members, and gaining their approval, only to start the process again when the committee chair or member leaves Walden University or simply stops responding.   The turnover is intentional and part of Walden's policy to essentially hold its students captive to the tuition generating machine that Walden has constructed.

54.     In addition, Walden University students depend on the dissertation and thesis supervisory committee chair and member for guidance and feedback during the entire process. As part of Walden's overall scheme, however, that much-needed counsel is consistently lacking, and frequently nonexistent.

55.     Walden University has a formal policy which states that the supervisory committee chair and member must respond to requests from students for commentary, feedback, or even formal review, within 14 business days.

56.     However, as part of Walden's scheme, Walden University faculty serving in supervisory committee capacities regularly and routinely do not abide by this 14 business day response requirement.   This is especially frustrating for Walden University students because the students literally cannot progress beyond the Prospectus or Proposal without the approval of the supervisory committee chair and member.   Thus, it causes significant delays in moving forward with, and the completion of, the dissertation and thesis process.

57.     Upon information and belief, most Walden University doctoral and master's students experience a breach of the 14 day response period at least once (and usually many more times) during the course of their dissertation or thesis.  Walden University's breach of its own rules thus unnecessarily prolongs students' efforts to obtain their degrees, and results in students extending their enrollment in their respective dissertation or thesis course and paying additional tuition.

58.     Upon information and belief, most Walden University doctoral and master's students experience a loss of a supervisory committee chair or member at least once (and usually many more times) during the course of their dissertation or thesis.  Walden University's failure to regulate the supervisory committee program thus unnecessarily prolongs students' efforts to obtain their degrees, and results in students extending their enrollment in their respective dissertation or thesis course and paying additional tuition.

59.     Dissertation and thesis courses at Walden University can cost upwards of $2,910 per academic quarter.  Accordingly, the practical effect of Walden's tuition generation scheme, which forces repeated enrollment for additional semesters, is extremely expensive for students and highly lucrative for Walden University.

60.     Walden University, as experienced by Plaintiffs and the Class members, is intentionally and deliberately using its dissertation and thesis process as a means of improperly extracting tuition and generating revenue.  Walden has intentionally and knowingly directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members.  All of this is done without any honesty or transparency by Walden regarding the actual time and expense

that its master's and doctoral students will incur in an effort to complete their degrees.  Further, it is an insidious scheme in that, once students have spent considerable time and expense embarking on the process, they are left with two options in the face of the process delays: 1) quit the program, thereby essentially throwing away all of the time and money expended; or 2) continue to enroll in additional semesters with the hope of completing the program.

## PLAINTIFF TRAVIS' EXPERIENCE AT WALDEN UNIVERSITY

61.     Plaintiff Travis is a student at Walden University pursuing her PhD in Psychology with an emphasis in clinical psychology.

62.     Plaintiff Travis enrolled in her PhD program in the Spring Quarter of 2010.

63.     Between Spring Quarter of 2010 and Fall Quarter of 2012, Plaintiff Travis completed the following doctoral-level courses:

        a.   Foundations for Graduate Study;

        b.   History and Systems of Psychology;

        c.   Psychology of Personality;

        d.   Biopsychology;

        e.   Cognitive Psychology;

        f.   Social Psychology;

        g.   Statistics I;

        h.   Research Design;

        i.   Tests and Measurement;

        j.   Interview and Observation Strategies;

        k.   Statistics II;

        l.   Psych Assessment: Cognitive;

m.  Psychotherapy Interventions I;

n.  Psychotherapy Interventions II;

o.  Psych Assessment: Personality;

p.  Psychology and Social Change;

q.  Ethics Standards in Professional Practice;

r.  Advanced Psychopathology;

s.  Multicultural Counseling;

t.  Psychopharmacology; and

u.  Culture and Psychology.

64.    Plaintiff Travis received an "A" in all but three of those courses, in which she received a "B."

65.    Plaintiff Travis also completed 17 credit hours of required Practicum and Internship courses, obtaining the necessary satisfactory grades to advance from each of those courses.

66.    Plaintiff Travis also completed 50 credit hours of required Residency, Academic Year in Residence and Professional Conferences courses, obtaining the necessary satisfactory grades to advance from each of those courses.

67.    Upon completion of those required courses for a PhD in Psychology with an emphasis in clinical psychology, Plaintiff Travis began her PhD dissertation in the Fall Quarter of 2012.

68.    Plaintiff Travis has been enrolled in dissertation course for her PhD program during the Fall Quarter of 2012, Winter Quarter of 2012, Summer Quarter of 2013, Spring Quarter of 2013, Summer Quarter of 2014, and the Fall Quarter of 2014.  Plaintiff Travis has

paid $2,910; $2,910; $2,970; $2,595; $2,595; and $2,595 for each of those respective academic quarters of dissertation courses.  In total, Plaintiff Travis has paid $16,575 for dissertation courses.  However, progress on her dissertation remains elusive for this "A" student because of the systematic, intentional manner in which Walden University has delayed her.

69.     Plaintiff Travis began the process of securing a dissertation supervisory committee chair and committee member approximately one year prior to beginning her dissertation course work.  On February 6, 2011, Dr. Monica Sutton agreed to be the dissertation supervisory committee member for Plaintiff Travis' dissertation.   On February 8, 2011, Dr. Leslie Jackson agreed to become the dissertation supervisory committee chair for Plaintiff Travis' dissertation.

70.     On July 4, 2012, Plaintiff Travis informed Dr. Sutton and Dr. Jackson that she would begin her dissertation coursework during the Fall Quarter of 2012.  On July 5, 2012, Dr. Jackson informed Plaintiff Travis that she would no longer serve as her dissertation supervisory committee chair, so Plaintiff Travis was forced to find a replacement.

71.     On July 9, 2012, Dr. Richard Cicchetti agreed to be Plaintiff Travis' dissertation supervisory committee chair.  On July 21, 2012, Plaintiff Travis submitted her nomination forms for Dr. Sutton and Dr. Cicchetti.  On that same day, Plaintiff Travis submitted her Premise to both Dr. Sutton and Dr. Cicchetti.

72.     On July 24, 2012, the Plaintiff Travis' Premise was approved by Dr. Cicchetti and Dr. Sutton.  On August 9, 2012, the Program Director, Dr. Trybus, rejected Dr. Cicchetti as the chair of Plaintiff Travis' dissertation supervisory committee.  Over the course of the next several weeks, Plaintiff Travis requested the help of many administrators in the Walden University Psychology Department for aid in finding a dissertation committee chair, but had no success.

73.     On September 4, 2012 (the first date that Plaintiff Travis' first quarter of dissertation course work began), Dr. Trybus officially approved Dr. Cicchetti to serve as Plaintiff Travis' dissertation supervisory committee chair.

74.     On October 3, 2012, Plaintiff Travis submitted her Prospectus to Dr. Sutton for review and comment.  Dr. Sutton did not respond with comments and revisions until over a month later, on November 13, 2012.

75.     On November 26, 2012, Plaintiff Travis submitted her Prospectus to Dr. Cicchetti for review and approval.  Dr. Cicchetti agreed to review the Prospectus without the suggestions from Dr. Sutton, due to not hearing from Dr. Sutton during the review process.  Dr. Cicchetti agreed to submit the Prospectus to Dr. Sutton for her approval before submitting it to the Program Director, Dr. Trybus.

76.     On December 13, 2012, Dr. Cicchetti still had not received a response from Dr. Sutton regarding Plaintiff Travis' Prospectus, even though it had been submitted to Dr. Sutton in November 2012.

77.     On January 14, 2013, Dr. Cicchetti and Dr. Sutton approved the Prospectus and submitted it to Dr. Trybus for his approval.  Dr. Trybus did not respond until 21 days later, on February 4, 2013, when he rejected the Prospectus.

78.     Due to this rejection of her Prospectus, Plaintiff Travis did not participate in the dissertation course during the Spring Quarter of 2013.  Plaintiff Travis took the time to strengthen her Prospectus and again submitted it to Dr. Sutton and Dr. Cicchetti on May 4, 2013.

79.     On May 4, 2013, Dr. Sutton informed Plaintiff Travis that she was resigning from Walden University and could no longer serve as Plaintiff Travis' dissertation supervisory committee chair.

80.     On May 28, 2013, Dr. Marc Mooney was provided with a copy of the Prospectus. On May 29, 2013, Dr. Mooney agreed to be the dissertation supervisory committee member for Plaintiff Travis.   Yet, Plaintiff Travis received no response from Dr. Mooney regarding her Prospectus for many months, even after repeated emails and repeatedly providing him with copies of the Prospectus

81.     On July 30, 2013, a full 62 days after Plaintiff Travis initially sent Dr. Mooney her Prospectus, Dr. Mooney answered Plaintiff Travis and apologized for not responding earlier, writing "[t]his is unacceptable. I really do understand that time is money."

82.     On August 1, 2013, Dr. Cicchetti submitted the Prospectus to the Research Department for approval.  Dr. Mooney stated that he submitted the Prospectus to the Research Department as well; however, the Research Department indicated that they did not receive the necessary documents from Dr. Mooney.

83.     Due to her lack of progress caused by Walden University's systemic and intentional delays, Plaintiff Travis received approval for a leave of absence from the dissertation coursework on August 29, 2013.

84.     On September 5, 2013, Walden University informed Plaintiff Travis that Dr. Mooney was no longer a faculty member of Walden University and she would need to locate another dissertation supervisory committee member.

85.     On September 24, 2013, Dr. Marlo Walters was officially assigned to Plaintiff Travis' dissertation supervisory committee as a member.

86.     On October 16, 2013, the Research Department confirmed that Dr. Cicchetti and Dr. Walters submitted the Prospectus and necessary documentation.  Dr. Trybus then had 14 days to respond with approval or revisions for the Prospectus.

87.     Over a month after submitting the Prospectus to Dr. Trybus, her Prospectus was rejected on December 2, 2013.

88.     As a result, Plaintiff Travis again revised the Prospectus to attempt to satisfy Dr. Trybus.

89.     On January 1, 2014, Dr. Cicchetti informed Plaintiff Travis that he would give approval or revisions on the revised Prospectus by "the weekend."  On February 2, 2014, Dr. Cicchetti apologized for taking longer than 14 days to review the Prospectus.

90.     Due to delays, Plaintiff Travis requested to change her graduation date from March of 2014 to June of 2015.

91.     On June 25, 2014, the Research Department confirmed receiving the Prospectus and all necessary documentation from Dr. Walters and Dr. Cicchetti.  On July 9, 2014, the Prospectus was approved.

92.     On August 1, 2014, Plaintiff Travis submitted her Proposal to Dr. Cicchetti and Dr. Walters.  On that same day, Plaintiff Travis requested Walden University assign a URR member.  Over five weeks later, Walden University appointed Dr. Hannah Lerman as the URR member to review the Proposal.

93.     Over the course of Plaintiff Travis' time at Walden University, she has experienced innumerable delays, repeated failures to follow the 14 day faculty response deadline, multiple instances of faculty members failing to fulfill their responsibilities as dissertation supervisory committee chairs and members, and gone through the process of nominating faculty members to serve on the dissertation supervisory committee numerous times.  In other words, she has been subjected to, and victimized by, the intentional and knowing scheme of Walden University to prolong the dissertation and thesis process so that Walden could generate

additional tuition revenue.  Walden has subjected the other members of the Class to the same scheme, thereby causing them to be damaged in the same manner as Plaintiff Travis.

94.     As of now, Plaintiff Travis has paid for four quarters of dissertation course work, been forced to take a leave of absence due to financial issues caused by Walden University, and after two years, is only at the Proposal stage of her dissertation.

95.     Walden University has intentionally and unjustly prolonged Plaintiff Travis' work toward her doctoral degree and extracted extra tuition payments from her for dissertation coursework that would never have been necessary but for Walden's scheme to generate additional tuition revenue.  As a result of the scheme, Plaintiff Travis is now anticipating that she will complete the educational process, at a minimum, several years after she had reasonably anticipated she would have had Walden not engaged in its illegal conduct.

96.     Had Walden not misrepresented the realities of obtaining a dissertation, or otherwise actually disclosed its true scheme, Plaintiff Travis would not have agreed to pay for the educational services offered by Walden University and, thus, would not have been damaged.

**PLAINTIFF ZITTER'S EXPERIENCE AT WALDEN UNIVERSITY**

97.     Plaintiff Zitter was formerly a student at Walden University, pursuing her PhD in Psychology.

98.     Plaintiff Zitter enrolled in her PhD program in the Spring Quarter of 2006.

99.     Between the Fall Quarter of 2006 and 2012, Plaintiff Zitter completed the following doctoral-level courses:

        a.   Foundations for Graduate Study;

        b.   History and Systems of Psychology;

        c.   Lifespan Development;

   d.   Biopsychology;

   e.   Cognitive Psychology;

   f.   Social Psychology;

   g.   Statistics I;

   h.   Research Design;

   i.   Tests and Measurement;

   j.   Philosophy Found in Psychology Research;

   k.   Statistics II;

   l.   Statistics III;

   m.   Qualitative Analysis;

   n.   Psychology and Social Change;

   o.   Ethics Standards in Professional Practice;

   p.   Psychology and Personality;

   q.   Contemporary Issues in Personality;

   r.   Advanced Methods Mixed Qualitative and Quantitative;

   s.   Clinical Neuropsychology;

   t.   Health Psychology; and

   u.   Psychoneuroimmunology;

100.    Plaintiff Zitter earned a 3.27 Grade Point Average for the above courses.

101.    Plaintiff Zitter also completed 12 credit hours of required Residency, obtaining the necessary satisfactory grades to advance from each of those courses.

102.    Upon completion of the required courses for a PhD in Psychology, Plaintiff Zitter began her PhD dissertation in 2009.

20

103.     Plaintiff Zitter enrolled in, paid for and completed 27 hours of dissertation course work over five quarters, obtaining the necessary satisfactory grades in each course.

104.     Over the course of her time at Walden University, faculty members habitually failed to respond to Plaintiff Zitter within the required 14 day period.  The failure to respond was consistent with, and a result of, Walden's policy of prolonging the dissertation process.

105.     For example, between September and November 2011, Plaintiff Zitter requested on three separate occasions that Dr. Jack Apsche, her dissertation supervisory committee member at that time, review her dissertation. In an email response to Plaintiff Zitter, Dr. Apsche stated: "[y]ou can expect to receive a response when I read it. If that does not suffice please consider me withdrawn as your committee member."  Not only did Dr. Apsche fail to respond within the required 14 day period, Dr. Apsche simply never responded with feedback on Plaintiff Zitter's dissertation.

106.     In addition, Plaintiff Zitter was forced to seek new dissertation supervisory committee chairs and members due to faculty resignations, faculty dismissals, ineffectiveness and unresponsiveness of faculty on at least five separate occasions.   These delays, likewise, resulted from Walden's policy of prolonging the dissertation process.

107.     At the outset of Plaintiff Zitter's dissertation process in May 2009, Plaintiff Zitter's dissertation supervisory committee chair was Dr. Karine Clay.  After a brief period, Dr. Clay resigned and was replaced by Dr. Adam Rubenstein.  From October 2009 to January 2010, Dr. John Redmond was Plaintiff Zitter's dissertation supervisory committee member.  In August 2010, Dr. Rubenstein resigned as Plaintiff Zitter's dissertation supervisory committee chair. Also in August 2010, Dr. Uldall became Plaintiff Zitter's dissertation supervisory committee

chair and Dr. Jason Seacat became the committee member.  Subsequently in September 2011, Dr. Seacat resigned and was eventually replaced by Dr. Apsche.

108.    Collectively, the process of finding Walden University faculty members to serve in dissertation supervisory committee chair and member roles cost Plaintiff Zitter over a year and multiple dissertation courses.  Further, in each instance of replacing dissertation supervisory committee roles, Plaintiff Zitter had to rework her dissertation to meet the specific requests of the new committee chairs and members, which in turn delayed her further.  For instance, in August 2010, Plaintiff Zitter had to rewrite many portions of her dissertation to suit Dr. Seacat's specifications despite previous committee chairs and members already approving those dissertation sections.

109.    At no point in her search for faculty members to fill roles in her dissertation supervisory committee did Walden University aid Plaintiff Zitter. In fact, Plaintiff Zitter essentially undertook this task alone with no guidance or support from Walden University.

110.    Over the course of Plaintiff Zitter's time at Walden University, she experienced numerous delays, repeated breaches of the represented 14 day faculty response deadline, multiple instances of faculty members failing to fulfill their responsibilities as dissertation supervisory committee chairs and members, and has gone through the process of nominating faculty members to serve on the dissertation supervisory committee multiple times.

111.    As a result, Plaintiff Zitter withdrew from Walden University due to financial constraints and the need to care for her children as a single mother.  Further, Plaintiff Zitter had reached the limit of her federal education funding.

112.    As of now, Plaintiff Zitter has paid for five dissertation courses (27 credit hours) and is no closer to obtaining her PhD than she was in 2009.

113.   In sum, Walden University has unjustly prolonged her Plaintiff Zitter's work toward her doctoral degree and extracted extra tuition payments from her for dissertation coursework.

114.   Had Walden not misrepresented the realities of obtaining a dissertation, or otherwise actually disclosed its true scheme, Plaintiff Zitter would not have agreed to pay for the educational services offered by Walden University and, thus, would not have been damaged.

## PLAINTIFF GOLDBAS' EXPERIENCE AT WALDEN UNIVERSITY

115.   Plaintiff Goldbas is presently a student at Walden University (although on a leave of absence), pursuing her PhD in Health Psychology.

116.   Plaintiff Goldbas enrolled in her PhD program in the September 2010.

117.   Between September 2010 and August 2013, Plaintiff completed the following doctoral level courses:

        a.   Foundations for Graduate Study;

        b.   History and Systems of Psychology;

        c.   Biopsychology;

        d.   Social Psychology;

        e.   Health Psychology;

        f.   Psychoneuroimmunology;

        g.   Research Theory;

        h.   Changing Health Behavior: Theory/Practice;

        i.   Stress and Coping;

        j.   Teaching of Psychology;

        k.   Quantitative Reasoning & Analysis;

l.   Psychopharmacology;

m.   Continued Gerontology Geriatric Psychology;

n.   Quantitative Reasoning & Analysis;

o.   Survey Research Methods;

p.   Qualitative Reasoning & Analysis;

q.   Ethics Standards of Psychology;

r.   Independent Reading; and

s.   Advanced Quantitative.

118.   Plaintiff Goldbas earned a 3.95 Grade Point Average for the above courses.

119.   Plaintiff Goldbas also completed 12 credit hours of required Residency, obtaining the necessary satisfactory grades to advance from each of those courses.

120.   Upon completing the courses required for a PhD in Health Psychology, Plaintiff began her PhD dissertation in August 2013.

121.   Plaintiff Goldbas enrolled in, paid for and completed 30 hours of dissertation course work over six quarters.

122.   Initially, Plaintiff Goldbas went through the faculty nomination process and obtained Dr. Yells as her dissertation supervisory committee chair.  In addition, Plaintiff Goldbas obtained Dr. Karen Gil as her dissertation supervisory committee member.

123.   Over the course of her time at Walden University, faculty members habitually failed to respond to Plaintiff Goldbas within the required 14 day period.  The failure to respond was consistent with, and a result of, Walden's policy of prolonging the dissertation process.

124.   For example, on February 3, 2014, Plaintiff Goldbas' first Prospectus was submitted to the program director, Dr. Perry for review and comment. Dr. Perry did not respond

within the required 14 day period.  In fact, on February 28, 2014, Plaintiff Goldbas' dissertation supervisory committee chair, Dr. Yells, had to send a follow up email to request review of the Prospectus.  On March 3, 2014, nearly two weeks after the required 14 day response period passed, Dr. Perry responded and refused to approve the Prospectus.

125.    In addition, Plaintiff Goldbas was forced to seek a new dissertation supervisory committee member due to ineffectiveness and unresponsiveness of faculty.  These delays, likewise, resulted from Walden's policy of prolonging the dissertation process.

126.    In April 2014, Plaintiff Goldbas was instructed by her program director, Dr. Perry, that she must completely change the basis of her Prospectus (this would be her 8th study design).  At this time, Plaintiff Goldbas was forced to find a new dissertation supervisory committee member to replace Dr. Gil due to her complete ineffectiveness and also the need for a different type of methodologist.  Dr. Leann Stadtlander eventually volunteered to fill the position.

127.    Over the course of Plaintiff Goldbas' time at Walden University, she experienced numerous delays, repeated breaches of the represented 14 day faculty response deadline, multiple instances of faculty members failing to fulfill their responsibilities as dissertation supervisory committee chairs and members, and has gone through the process of nominating faculty members to serve on the dissertation supervisory committee twice.

128.    Plaintiff Goldbas elected to take a leave of absence after finishing her most recent dissertation quarter in February 2015 because of her frustration with Walden University's systematic delay of her dissertation progress.

129.    After six quarters of work on her dissertation between August 2013 and February 2015, Plaintiff Goldbas is presently at the Prospectus stage with no hope of completing the dissertation within the 18 month period Walden University represented to her.

130.    In sum, Walden University has unjustly prolonged Plaintiff Goldbas' work toward her doctoral degree and extracted extra tuition payments from her for dissertation coursework.

131.    Had Walden not misrepresented the realities of obtaining approval of her dissertation, or otherwise actually disclosed its true scheme, Plaintiff Goldbas would not have agreed to pay for the educational services offered by Walden University and, thus, would not have been damaged.

132.    Plaintiffs' experiences mirror those of thousands of other students.  The internet is replete with similar complaints, including examples such as:

http://www.complaintboard.com/walden-university-l4025.html

- "STUDENT FINISH ALL CLASS REQUIREMENT, BUT THEY WILL HOLD YOU BACK FROM GRADUATING BECAUSE YOUR PROPOSAL OR DOC STUDY IS NOT APPROVED BY ONE OF THE REVIEWERS EITH METHODOLOGIST OR URR. STUDENTS END UP TAKING MORE 9000 CLASSES WITH THE HOPE TO GRADUATE.  I DO NOT RECOMMEND GETTING YOUR DEGREE FROM THIS UNIVERSITY, WASTE OF TIME, MONEY, NOT WORTH IT.  PLEASE DO YOUR RESEACH AND LOOK SOMEWHERE ELSE.  FOR THOSE THAT ARE STILL ON THE PROGRAM AND FINISH ALL YOUR 9000 CLASSES, PLEASE DONT TAKE MORE THAN THE REQUIRE 9000 CLASSES, GET A LAWYER AND FILE A LAWSUIT. THIS IS A FAKE PROGRAM THATS THE HONEST TRUTH." **[Posted Oct. 19, 2014]**

- "Don't WASTE your $$$$$$$$$$$$$$ EdD Program Walden Ed D program DON'T WASTE YOUR MONEY!!!!!!!!!!!! I am disappointed in Walden's attitude and behavior towards me, after I went into debt for over $100,00.00++.  In fact, I have tried so desperately to meet the requirements to complete the program, that I have changed my topic three times since I started the dissertation part of the program.  I have pride myself on meeting all requirements and presenting quality work. Put yourself in my position, over three years working on my dissertation, hundreds of revisions, paying for editors, academic writers to assist me and yet here I am, nothing to show for my submissions.It has become obvious to me Walden wants to get rid of me without issuing me a degree. I find this reprehensible.  I have been w/Walden in Ed.D program since 2006. I have been attempting to get the URR to approve my dissertation,

which my chair and co chair OK'd. No Luck! It seems the URR has no clue about my topic and the achievement gap for Latino students. There has been NO MOVEMENT since the first week of October, when my chair submitted the dissertation.  Anyone else have these issues. I will NEVER RECOMMEND WALDEN TO ANYONE. I could have gone to Seton Hall, joined the fast track cohort and been done in 2 years for LESS $$ and not have to defend my doing an Ed.D online. What a mistake! I will never recommend Walden; in fact I will dissuade anyone from taking courses at Walden!  I am in process of having my attorney review my emails and other materials as I prep for a lawsuit"  **[Posted June 2, 2012]**

- "I am interested in pursuing a class-action lawsuit against them, as well. They are liars and scammers - only interested in getting every last drop of money out of their students. I was told that I only needed 2 classes and my thesis to graduate, and then after I finished the first class, they said OOOOPS!!! You actually need SEVEN classes to graduate!!! What a bunch of scammers! I've already invested almost $60, 000 in my Master's degree at Walden, so what am I supposed to do? They didn't even accept all of the previous classes I had taken there a few years back, so that was just wasted money (thousands of dollars that I still have to pay!). Now, they want me to pay almost $20K more! These people are just out to make a profit. They do not care about us."  **[Posted Feb. 23, 2012]**

  http://www.universityinfoonline.com/?p=243

- "I am in exactly the same boat as the person who posted what I pasted below, as they are my feelings as well as (unfortunately) my experiences. My committee chair waits 6-8+ weeks to get back to me, and each member of my committee has steered me in a different direction, meaning that I am now a full year (and $14,000) BEHIND! Attend graduation? HOW? I have no more money, nor do I have a clue as to when I'll be done. It seems like they stall on purpose–the longer it takes, the longer they are paid.  The course work for the Ed.D. was great; very challenging and most of the professors were knowledgeable and provided honest feedback. The disseertation experience has been horrendous! My committee is uninformed and uncaring. I am basically working on it alone. My methodologist completely steered me in the wrong direction and my chair provides no support. Also there is no one for me to speak to about my concerns. And, academic advising is a joke! I am going to finish because I have spent so much money, please think before investing in this school. If there was any way I could transfer these credits to another school, I would do so in a second!" **[Posted Dec. 8, 2010]**

- "There is a reason they are 24 out of 25 in the rating. I went to get my Ph.D. and it was a struggle from beginning to until I left. The staff, administration and so called instructors are pathetic. Walden trys to milk every cent out of you be making you stay in the program. When I got to writing my dissertation they put every obstacle they could to make you fail and stay another quarter. I took the lose and went to another school and completed my degree. STAY AWAY FROM WALDEN!"  **[Posted July 30. 2010]**

- "Once you begin the dissertation, the reallll nightmare starts. My committee was as useless as a screen door on a submarine and left me to learn via trial and error.Waldens dissertation process is full of time consuming steps, and they seem to try and make you quit (and other students I talked to have the same perception), and when you challenge them, they threaten to disciplne you for violating their code of conduct." **[Posted June 20, 2010]**

http://www.onlinedegreereviews.org/college/walden-university-reviews/ed-d-educational-leadership-1494/reviews/#8121

- "I'm in the 8th or 9th term of my dissertation, and now on the 5th URR revision. The process is that first the chair has two weeks to review a revision. If the chair wants revisions - and we're talking minor changes - most that weren't communicated in earlier revisions, he or she sends it back to the student. The student returns a revised version to the chair perhaps by the next day. Then the chair gets another two weeks to review. On to the URR, and yet another two weeks is added to this one URR review cycle. Count up those weeks. It's half of the term, over $1500. I figure that I've paid probably an additional $15,000 simply due to the delays throughout the six years that I've attended Walden. There is not normal discussion as might take place in a brick or mortar school between faculty members and students toward simple agreement about revisions. Yes, faculty will wait until the last minute to review, edit and return documents. Absolutely, that's been my experience, too. Delay after delay after delay. I hope to graduate soon and end this nightmare. The professors are fine, most very skilled with expertise in their respective fields. Holding students' graduation up is simply not right. Who does support the student? Anyone know?" **[Posted Sept. 16, 2012]**

- "Think twice before attending. I did finish the program but it took over 6 years and the Ed.D was advertised as a 3 year program. There are a few good instructors but overall I have to agree with previous comments that the faculty is trained in stalling as long as possible. It is all about the money and instructors wait until the last possible moment to edit, review, etc. I strongly advise anyone considering this program to look at other programs as Walden is only concerned about taking your money." **[Posted Sept. 26, 2010]**

- "Do not waste your money!!! My "Walden Experience"(which is their motto) has been has been nothing but a massive headache, and a VERY expensive one. Committee members, Academic Reviewers, IRB reviewers, and URR personal have clearly been schooled in the "stall as long as you can so we can get more money" department. You receive very little guidance and there is always something else to hold up progress. Walden advertises the Ed.D program as a 3 year program then tells you at the residency (1/3 of the way through your classes) that to be completed in 3 years is rare. I will graduate in December 2009 and refuse to even attend the ceremony because of the disgust I have for the way my peers and I have been treated. Again, save yourself the time, money, and stress- do NOT waste a minute on this university." **[Posted July 2, 2009]**

http://www.gradreports.com/colleges/walden-university

- "Where this school truly fails is in reference to the dissertation "courses". As part of your dissertation if you are pursuing a doctoral degree, you will be placed in a series of never-ending dissertation "classes" in which you are required to work towards your dissertation. Note, these "classes" are supposed to be monitored by an instructor however this is not the case. They market the program in such a manner as to tell students that you will work productively with a dissertation committee in an expeditious fashion towards your research. I am currently in my tenth "class" with no end in sight. The instructor is simply non-existent. Students continually post in the questions for instructor forum and in the discussion forums to no avail. The class as a whole has repeatedly complained regarding the lack of any guidance whatsoever but without any resolution. Walden will also charge you $3,000.00 per each of these "classes". Because of the lack of available instructors to serve on dissertation committees, you are forced to work with whoever is left over. The lack of communication is absolutely appalling. I once waited 9 weeks...yes WEEKS for a reply to an email. Feedback of any kind on your dissertation drafts will take MONTHS thus the justification to keep you locked into these classes indefinitely. It is repulsive how this school can continue to get away with this completely unethical (and let's face it illegal) business practice. Once you are done with your required coursework and begin the dissertation process, you are essentially stuck. You can either withdraw with no degree to show plus a mountain of debt or continue to process with the false hope of one day finishing....plus an even bigger mountain of debt. Enrolling in this school was unquestionably, unequivocally, the worst decision that I ever made. This school absolutely needs to be investigated for false business practices." **[Posted Feb. 23, 2015]**

- "I attended Walden with great expectations in finishing as documented in the admission process. I found out way TOO late that the majority of the students do not finish in 5 doctoral study final classes - they finish in 10 classes!!! This adds time - over a year, not to mention so many DOLLARS. I had 3 different methodologist that took over 5 months to review a part of the study. Completed my study process over 6 months ago and between the individual reviews, it is still in process with no expected completion. Another tactic in keeping the dollars coming in to Walden. Too late for me, but do NOT start this program as the promises to complete in a timely manner are false." **[Posted Feb. 11, 2015]**

http://www.gradreports.com/colleges/walden-university?page=5

- "I was told the tuition was around $40K; my bill stands at over $100K. The reason for the delay was through the dissertation process. The school has a URR steps process in which you must complete (sequentially) to finish your paper. Each step must be approved in order to move on. My first chair got me nearly to the end of the steps where I needed to schedule my final oral review. That's when he resigned due to a disagreement with the dept. head. A month went by before my second chair even contacted me, and then another month before my oral was scheduled. Their policy is that a committee member has 14 days to respond, but

mine wasn't the case. Finally after my oral was accepted, my URR also approved my final work for the fourth time during this process. Each step causes more and more time to elapse, which equals higher tuition costs. My last step was the CAO's signature. He wanted me to make a few changes to the abstract, no biggie, so I got the director in Walden's editing dept. to help. Then my paper was completed. However, instead of sending it back to the CAO, I was notified that my URR was fired and I got a new one. I didn't care because I was finished. But--the paper went back to him, and he DISAPPROVED what had already been approved on 32 steps with 0% matches on the TTI report! So instead of graduating that next week, he had me change 55 pages AND take a writing course!!! Still, very little communication from my chair, so they fired her, too. Here we go again! I had a phone conference with the entire committee and dept. head, and we finally resolved to change just "three things." I did...again, again, and again. More changes. Then four months later, I resubmitted my final AGAIN and my URR wanted me to change pages that he himself had already approved! Ridiculous! Two months later, by the grace of God, I graduated. My advice: Do NOT get your doctorate from Walden! The stress it caused was not worth it. And now I have a $100 bill to deal with for the rest of my life. Total deception." **[Posted Aug. 22, 2014]**

http://www.gradreports.com/colleges/walden-university?page=8

- "When you hear of a predatory, solely-for-profit on-line school, let this school serve as the poster child. The lack of communication is truly appalling as is the outdated and archaic curriculum. I was in the doctoral program before merely rolling my credits into a master's program and leaving the school altogether due to my incredibly high level of frustration. In my last dissertation course, the instructor was non-existent in the course from Week 3 - Week 10. EIGHT weeks of zero interaction and for this I paid over $3,000? Week after week of students floating aimlessly in an unsupervised virtual classroom without any navigation or direction whatsoever. I wish I could say this was the exception but this was the norm. The instructor in this particular course did not even check the questions for instructor forum - ever. Hello? Is anyone here?? Additionally, you will wait several weeks for an email response from course instructors and/or school staff if you are lucky to receive a reply at all. Unacceptable and inexcusable. Save your time and your money. ****AVOID****" **[Posted May 17, 2014]**

## CLASS ACTION ALLEGATIONS

133.    The experiences of Plaintiffs at Walden University are similar to those experienced by numerous other students attempting to navigate the dissertation and thesis process, not only in the discipline of psychology, but in all disciplines offered by Walden.

134.    Plaintiffs request the Court certify this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

135.    In the first instance, Plaintiffs seek certification of a nationwide Class under Maryland law, including certification of claims for unjust enrichment (First Cause of Action), breach of contract (Second Cause of Action) and violations of the Maryland Consumer Protection Act (Third Cause of Action).  Thus, Plaintiffs seek to certify the following nationwide Class pursuant to Rule 23:

> All current or former students of Walden University who enrolled in and paid for a doctoral degree dissertation course and/or a master's degree thesis course at Walden University ("Class").

136.    In the alternative, should the Court decide not to certify a nationwide class under Maryland law, Plaintiff Travis seeks certification of a California Sub-Class, including certification of claims for violations of the California Unfair Competition Law (Fourth Cause of Action), unjust enrichment (Fifth Cause of Action), breach of contract (Sixth Cause of Action) and breach of the implied covenant of good faith and fair dealing (Seventh Cause of Action). Thus, in the alternative, Plaintiff Travis seeks to certify the following California Sub-Class pursuant to Rule 23:

> All current or former students of Walden University who enrolled in and paid for a doctoral degree dissertation course and/or a master's degree thesis course at Walden University while residing in California ("California Sub-Class").

137.    In the alternative, should the Court decide not to certify a nationwide class under Maryland law, Plaintiff Zitter seeks certification of an Illinois Sub-Class, including certification of claims for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Eighth Cause of Action), unjust enrichment (Ninth Cause of Action) and breach of contract (Tenth Cause of Action).  Thus, in the alternative, Plaintiff Zitter seeks to certify the following Illinois Sub-Class pursuant to Rule 23:

> All current or former students of Walden University who enrolled in and paid for a doctoral degree dissertation course and/or a master's degree thesis course at Walden University while residing in Illinois ("Illinois Sub-Class").

138.    In the alternative, should the Court decide not to certify a nationwide class under Maryland law, Plaintiff Goldbas seeks certification of a New York Sub-Class, including certification of claims for violations of the New York General Business Law, Deceptive Acts and Practices (Eleventh Cause of Action), unjust enrichment (Twelfth Cause of Action), breach of contract (Thirteenth Cause of Action) and breach of the implied covenant of good faith and fair dealing (Fourteenth Cause of Action).  Thus, in the alternative, Plaintiff Goldbas seeks to certify the following New York Sub-Class pursuant to Rule 23:

> All current or former students of Walden University who enrolled in and paid for a doctoral degree dissertation course and/or a master's degree thesis course at Walden University while residing in New York ("New York Sub-Class").

139.    This action is brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal rules of Civil Procedure.

140.    Numerosity: Upon information and belief, the members of the Class number in at least the thousands.  As a result, the Class is so numerous that joinder of all members in a single action is impracticable.  The members of the Class should be readily identifiable from academic records and enrollment records of Walden University.  The disposition of these claims will provide substantial benefits to the Class.

141.    Commonality and Predominance: There is a well-defined community of interest and common questions of law and fact which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which will generate common answers which are apt to drive the resolution of the litigation, do not vary between members of the Class.  These common questions may be determined without reference

to individual circumstances and will provide common answers.  The following represent a non-exhaustive list of common questions:

    a.   Whether Walden University maintains institutional control over its master's and doctoral programs;

    b.   Whether Walden University has constructed and implemented a system which causes the dissertation process to last longer than represented so that it can generate additional revenue though tuition payments;

    c.   Whether Walden University has constructed and implemented a system which causes the thesis process to last longer than represented so that it can generate additional revenue through tuition payments;

    d.   Whether Walden University has misrepresented the true nature of the dissertation and thesis process to students as it relates to the students' ability to timely complete said processes;

    e.   Whether Walden University has concealed and otherwise failed to disclose the true nature of the dissertation and thesis process from students as it relates to the students' ability to timely complete said processes;

    f.   Whether Walden University has been unjustly enriched by its conduct at the expense of the Class;

    g.   Whether Walden University has breached its contracts with the Class;

    h.   Whether Walden University has violated consumer protection statues by virtue of its conduct toward the Class; and

    i.   Whether, as a result of Walden University's conduct, Plaintiffs and the Class are entitled to damages, restitution, equitable relief and/or other relief, and, if so, the amount and nature of such relief.

142.   Typicality: The representative Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs and all members of the Class were injured by the same wrongful practices in which Walden University has engaged.  Further, the Plaintiffs and members of the Class seek relief based on the same legal theories.  There may be differences in the amount of damages sustained by each member of the Class; however, Class-wide and individual damages can be determined readily.  Individual damages issues will not bar Class certification.

143.   Adequacy of Representation: Plaintiffs will fairly and adequately protect and pursue the interests of the Class.  Plaintiffs understand the nature of the claims herein, their role in the proceedings, and have and will vigorously represent the Class.  Plaintiffs have retained Class counsel who are experienced in and qualified in prosecution of consumer protection class actions and other forms of complex litigation.   Neither Plaintiffs, nor their attorneys, have interests which are contrary to or conflict with those of the Class.

144.   Superiority and Manageability: A class action is superior to all other available methods of adjudication of this lawsuit.  Because individual litigation of the claims of Class members is economically infeasible and judicially impracticable, the class action device is the only way to facilitate adjudication of Plaintiffs' and the Class' claims.  Although the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member resulting from Walden University's wrongful conduct are not significant enough for experienced counsel to handle on an individual basis.  Further, due to the conduct of Walden University, Plaintiffs and members of the Class have significant debt burdens from their time at Walden University and cannot afford to hire counsel to pursue their claims on an hourly-fee basis.  Even assuming individual Class members could afford it, the likelihood of individual claims being pursued by the Class members is remote.  Even then, the burden on the judicial system would be unjustifiable in light of the class action device.  Individual members of the Class do not have significant interest in individually controlling the prosecution of separate actions and individualized litigation could result in varying, inconsistent or contradictory judgments.  Plaintiffs know of no reason that this litigation should not proceed as a class action.

145.   The nature of notice to the Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by best notice possible under the

circumstances including, *inter alia*, email, publication in major newspapers, and maintenance of a website.

## **TOLLING AND ESTOPPEL**

146.    Plaintiffs' causes of action did not arise until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that they were injured by Walden's intentional and deliberate scheme.   Plaintiffs did not and could not have discovered the intentional scheme through reasonable diligence.

147.    The applicable statutes of limitations have been tolled by Walden's knowing and active concealment of the material facts regarding its scheme to intentionally prolong the dissertation and theses process.  Walden kept Plaintiffs and the members of the Class ignorant of the vital information essential to pursue their claims, without any fault or lack of diligence on the part of Plaintiffs and Class members.

148.    Walden University was and is under a continuous duty to disclose to Plaintiffs and the members of the Class the true nature of the scheme that Walden has implemented to prolong the dissertation and thesis process.  At all relevant times, and continuing to this day, Walden knowingly, affirmatively, and actively misrepresented and concealed the true character, quality and nature of its scheme.

149.    Based on the foregoing, Walden University is estopped from relying on any statutes of limitation in defense of this action.  Walden University is also estopped from relying on any statutes of limitation in defense of this action because it failed to disclose the scheme prior to accepting each and every tuition payment in exchange for the provision of educational services.

150. Pursuant to the doctrines of Equitable Tolling, Equitable Estoppel, Fraudulent Concealment and the Discovery Rule, the period for bringing claims shall not be barred due to any statute of limitations or statute of repose.  With respect to each and every cause of action asserted herein, Plaintiffs expressly plead Equitable Tolling, Equitable Estoppel, Fraudulent Concealment and the Discovery Rule and their application thereto.

151. All conditions precedent to the filing of this Complaint have been satisfied.  This action has been filed prior to the expiration of any applicable statute of limitations or statute of repose.

## FIRST CAUSE OF ACTION
### Unjust Enrichment

152. Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

153. Plaintiffs bring this cause of action on behalf of a nationwide Class under Maryland common law.  Walden University has engaged in unjust conduct to the detriment of Plaintiffs and each member of the Class.

154. Plaintiffs and each member of the Class provided significant value to Walden University in the form of tuition payments for master's thesis courses and/or doctoral dissertation courses.

155. Walden University appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiffs and each member of the Class.

156. Although Walden University accepted the tuition payments and retained and received benefit therefrom, it did not provide students with a doctoral and/or thesis process that was promised and contemplated in connection with the payment of the tuition.  On the contrary, Walden University intentionally and deliberately used the dissertation and thesis process as

means of improperly extracting tuition and generating revenue.  Walden has intentionally and knowingly directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members.  All of this is done without any honestly or transparency by Walden regarding the actual time and expense that its master's and doctoral students will incur in an effort to complete their degrees.

157.    This unjust conduct on the part of Walden University has resulted in Walden University master's and doctoral students enrolling in thesis and dissertation courses that would not be necessary if Walden University had not acted unjustly in causing Class members to incur significant, additional tuition costs.  Defendant's scheme has also caused certain Class members to stop pursuing the process altogether.

158.    Despite its inequitable conduct, Walden University has retained the tuition payments made by its master's and doctoral students pursuing thesis and dissertation coursework.

159.    As a result, Walden University has been unjustly enriched, to the detriment of Plaintiffs and the members of the Class.

## SECOND CAUSE OF ACTION
### Breach of Contract

160.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

161.    Plaintiffs bring this cause of action on behalf of a nationwide Class under Maryland common law.  Walden University has systematically violated its contracts with Plaintiffs and each member of the Class.

162.    Plaintiffs and each member of the Class contracted with Walden University to obtain master's and/or doctoral educational services.  Implied in each and every contract was a covenant of good faith and fair dealing.

163.    As part of the contract, Walden University promised, *inter alia*, that, in connection with providing master's and/or doctoral educational services: 1) the process for obtaining a dissertation or thesis supervisory chair and member would be reasonable and not burdensome; 2) there would be reasonable stability in faculty member retention such that the process for obtaining a dissertation or thesis supervisory chair and member would not be repeated, much less repeated multiple times; and 3) appropriate and timely feedback (within 14 days) would be provided to students with respect to their dissertation or thesis work.

164.    Rather than provide master's and doctoral educational services as per its contractual agreement, Walden University has instead knowingly and intentionally directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members.  All of this is done without any honesty or transparency by Walden regarding the actual time and expense that its master's and doctoral students will incur in an effort to complete their degrees.  The policy implemented by Walden University unquestionably breaches its contracts with Plaintiffs and the Class.

165.    Plaintiffs and each member of the Class provided significant value to Walden University in the form of tuition payments for master's thesis courses and/or doctoral dissertation courses as contracted.

166.    Furthermore, Plaintiffs and each member of the Class complied with their obligations under the contract.  To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Walden University.

167.    The breach of contract on the part of Walden University has resulted in Walden's master's and doctoral students enrolling in thesis and dissertation courses that would not be necessary if Walden University had honored its contract and, in many instances, caused Class members to stop pursuing their education altogether.

168.    Despite its knowing and intentional breaching of the contracts, Walden University has retained the tuition payments made by the members of the Class.

169.    Walden University has breached its contracts for master's and doctoral education services with Plaintiffs and each member of the Class.  Walden's breach has caused damage to Plaintiffs and each member of the Class in the form of additional tuition payments for master's thesis and doctoral dissertation courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made before being forced to stop pursuing their education.

170.    Moreover, Walden University has breached its contracts for master's and doctoral educational services with Plaintiffs and each member of the Class by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract.  Walden University has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiffs and each member of the Class. Walden's breach has caused damage to Plaintiffs and each member of the Class in the form of additional tuition payments for master's thesis and doctor dissertation courses and, in many

instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made before being forced to stop pursuing their education.

**THIRD CAUSE OF ACTION**
**Violations of the Maryland Consumer Protection Act**
**Md Code, § 13-301 of the Commercial Law Article,** *et seq.*

171.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

172.    Plaintiffs bring this cause of action on behalf of a nationwide Class.  Walden University has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

173.    Md. Code, § 13-303(3) of the Commercial Law Article ("C.L."), specifically prohibits the use of unfair or deceptive trade practices in the "offer for sale of course credit or other educational services."

174.    By engaging in the above-described acts and practices, Walden University has committed one or more acts of unfair and deceptive trade practices as those terms are defined in C.L. § 13-301.

175.    Walden University made false and misleading statements about the nature, quality, length, and cost of its master's and doctoral education services.  Specifically, Walden University misrepresented that, in connection with providing master's and/or doctoral educational services: 1) the process for obtaining a dissertation or thesis supervisory chair and member would be reasonable and not burdensome; 2) there would be reasonable stability in faculty member retention such that the process for obtaining a dissertation or thesis supervisory chair and member would not be repeated, much less repeated multiple times; and 3) appropriate and timely feedback (within 14 days) would be provided to students with respect to their dissertation or thesis work.

176.     Walden University also knowingly concealed, omitted and otherwise failed to state material facts about its master's and doctoral education services that would tend to, and did, in fact, deceive students.  Specifically, Walden University failed to disclose that it intentionally and deliberately used its dissertation and thesis process as a means of improperly extracting tuition and generating revenue.  Walden University further failed to disclose that it knowingly directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members.

177.     Walden University knew that the master's thesis and doctoral dissertation coursework was and continues to be systematically prolonged by the violations set forth herein.

178.     The misrepresentations and omissions were material to Plaintiffs and the members of the Class.

179.     Walden University's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices, in violation of C.L. § 13-303.

180.     Plaintiffs and members of the Class relied on these representations and omissions in the course of pursuing their master's and doctoral degrees.  Furthermore, Walden University intended that Plaintiffs and members of the Class would rely on the representations and omissions.

181.     As a direct and proximate result of Walden University's unfair and deceptive practices and acts, Plaintiffs and the Class have suffered and will continue to suffer actual damages.  Had Plaintiffs and the members of the Class been aware of the misrepresentations and

omissions, they would not have paid tuition to Walden University for the educational services that Defendant purported to provide.

## FOURTH CAUSE OF ACTION
### (Alternative California Sub-Class)
### Violations of the California Unfair Competition Law
### Bus. & Prof. Code §§ 17200, *et seq.*

182.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

183.    Plaintiff Travis brings this cause of action, in the alternative, on behalf of a California Sub-Class.   Walden University has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

184.    By engaging in the above-described acts and practices, Walden University has committed one or more acts of unfair competition within the meaning of the Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*

185.    Plaintiff Travis and each member of the California Sub-Class reasonably expected that their master's thesis and doctoral dissertation education services would not be designed so that the students would be required to take many more quarters of thesis and dissertation coursework than necessary to obtain a master's degree or PhD.

186.    Walden University made false and misleading statements about the nature, quality, length, and cost of its master's and doctoral education services.  Specifically, Walden University misrepresented that, in connection with providing master's and/or doctoral educational services: 1) the process for obtaining a dissertation or thesis supervisory chair and member would be reasonable and not burdensome; 2) there would be reasonable stability in faculty member retention such that the process for obtaining a dissertation or thesis supervisory chair and member would not be repeated, much less repeated multiple times; and 3) appropriate

and timely feedback (within 14 days) would be provided to students with respect to their dissertation or thesis work.

187.    Walden University also knowingly concealed, omitted and otherwise failed to state material facts about its master's and doctoral education services that would tend to, and did in fact, deceive students.  Specifically, Walden University failed to disclose that it intentionally and deliberately used its dissertation and thesis process as a means of improperly extracting tuition and generating revenue.  Walden University further failed to disclose that it knowingly directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members.

188.    Walden University knew that its master's thesis and doctoral dissertation coursework was and continues to by systematically prolonged by the violations set forth herein.

189.    The misrepresentations and omissions were material to Plaintiff Travis and the members of the California Sub-Class.

190.    Walden University's unfair, unlawful and fraudulent trade practices and acts occurred and continue to occur repeatedly during the course of Defendant's business.

191.    Plaintiff Travis and members of the California Sub-Class relied on these representations and omissions in the course of pursuing their master's and doctoral degrees. Furthermore, Walden University intended that Plaintiff Travis and members of the California Sub-Class would rely on the representations and omissions.

192.    As a direct and proximate result of Walden University's unfair and deceptive practices and acts, Plaintiff Travis and the members of the California Sub-Class have suffered

and will continue to suffer actual damages.   Had Plaintiff Travis and the members of the California Sub-Class been aware of the true nature of the misrepresentations and omissions, they would not have paid tuition to Walden University for the educational services that Defendant purported to provide.

193.   The injury to Plaintiff Travis and members of the California Sub-Class by this conduct greatly outweighs any alleged benefit to students or competition under the circumstances.

194.   As a direct and proximate result of Walden University's unfair and deceptive practices and acts, Plaintiff Travis and the California Sub-Class have suffered and will continue to suffer actual damages.

195.   Each of Walden University's acts and practices are unlawful because they violate Civil Code §§ 1572, 1688, 1709-1710, 1770(a)(5), 1770(a)(7), 1770(a)(9), (1770(a)(19) and California Commercial Code §§ 17500, *et seq*.  Specifically, Walden University marketed and sold master's and doctoral education services while intentionally failing to disclose the systematic prolonging of the process that exists within the degree programs that causes students to enroll in more coursework and pay more tuition than necessary.  Walden University was and is under a duty to disclose this systematic prolonging of education.  The marketing, sales and representations to potential students, as well as the concomitant omissions, were and are material.

196.   Walden University has been unjustly enriched and should be required to make restitution, ordered to disgorge improper tuition payments, provide injunctive relief to Plaintiff Travis and members of the California Sub-Class, and any other relief allowed under the UCL, plus interest, attorneys' fees and costs pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

## FIFTH CAUSE OF ACTION
### (Alternative California Sub-Class)
### Unjust Enrichment

197.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

198.    Plaintiff Travis brings this cause of action, in the alternative, on behalf of a California Sub-Class under California common law.  Walden University has engaged in unjust conduct, to the detriment of Plaintiff Travis and each member of the California Sub-Class.

199.    Plaintiffs Travis and each member of the California Sub-Class provided significant value to Walden University in the form of tuition payments for master's thesis courses and/or doctoral dissertation courses.

200.    Walden University appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Travis and each member of the California Sub-Class.

201.    Although Walden University accepted the tuition payments and retained and received benefit therefrom, it did not provide students with a doctoral and/or thesis process that was promised and contemplated in connection with the payment of the tuition.   On the contrary, Walden University intentionally and deliberately used the dissertation and thesis process as a means of improperly extracting tuition and generating revenue.  Walden has intentionally and knowingly directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members.  All of this is done without any honestly or transparency by Walden regarding the actual time and expense that its master's and doctoral students will incur in an effort to complete their degrees.

202.    This unjust conduct on the part of Walden University has resulted in Walden University master's and doctoral students enrolling in thesis and dissertation courses that would not be necessary if Walden University had not acted unjustly and in incurring significant additional tuition costs.  It has also caused certain California Sub-Class members to stop pursuing the process altogether.

203.    Despite its inequitable conduct, Walden University has retained the tuition payments made by Walden University master's and doctoral students pursuing thesis and dissertation coursework.

204.    As a result, Walden University has been unjustly enriched, to the detriment of Plaintiff Travis and the members of the California Sub-Class.

### SIXTH CAUSE OF ACTION
### (Alternative California Sub-Class)
### Breach of Contract

205.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

206.    Plaintiff Travis brings this cause of action, in the alternative, on behalf of a California Sub-Class under California common law.  Walden University has systematically violated its contracts with Plaintiff Travis and each member of the California Sub-Class.

207.    Plaintiff Travis and each member of the California Sub-Class contracted with Walden University to obtain master's and/or doctoral educational services.  Implied in each and every contract was a covenant of good faith and fair dealing.

208.    As part of the contract, Walden University promised, *inter alia*, that, in connection with providing master's and/or doctoral educational services: 1) the process for obtaining a dissertation or thesis supervisory chair and member would be reasonable and not

burdensome; 2) there would be reasonable stability in faculty member retention such that the process for obtaining a dissertation or thesis supervisory chair and member would not be repeated, much less repeated multiple times; and 3) appropriate and timely feedback (within 14 days) would be provided to students with respect to their dissertation or thesis work.

209.    Rather than provide master's and doctoral educational services as per their contractual agreement, Walden University has instead knowingly and intentionally directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members.  All of this is done without any honesty or transparency by Walden regarding the actual time and expense that its master's and doctoral students will incur in an effort to complete their degrees.  The policy implemented by Walden University unquestionably breaches its contracts with Plaintiff Travis and the California Sub-Class.

210.    Plaintiff Travis and each member of the California Sub-Class provided significant value to Walden University in the form of tuition payments for master's thesis courses and/or doctoral dissertation courses as contracted.

211.    Furthermore, Plaintiff Travis and each member of the California Sub-Class complied with their obligations under the contract.  To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Walden University.

212.    The breach of contract on the part of Walden University has resulted in its master's and doctoral students enrolling in thesis and dissertation courses that would not be

necessary if Walden University had honored its contract and, in many instances, caused California Sub-Class members to stop pursuing their education altogether.

213.    Despite their knowing and intentional breaching of the contracts, Walden University has retained the tuition payments made by the members of the California Sub-Class.

214.    Walden University has breached its contracts for master's and doctoral education services with Plaintiff Travis and each member of the California Sub-Class.  Walden's breach has caused damage to Plaintiff Travis and each member of the California Sub-Class in the form of additional tuition payments for master's thesis and doctoral dissertation courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made before being forced to stop pursuing their education.

215.    Moreover, Walden University has breached its contracts for master's and doctoral education services with Plaintiff Travis and each member of the California Sub-Class by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract.  Walden University has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Travis and each member of the California Sub-Class.  Walden's breach has caused damage to Plaintiff Travis and each member of the California Sub-Class in the form of additional tuition payments for master's thesis and doctor dissertation courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made before being forced to stop pursuing their education.

## SEVENTH CAUSE OF ACTION
### (Alternative California Sub-Class)
### Breach of Implied Covenant of Good Faith and Fair Dealing

216.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

217.    Plaintiff Travis brings this cause of action, in the alternative, on behalf of a California Sub-Class under California common law.  Walden University has systematically violated its contracts with Plaintiff Travis and each member of the California Sub-Class.

218.    Plaintiff Travis and each member of the California Sub-Class contracted with Walden University to obtain master's and/or doctoral education services.

219.    Implied in each and every contract was a covenant of good faith and fair dealing.

220.    Plaintiff Travis and each member of the California Sub-Class provided value to Walden University in the form of tuition payments for master's thesis courses and/or doctoral dissertation courses as contracted.

221.    By the scheme and conduct detailed herein, Walden University has breached the implied duty of good faith and fair dealing implied in its contracts.

222.    This breach on the part of Walden University has resulted in Walden University master's and doctoral students being damaged because they were required to enroll in thesis and dissertation courses that would not have otherwise been necessary, thereby necessitating substantial additional tuition payments.  In addition, many students have been forced to stop pursuing their education.

## EIGHTH CAUSE OF ACTION
### (Alternative Illinois Sub-Class)
### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 ILCS 505/1, *et seq.*

223.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

224.    Plaintiff Zitter brings this cause of action, in the alternative, on behalf of an Illinois Sub-Class.  Walden University has engaged in unfair, unlawful, deceptive and fraudulent business practices, as set forth above.

225.    The provision of education is, *inter alia*, a service which is encompassed by the protections of the statute.

226.    By engaging in the above-described acts and practices, Walden University has committed one or more acts of unfair competition within the meaning of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.

227.    Plaintiff Zitter and each member of the Illinois Sub-Class reasonably expected that their master's thesis and doctoral dissertation education services would not be designed so that they would be required to take many more quarters of thesis and dissertation coursework than necessary to obtain a master's degree or PhD.

228.    Walden University made false and misleading statements about the nature, quality, length, and cost of its master's and doctoral education services.  Specifically, Walden University misrepresented that, in connection with providing master's and/or doctoral educational services: 1) the process for obtaining a dissertation or thesis supervisory chair and member would be reasonable and not burdensome; 2) there would be reasonable stability in faculty member retention such that the process for obtaining a dissertation or thesis supervisory chair and member would not be repeated, much less repeated multiple times; and 3) appropriate

and timely feedback (within 14 days) would be provided to students with respect to their dissertation or thesis work.

229.    Walden University also knowingly concealed, omitted and otherwise failed to state material facts about its master's and doctoral education services that would tend to, and did, in fact, deceive students.  Specifically, Walden University failed to disclose that it intentionally and deliberately used its dissertation and thesis process as a means of improperly extracting tuition and generating revenue.  Walden University further failed to disclose that it knowingly directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members.

230.    Walden University knew that its master's thesis and doctoral dissertation coursework was and continues to by systematically prolonged by the violations set forth herein.

231.    The misrepresentations and omissions were material to Plaintiff Zitter and the members of the Illinois Sub-Class.

232.    Walden University's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of Defendant's business.  These actions constitute unfair and deceptive trade practices.

233.    Plaintiff Zitter and members of the Illinois Sub-Class relied on these representations and omissions in the course of pursuing their master's and doctoral degrees. Furthermore, Walden University intended that Plaintiff Zitter and members of the Illinois Sub-Class would rely on the representations and omissions.

234.    As a direct and proximate result of Walden University's unfair and deceptive practices and acts, Plaintiff Zitter and the members of the Illinois Sub-Class have suffered and will continue to suffer actual damages.  Had Plaintiff Zitter and the members of the Illinois Sub-Class been aware of the true nature of the misrepresentations and omissions, they would not have paid tuition to Walden University for the educational services that Defendant purported to provide.

**NINTH CAUSE OF ACTION**
**(Alternative Illinois Sub-Class)**
**Unjust Enrichment**

235.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

236.    Plaintiff Zitter brings this cause of action, in the alternative, on behalf of an Illinois Sub-Class under Illinois common law.   Walden University has engaged in unjust conduct, to the detriment of Plaintiff Zitter and each member of the Illinois Sub-Class.

237.    Plaintiff Zitter and each member of the Illinois Sub-Class provided significant value to Walden University in the form of tuition payments for master's thesis courses and/or doctoral dissertation courses.

238.    Walden University appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Zitter and each member of the Illinois Sub-Class.

239.    Although Walden University accepted the tuition payments and retained and received benefit therefrom, it did not provide students with a doctoral and/or thesis process that was promised and contemplated in connection with the payment of the tuition.   On the contrary, Walden University intentionally and deliberately used the dissertation and thesis process as a means of improperly extracting tuition and generating revenue.  Walden has intentionally and

knowingly directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or transparency by Walden regarding the actual time and expense that its master's and doctoral students will incur in an effort to complete their degrees.

240.   This unjust conduct on the part of Walden University has resulted in Walden University master's and doctoral students enrolling in thesis and dissertation courses that would not be necessary if Walden University had not acted unjustly in causing Class members to incur significant, additional tuition costs. It has also caused certain Illinois Sub-Class members to stop pursuing the process altogether.

241.   Despite its inequitable conduct, Walden University has retained the tuition payments made by Walden University master's and doctoral students pursuing thesis and dissertation coursework.

242.   As a result, Walden University has been unjustly enriched, to the detriment of Plaintiff Zitter and the members of the Illinois Sub-Class.

## TENTH CAUSE OF ACTION
### (Alternative Illinois Sub-Class)
### Breach of Contract

243.   Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

244.   Plaintiff Zitter brings this cause of action, in the alternative, on behalf of an Illinois Sub-Class under Illinois common law. Walden University has systematically violated its contracts with Plaintiff Zitter and each member of the Illinois Sub-Class.

245.    Plaintiff Zitter and each member of the Illinois Sub-Class contracted with Walden University to obtain master's and/or doctoral educational services.  Implied in each and every contract was a covenant of good faith and fair dealing.

246.    As part of the contract, Walden University promised, *inter alia*, that, in connection with providing master's and/or doctoral educational services: 1) the process for obtaining a dissertation or thesis supervisory chair and member would be reasonable and not burdensome; 2) there would be reasonable stability in faculty member retention such that the process for obtaining a dissertation or thesis supervisory chair and member would not be repeated, much less repeated multiple times; and 3) appropriate and timely feedback (within 14 days) would be provided to students with respect to their dissertation or thesis work.

247.    Rather than provide master's and doctoral educational services as per their contractual agreement, Walden University has instead knowingly and intentionally directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members.  All of this is done without any honesty or transparency by Walden regarding the actual time and expense that its master's and doctoral students will incur in an effort to complete their degrees.  The policy implemented by Walden University unquestionably breaches its contracts with Plaintiff Zitter and the Illinois Sub-Class.

248.    Plaintiff Zitter and each member of the Illinois Sub-Class provided significant value to Walden University in the form of tuition payments for master's thesis courses and/or doctoral dissertation courses as contracted.

249.    Furthermore, Plaintiff Zitter and each member of the Illinois Sub-Class complied with their obligations under the contract.  To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Walden University.

250.    The breach of contract on the part of Walden University has resulted in Walden University master's and doctoral students enrolling in thesis and dissertation courses that would not be necessary if Walden University had honored its contract and, in many instances, caused Illinois Sub-Class members to stop pursuing their education altogether.

251.    Despite its knowing and intentional breaching of the contracts, Walden University has retained the tuition payments made by the members of the Illinois Sub-Class.

252.    Walden University has breached its contracts for master's and doctoral education services with Plaintiff Zitter and each member of the Illinois Sub-Class. Walden's breach has caused damage to Plaintiff Zitter and each member of the Illinois Sub-Class in the form of additional tuition payments for master's thesis and doctoral dissertation courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made before being forced to stop pursuing their education.

253.    Moreover, Walden University has breached its contracts for master's and doctoral education services with Plaintiff Zitter and each member of the Illinois Sub-Class by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract.  Walden University has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Zitter and each member of the Illinois Sub-Class.  Walden's breach has caused damage to Plaintiff Zitter and each member of the Illinois Sub-Class in the form of additional tuition payments for master's thesis and doctor

dissertation courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made before being forced to stop pursuing their education.

## ELEVENTH CAUSE OF ACTION
### (Alternative New York Sub-Class)
### Violations of the New York General Business Law, Deceptive Acts and Practices
### (N.Y. Gen. Bus. Law § 349)

254.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

255.    Walden's business acts and practices alleged herein constitute deceptive acts or practices under the New York General Business Law, Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349 ("NYGBL").

256.    Plaintiff Goldbas and each member of the New York Sub-Class reasonably expected that their master's thesis and doctoral dissertation education services would not be designed so that the students would be required to take many more quarters of thesis and dissertation coursework than necessary to obtain a master's degree or PhD.

257.    Walden University made false and misleading statements about the nature, quality, length, and cost of its master's and doctoral education services.  Specifically, Walden University misrepresented that, in connection with providing master's and/or doctoral educational services: 1) the process for obtaining a dissertation or thesis supervisory chair and member would be reasonable and not burdensome; 2) there would be reasonable stability in faculty member retention such that the process for obtaining a dissertation or thesis supervisory chair and member would not be repeated, much less repeated multiple times; and 3) appropriate and timely feedback (within 14 days) would be provided to students with respect to their dissertation or thesis work.

258.    Walden University also knowingly concealed, omitted and otherwise failed to state material facts about its master's and doctoral education services that would tend to, and did in fact, deceive students.  Specifically, Walden University failed to disclose that it intentionally and deliberately used its dissertation and thesis process a as means of improperly extracting tuition and generating revenue.  Walden University further failed to disclose that it knowingly directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members.

259.    Walden University knew that its master's thesis and doctoral dissertation coursework was and continues to by systematically prolonged by the violations set forth herein.

260.    The misrepresentations and omissions were material to Plaintiff Goldbas and the members of the New York Sub-Class.

261.    Walden University's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of Defendant's business.  These actions constitute unfair and deceptive trade practices.

262.    Plaintiff Goldbas and members of the New York Sub-Class relied on these representations and omissions in the course of pursuing their master's and doctoral degrees. Furthermore, Walden University intended that Plaintiff Goldbas and members of the New York Sub-Class would rely on the representations and omissions.

263.    As a direct and proximate result of Walden University's unfair and deceptive practices and acts, Plaintiff Goldbas and the members of the New York Sub-Class have suffered and will continue to suffer actual damages and ascertainable loss.  It was reasonably foreseeable

that Walden University's conduct would cause Plaintiff Goldbas and the members of the New York Sub-Class to be harmed.  Had Plaintiff Goldbas and the members of the New York Sub-Class been aware of the true nature of the misrepresentations and omissions, they would not have paid tuition to Walden University for the educational services that Defendant purported to provide.

264.    The practices of Walden, described throughout this Complaint, violate the NYGBL for, *inter alia*, one or more of the following reasons;

    a.  Walden engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the dissertation and thesis process, which did, or tended to, mislead Plaintiff Goldbas and the members of the New York Sub-Class about facts that could not reasonably be known by them;

    b.  Walden failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

    c.  Walden caused Plaintiff Goldbas and the New York Sub-Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

    d.  Walden failed to reveal material facts to Plaintiff Goldbas and the New York Sub-Class with the intent that they rely upon the omission;

    e.  Walden made material representations and statements of fact to Plaintiff Goldbas and the New York Sub-Class that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

    f.   Walden intended that Plaintiff Goldbas and the New York Sub-Class rely on its misrepresentations and omissions, so that Plaintiff Goldbas and the New York Sub-Class would pay tuition in connection with receiving educational services from Defendant.

265.   Under all of the circumstances, Walden's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton, and outrageous such as to shock the conscience of the community and warrant punitive damages.

266.   Walden's actions impact the public interest because Plaintiff Goldbas and the members of the New York Sub-Class were injured in exactly the same way of hundreds of other students who were victimized by Defendant's scheme.

267.   Had Plaintiff Goldbas and the other members of the New York Sub-Class known the truth about Walden's scheme, they would not have paid tuition to receive educational services from it.

268.   The foregoing acts, omissions and practices proximately caused Plaintiff Goldbas and the other members of the New York Sub-Class to suffer actual damages and, as such, they are entitled to recover such damages, together with all other appropriate damages, attorneys' fees and costs of suit.

## TWELFTH CAUSE OF ACTION
### (Alternative New York Sub-Class)
### Unjust Enrichment

269.   Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

270.    Plaintiff Goldbas brings this cause of action, in the alternative, on behalf of a New York Sub-Class under New York common law.   Walden University has engaged in unjust conduct, to the detriment of Plaintiff Goldbas and each member of the New York Sub-Class.

271.    Plaintiff Goldbas and each member of the New York Sub-Class provided significant value to Walden University in the form of tuition payments for master's thesis courses and/or doctoral dissertation courses.

272.    Walden University appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Goldbas and each member of the New York Sub-Class.

273.    Although Walden University accepted the tuition payments and retained and received benefit therefrom, it did not provide students with a doctoral and/or thesis process that was promised and contemplated in connection with the payment of the tuition.   On the contrary, Walden University intentionally and deliberately used the dissertation and thesis process as a means of improperly extracting tuition and generating revenue.   Walden has intentionally and knowingly directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members.   All of this is done without any honestly or transparency by Walden regarding the actual time and expense that its master's and doctoral students will incur in an effort to complete their degrees.

274.    This unjust conduct on the part of Walden University has resulted in Walden's master's and doctoral students enrolling in thesis and dissertation courses that would not be necessary if Walden University had not acted unjustly in causing Class members to incur

significant, additional tuition costs. It has also caused certain New York Sub-Class members to stop pursuing the process altogether.

275. Despite its inequitable conduct, Walden University has retained the tuition payments made by Walden University master's and doctoral students pursuing thesis and dissertation coursework.

276. As a result, Walden University has been unjustly enriched, to the detriment of Plaintiff Goldbas and the members of the New York Sub-Class.

**THIRTEENTH CAUSE OF ACTION**
**(Alternative New York Sub-Class)**
**Breach of Contract**

277. Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

278. Plaintiff Goldbas brings this cause of action, in the alternative, on behalf of a New York Sub-Class under New York common law. Walden University has systematically violated its contracts with Plaintiff Goldbas and each member of the New York Sub-Class.

279. Plaintiff Goldbas and each member of the New York Sub-Class contracted with Walden University to obtain master's and/or doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

280. As part of the contract, Walden University promised, *inter alia*, that, in connection with providing master's and/or doctoral educational services: 1) the process for obtaining a dissertation or thesis supervisory chair and member would be reasonable and not burdensome; 2) there would be reasonable stability in faculty member retention such that the process for obtaining a dissertation or thesis supervisory chair and member would not be

repeated, much less repeated multiple times; and 3) appropriate and timely feedback (within 14 days) would be provided to students with respect to their dissertation or thesis work.

281.   Rather than provide master's and doctoral educational services as per their contractual agreement, Walden University has instead knowingly and intentionally directed and implemented a dissertation and thesis process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members.  All of this is done without any honesty or transparency by Walden regarding the actual time and expense that its master's and doctoral students will incur in an effort to complete their degrees.  The policy implemented by Walden University unquestionably breaches its contracts with Plaintiff Goldbas and the New York Sub-Class.

282.   Plaintiff Goldbas and each member of the New York Sub-Class provided significant value to Walden University in the form of tuition payments for master's thesis courses and/or doctoral dissertation courses as contracted.

283.   Furthermore, Plaintiff Goldbas and each member of the New York Sub-Class complied with their obligations under the contract.  To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Walden University.

284.   The breach of contract on the part of Walden University has resulted in Walden University master's and doctoral students enrolling in thesis and dissertation courses that would not be necessary if Walden University had honored its contract and, in many instances, caused New York Sub-Class members to stop pursuing their education altogether.

285.     Despite its knowing and intentional breaching of the contracts, Walden University has retained the tuition payments made by the members of the New York Sub-Class.

286.     Walden University has breached its contracts for master's and doctoral education services with Plaintiff Goldbas and each member of the New York Sub-Class. Walden's breach has caused damage to Plaintiff Goldbas and each member of the New York Sub-Class in the form of additional tuition payments for master's thesis and doctoral dissertation courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made before being forced to stop pursuing their education.

287.     Moreover, Walden University has breached its contracts for master's and doctoral education services with Plaintiff Goldbas and each member of the New York Sub-Class by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract.  Walden University has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Goldbas and each member of the New York Sub-Class.  Walden's breach has caused damage to Plaintiff Goldbas and each member of the New York Sub-Class in the form of additional tuition payments for master's thesis and doctor dissertation courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made before being forced to stop pursuing their education.

## FOURTEENTH CAUSE OF ACTION
### (Alternative New York Sub-Class)
### Breach of Implied Covenant of Good Faith and Fair Dealing

288.     Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

289.    Plaintiff Goldbas brings this cause of action, in the alternative, on behalf of a New York Sub -Class under New York common law.  Walden University has systematically violated its contracts with Plaintiff Goldbas and each member of the New York Sub-Class.

290.    Plaintiff Goldbas and each member of the New York Sub-Class contracted with Walden University to obtain master's and/or doctoral education services.

291.    Implied in each and every contract was a covenant of good faith and fair dealing.

292.    Plaintiff Goldbas and each member of the New York Sub-Class provided value to Walden University in the form of tuition payments for master's thesis courses and/or doctoral dissertation courses as contracted.

293.    By the scheme and conduct detailed herein, Walden University has breached the implied duty of good faith and fair dealing implied in its contracts.

294.    This breach on the part of Walden University has resulted in Walden University master's and doctoral students being damaged because they were required to enroll in thesis and dissertation courses that would not have otherwise been necessary, thereby necessitating substantial additional tuition payments.  In addition, many students have been forced to stop pursuing their education.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and members of the Class request that the Court enter an Order or judgment against Walden University as follows:

A.    Certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.    Awarding Plaintiffs and other members of the Class damages and all other relief available under the claims alleged;

C.      Awarding Plaintiffs and other members of the Class pre-judgment and post-judgment interest as a result of the wrongs complained of herein;

D.      Awarding Plaintiffs and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and other costs of litigation;

E.      Requiring Walden University to disgorge the revenue earned through the excessive master's thesis and doctoral dissertation coursework;

F.      Enjoining Walden University from engaging in the conduct described herein;

G.      Awarding Plaintiffs and other members of the Class restitution; and

H.      Awarding such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: March 17, 2015                    Respectfully Submitted,

**JOSEPH, GREENWALD & LAAKE, P.A.**

*/s/ Matthew M. Bryant*
Timothy F. Maloney          (Bar No. 03381)
Matthew M. Bryant          (Bar No. 18014)
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Telephone:  (301) 220-2200
Facsimile:  (301) 220-1214
Email:       tmaloney@jgllaw.com
             mbryant@jgllaw.com

**EDGAR LAW FIRM LLC**
John F. Edgar             (MO 47128)
Alexander T. Ricke        (MO 65132)
1032 Pennsylvania Ave.
Kansas City, MO 64105
Telephone:  (816) 531-0033
Facsimile:  (816) 531-3322
Email:       jfe@edgarlawfirm.com
             atr@edgarlawfirm.com

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
James C. Shah             (CA SBN 260435)
35 East State Street
Media, PA 19063
Telephone:  (610) 891-9880
Facsimile:  (866) 300-7367
Email:       jshah@sfmslaw.com

*Counsel for Plaintiffs Yolanda R. Travis,
Leah Zitter and Abbie Goldbass
and the Proposed Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of March, 2015, a copy of the foregoing was served on all counsel of record through the Court's ECF System.

*/s/ Matthew M. Bryant*
Matthew M. Bryant