```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                        NORTHERN DIVISION

 3   YOLANDA RENE TRAVIS, et al.,    )
          Plaintiffs,                )
 4                                   )
          vs.                        ) CIVIL NO. MJG-15-0235
 5                                   )
     WALDEN UNIVERSITY, LLC., et al., )
 6        Defendants.                )
     _____)
 7

 8

 9                   Friday, October 16, 2015
                        Courtroom 5C
10                     Baltimore, Maryland

11
             BEFORE:  THE HONORABLE MARVIN J. GARBIS, JUDGE
12

13
                       MOTIONS HEARING
14

15   For the Plaintiffs:

16   Timothy Maloney, Esquire
     James Shah, Esquire
17   Alexander Ricke, Esquire

18   For the Defendants:

19   Robert Brennen, Esquire
     Kathleen Pontone, Esquire
20   Stephanie Baron, Esquire
     Anthony Kraus, Esquire
21   _____

22
                        Reported by:
23
                    Douglas J. Zweizig, RDR, CRR
24                  Federal Official Court Reporter
                    101 W. Lombard Street, 4th Floor
25                     Baltimore, Maryland  21201
```

<u>P R O C E E D I N G S</u>

**THE CLERK:** The matter now pending before this Court is Civil Docket MJG-15-0235, Yolanda René Travis versus Walden, LLC, et al. The matter now comes before this Court for a motions hearing.

Counsel, please identify yourselves for the record.

**MR. MALONEY:** Good morning, Your Honor. Timothy Maloney for the plaintiffs.

**MR. SHAH:** Good morning, Your Honor. James Shah for the plaintiffs.

**MR. RICKE:** Good morning, Your Honor. Alex Ricke for the plaintiffs.

**MR. BRENNEN:** Good morning, Your Honor. Robert Brennen on behalf of the defendant, Walden University.

**MS. PONTONE:** Good morning, Judge Garbis. Kathy Pontone for Walden University.

**MS. BARON:** Good morning, Judge Garbis. Stephanie Baron on behalf of Walden University.

**MR. KRAUS:** Good morning. Anthony Kraus, also for Walden University.

**THE COURT:** Okay. Good morning. You may be seated.

First of all, I'm happy to see here counsel that I know on both sides from other experiences.

But no patents, Mr. Brennen.

No wheelchairs, Ms. Pontone.

1           None of that other stuff, Mr. Maloney.

2           Naturally, I have read all the materials.  And I think

3    it's extremely important in this case to try to get a measure

4    of realism here and by confronting what it is those people on

5    the other side actually say, not what we would like them to

6    have said, and to try to understand what this case is about.

7           I just want to start off with what this case is about.

8           First of all, Mr. Maloney, you are not suing on any

9    theory of negligence; is that correct?

10          **MR. MALONEY:**  That's correct, Your Honor.

11          **THE COURT:**  So why don't we spend an hour talking

12   about why you don't have a valid negligence case.  It would

13   seem that that's -- there's no need to discuss it; right?  If I

14   say "All claims for negligence are hereby dismissed," you

15   wouldn't care, Mr. Maloney; right?

16          **MR. MALONEY:**  Wouldn't care.

17          **THE COURT:**  All right.  Fine.

18          Who's speaking for the defense?

19          **MR. BRENNEN:**  I am, Your Honor.

20          **THE COURT:**  All right.

21          **MR. BRENNEN:**  Robert Brennen.

22          **THE COURT:**  You understand all negligence claims are

23   dismissed; correct?  Can you restrain yourself from attacking

24   the nonexistent negligence claims?

25          **MR. BRENNEN:**  I will do my best, Your Honor.

1    **THE COURT:**  Yes.  I know it's hard.

2        All right.  Secondly, what you say is -- and I'm

3  quoting:  According to plaintiffs, Walden purposefully engages

4  in a systematic prolonging of the dissertation process in order

5  to collect more tuition from students.

6        While said by the defendants, Mr. Maloney, that's an

7  accurate statement, isn't it?

8    **MR. MALONEY:**  It is.

9    **THE COURT:**  Okay.  All right.

10        Mr. Brennen, is -- are plaintiffs unable to have a

11  valid claim if, by some miracle, they could prove that Walden

12  engaged in that systematic prolonging of the dissertation

13  process?

14    **MR. BRENNEN:**  Well, Your Honor, as I'm prepared to

15  discuss, there's woefully insufficient facts alleged to support

16  such an allegation.

17    **THE COURT:**  We've progressed.

18        So the theory is not invalid.  The allegations are

19  insufficient; is that right?

20    **MR. BRENNEN:**  We would submit that the theory is

21  invalid and --

22    **THE COURT:**  Well, let's go back to the same question

23  which I asked before.

24        We've finally got agreement that plaintiffs are

25  alleging a fraudulent scheme to delay and collect additional

tuition.  That's a good summary, Mr. Maloney?

    **MR. MALONEY:**  It is.

    **THE COURT:**  All right.  And you're saying if they could prove that, they would not have a valid theory; that is, your client could engage in a fraudulent scheme without having any liability?

    **MR. BRENNEN:**  No, Your Honor, we're not saying that. What we are saying is that if -- if there were such facts that could be properly alleged, it wouldn't -- this Court would not be the place for them to bring a complaint about that scheme because --

    **THE COURT:**  Wait a minute.  Let's try and analyze this, because we've already wiped out the nonexistent negligence claims.

    So you're saying if there is a fraudulent scheme that causes a student to pay excess tuition, that's wrong, but that cannot be addressed in this Court; is that right?

    **MR. BRENNEN:**  That's correct, Your Honor.

    **THE COURT:**  Okay.  Well, that's interesting.

    I mean, assuming there's diversity or some other federal jurisdiction, let us then just try to understand this.

    So, again, I'm testing the legal theory to try to get the focus on what's really at issue.  It's not a question that they didn't -- even if they adequately alleged the fraudulent scheme, I'd throw them out because I don't want to hear it.

*Douglas J. Zweizig, RDR, CRR - Federal Official Court Reporter*

1    Okay.  So a university has a -- gets somebody to pay

2    tuition in order to take a course on whatever -- whatever, a

3    computer literacy -- and then the student shows up and they

4    say, Well, we don't have such a course, but we're keeping your

5    tuition anyhow.  And there's a scheme to do that.  You're

6    saying that there's no recourse?

7         **MR. BRENNEN:**  In the hypothetical that Your Honor just

8    described, I would -- there are cases and the Creighton -- the

9    Ross v. Creighton case is one of them where courts have found

10   an exception to the bar against claims that amount to

11   educational malpractice claims, whether pled as tort or

12   contract or statutory violation, in the instances where there

13   are facts alleged that a specific promise has been made by the

14   university and the university has utterly failed to comply with

15   that promise.

16        **THE COURT:**  But your contention is that there's no

17   recourse if you're defrauded.  And that is by -- let us try and

18   address this.  A student is told that your paper has been

19   analyzed and it's no good, and you have to write it again and

20   pay another couple thousand dollars, again and again and again.

21   Not on the merits, but because the plaintiffs in that case

22   could prove the university had a consistent practice of, number

23   one, never really looking at the paper.

24        I'm not saying these are these facts.  But no matter

25   what was submitted, it wasn't good enough because we'd have to

get additional tuition.  You're saying, And the university

could do that without a lawsuit, without being sued?

   **MR. BRENNEN:**  A university that did that, Your Honor,

we would submit, wouldn't be in business very long because the

students could complain to the state offices of higher

education about such a practice, and they would likely lose

their licensure.

   **THE COURT:**  Well, that's true.  But -- so they

couldn't sue and get their tuition back?

   **MR. BRENNEN:**  No.

   **THE COURT:**  Okay.  All right.  Well, perhaps we could

just start with that, Mr. Maloney, that the -- or, Mr. Shah, is

it?  I mean, the defense position is -- and, again, remember,

I've now thrown out your negligence claims.

   **MR. SHAH:**  Correct.

   **THE COURT:**  So that -- and I hesitate to bring another

case, but it does sound to me like there's a certain analogy

here that the scheme is once you sign up -- again, I'm not

saying that you could prove this or even that you've alleged

this, but that once you sign up, no matter what you submit, the

practice is:  It's no good; pay us more money.  It's no good;

pay us more money.

   And the defense theory is:  Well, that's too bad; we

can keep your tuition.

   Now, I must say, Mr. Brennen, that's a pretty shocking

1    position, but perhaps Mr. Shah can explain what it is you're

2    talking about.

3          **MR. BRENNEN:**  Well, one point of clarification before

4    he begins is that I'm not saying that the student wouldn't have

5    a means of redress to get the tuition back.  It just wouldn't

6    be in the Federal Court.

7          **THE COURT:**  Well, why would that not be in

8    Federal Court if there were diversity?

9          **MR. BRENNEN:**  Because it's not a cognizable claim

10   under the laws of any of the states that are implicated in this

11   case.

12         **THE COURT:**  Well, then you're saying it could not be a

13   claim in any court.  There's nothing federal about it.

14         **MR. BRENNEN:**  You're absolutely right, Your Honor.

15   These are all state law claims.  And all the courts in the

16   states that are implicated in this case have held that you --

17   that courts are not going to get involved in claims that

18   require the Court to decide, for example, using your example,

19   the -- whether or not a paper was academically sufficient or --

20         **THE COURT:**  I see.  You want to address something

21   that's not here, and that's really not productive, Mr. Brennen.

22         **MR. BRENNEN:**  Okay.

23         **THE COURT:**  What is not here is a claim saying my

24   paper was good enough.

25         What is here is a fraudulent scheme that said, no

matter what the quality of your paper, we're going to say it's no good in order to increase tuition.  It's a fraud claim, and you're saying somehow your client is immune from a fraud claim.

If you say -- you can say that, but I'd love to see something.  But, you know, eventually I'll hear from Mr. Shah, but that does seem to be extreme.  That's your position?  You're immune from a fraud claim?

**MR. BRENNEN:**  No, Your Honor.

**THE COURT:**  Okay.  In that case, let's move forward because they say -- they've alleged a fraud claim; right, Mr. Shah?

**MR. SHAH:**  Absolutely, Your Honor.  And the gravamen of the allegations that are set forth by plaintiffs in the Complaint focus on intentional conduct; knowing and intentional conduct by the defendant, Walden University, to set up roadblocks in every step of the process for the Doctoral candidates and for the Master's candidates to intentionally prolong that process to extract substantial additional tuition from the students.

**THE COURT:**  But let me see if I understand where we are.  We've finally gotten through to what the case is.

The question is not, We're immune from any fraud claim; but that the plaintiffs haven't adequately alleged a fraud claim; right, Mr. Brennen?

**MR. BRENNEN:**  That's certainly correct, Your Honor.

1    THE COURT:  Okay.  That's fine.  All right.  Now,

2    that's helpful.  Okay.

3        So, Mr. Shah, now having done that, let me ask the

4    subsidiary question:  Where is -- what is the claimed recovery

5    on behalf of your clients or any one of them?  Is it more than

6    "Give me back the tuition"?

7        MR. SHAH:  No, Your Honor.  Simply seeking refund on

8    the tuition paid to Walden University.

9        THE COURT:  Is there some claim of -- and that's your

10   claim, although there may be under certain statutes a legal

11   fee?

12       MR. SHAH:  Additional -- right, additional remedies

13   available, but --

14       THE COURT:  Well, what would those additional remedies

15   be that you're looking -- I assume somewhere you talk about

16   you'd be looking for legal fees, although we're not anywhere

17   near there.

18       But what else is it that you're looking for?

19       MR. SHAH:  Talk about in terms of change of practice

20   to ensure that current and future students, you know, don't

21   have these issues.

22       But fundamentally, what we're seeking here is redress

23   for the thousands of students who have paid tuition bill after

24   tuition bill in an effort to try to satisfy the five -- the

25   very specific five-step process that Walden University outlines

is necessary for students to adhere to when they're seeking

their dissertation or thesis processes.

And with re -- and I'll just go right to the heart of

Your Honor's question.  It seems like negligence, at least for

the moment, is back off the table.  And the <u>Sanders</u> case

explains -- Judge Connelly specifically explains why, in the

absence of a negligence claim, and in the face of fraud claims,

why the educational malpractice doctrine doesn't apply.

But here what we've alleged is that the university,

through faculty turnover, faculty unresponsiveness, and

difficulty in obtaining faculty involvement in the first

instance, through, at a minimum, those three steps, that they

have created these hurdles and roadblocks that make it

difficult, if not impossible, for the thesis and doctoral

process to be effectuated.

Now, Mr. Brennen continually says that our allegations

are woefully inadequate.  Respectfully disagree.

With respect to the five-step process that's required

for both --

**THE COURT:**  Let me just interrupt.

**MR. SHAH:**  Sure.

**THE COURT:**  First of all, nobody is going to be

prevented from putting on this record whatever they want to.

And I want to have the record and I go back and refer to it;

everything's here.  So I don't mean to cut you off at all.  I'm

 1    just trying to get some clarity on something.

 2           **MR. SHAH:**  Sure.

 3           **THE COURT:**  But don't -- for both sides, don't

 4    hesitate to say everything you want whenever -- before we're

 5    finished.

 6           You are not -- basically, I mean, we get down to what

 7    you've actually said in the Complaint, but it is not a part of

 8    your claim that there's anything wrong with the five-step

 9    process.  I mean, you're not saying it's -- this is a long

10    process; there should be four steps; there should be six steps.

11    You're not arguing that.

12           Secondly, you are presenting a case that's based upon

13    a deliberate, intentional fraud.  And that would be defeated if

14    the defendants had made a good-faith effort for any of these

15    points; correct?  If they were -- if they didn't do what you

16    said they did out of fraud, that may be a fact question.

17           But if what they did, it was out of negligence, that

18    wouldn't be good enough for you.

19           If they made a good-faith effort to have people answer

20    within 14 days, et cetera, and a jury found that it wasn't part

21    of the scheme, it wasn't part of the scheme to not require

22    faculty to meet -- you understand.  Are they here on

23    intentional tort?

24           **MR. SHAH:**  That's absolutely correct, Your Honor.

25           **THE COURT:**  All right.  Okay.  Okay.

1    So what else?  I mean, you want to point to things --
2  I don't know -- tell me what you want to say so they can
3  respond to the fact that you're not alleging what you say
4  you're alleging, which is a deliberate fraud.

5    **MR. SHAH:**  Sure.  The only thing I will say briefly on
6  that point is, again, when it comes to the allegations
7  regarding the types of impediments that were being faced by the
8  plaintiffs and the other members of the class, the issues
9  involving the faculty as it comes to responsiveness and
10  turnover and availability, those -- that is integral to every
11  step in the process that these students are required to go
12  through.

13    And so -- and not only do we allege that in terms of
14  more generally, but specifically with respect to each of the
15  plaintiff's own experiences and the example in the several-year
16  period of the plaintiffs having in two instances five separate
17  supervisory committee members, repeated examples of lack of
18  responsiveness and difficulty obtaining faculty review.

19    In addition, Paragraph 132 sets forth multiple
20  examples of complaints that mirror almost exactly the
21  complaints that the three named plaintiffs have had.

22    So --

23    **THE COURT:**  Okay.  Mr. Shah, let's -- it's terrible.
24  What they've done -- what they do is terrible, and you've
25  alleged a terribly run operation.

1    Where is the allegation that supports plausibly that

2    it was done with a fraudulent intent as compared to

3    incompetence or negligence?  I mean, that's the essence.

4    Ultimately, you're going to have to prove that.

5    They're saying you didn't allege that.

6    **MR. SHAH:**  Right.  Well, obviously plausibility comes

7    from reading a Complaint in totality, the totality of the

8    circumstances.

9    And what we have here are, in addition, as I just

10   mentioned, the specific examples of the plaintiffs where they

11   are all encountering the same types of issues, the same types

12   of delays, the same types of difficulties, but we buttressed

13   that with the specific allegations of all of the -- of many of

14   their other classmates who have encountered precisely the same

15   experiences.  And to put it in context --

16   **THE COURT:**  Let me -- let's just go further.

17   **MR. SHAH:**  Yes.

18   **THE COURT:**  You've alleged that this -- they're doing

19   this and they're doing this for a lot of people, if not

20   everybody.  But where is the allegation that would permit a

21   finding that it was done intentionally rather than due to a

22   negligence?  Let me ask.  Do you have any allegation about

23   faculty pay related to these activities?

24   **MR. SHAH:**  There's no specific allegation with regard

25   to faculty pay, but we do have contextually allegations about

the business model of Walden itself, which tie in directly and give further credence to the allegations of intentional conduct.  And those allegations include the rapid growth of Walden; the fact that, unlike most, if not all, universities, it spends more per student on marketing than it actually does on instruction.

We also specifically allege that the --

THE COURT:  Well, there isn't much instruction.  It's, as I understand it, the courses are canned.  I mean, you know, we're not attacking that.  But the gripe of this complaint is the supposedly individualized review of a particular student.

MR. SHAH:  Well, that's true, although it speaks to the model and where the focus is.  And the other thing that is alleged in the Complaint specifically is that about 80 percent of the funds that Walden collects from the students come directly from federal funding.

And also part of the reason why Walden engages in this conduct with respect to its students in these two programs at this stage is because these students are near the finish line; and they have additional incentive to try to reach that finish line, and Walden keeps moving that line.

THE COURT:  You've mentioned federal funding, which I'm not sure that's relevant to this case.  Are you bringing a qui tam action?

MR. SHAH:  Well, we're not bringing a qui tam action,

1    Your Honor, but I think it puts in context what the motivation

2    is for intentional -- a type of intentional conduct that we've

3    described --

4         **THE COURT:**  Motivation, a motivation would be fairly

5    obvious:  to make money.  I mean, so I'm not --

6         **MR. SHAH:**  Certainly.  Well, it is easier for them to

7    do that in the context of knowing that that money is coming

8    from federal funds as opposed to -- or at least a substantial

9    portion is coming from federal funds so the people will

10   continue to draw from that -- from that --

11        **THE COURT:**  I don't see how that makes it more likely

12   fraudulent than not.  I mean, the fact is the scheme, you say,

13   is to extract funds in order to have the student continue on

14   this quest for a degree.

15        I'm not sure how the federal funding makes it more

16   likely fraudulent.  But do you have anything yet about, for

17   example, how many people actually get their degrees and what's

18   the percentages and things like that?

19        **MR. SHAH:**  There's no specific allegation to that

20   effect in the Complaint, no, there's not.

21        **THE COURT:**  All right.  Okay.  So where is -- to what

22   extent do we find an allegation that would be adequate to make

23   it a plausible fraud claim?  And I know we have to talk about

24   some other theories.  You have the contract and things like

25   that, but where would --

        MR. SHAH:  Well, I think, Your Honor, it's the
totality of the allegations with respect to the overall
conduct.  And I think when we look, for example, in an omission
claim under not only the Maryland consumer protection statute
but the other alternative statutes --

        THE COURT:  Well, we're going to get to those.  I
promise you we'll get to those.  Right now I'm hearing your
fraud claims.  Basically fraud, absolutely fraud, the thing --
we will certainly get to these Consumer Protection Acts,
contract, et cetera.  I was just wondering if there was
anything else on that.

        MR. SHAH:  Well, I think just by way of example,
paragraph 229, Walden knowingly concealed, omitted, and
otherwise failed to state material facts about its Master's and
Doctoral education services that would tend to and did, in
fact, deceive students.

        THE COURT:  Okay.

        MR. SHAH:  And I think that the fraud, when it comes
to the consumer protection claims, is tethered to the standard
on omission pleading as well, which was . . .

        THE COURT:  Well, I see where you're going with this
allegation.

        What's the -- what are these alleged statements?

        MR. SHAH:  I'm sorry, Your Honor?  I missed that.

        THE COURT:  You say they made fraudulent -- failed to

1  state material facts.

2          **MR. SHAH:**  Sure.

3          **THE COURT:**  Which would be evidence of fraud.

4          Can I ask, where is that in the Amended Complaint?

5  Where are the specifics?  I don't have the Amended Complaint.

6          **MR. SHAH:**  So, for example, Paragraph 229, Your Honor,

7  Page 51 of 67.

8          **THE COURT:**  I see.  Yes.  Thank you.  229.  Okay.

9          Well, it's kind of a bootstrap thing.  So they had

10  this fraudulent scheme, and then evidence of the fraudulent

11  scheme is they didn't reveal that it had a fraudulent scheme.

12  That's a little circular.  I mean, what is it -- isn't it?

13          **MR. SHAH:**  Well, I think that -- I understand Your

14  Honor's point.  But when it comes to --

15          **THE COURT:**  Well, I'm not arguing.  I'm trying to --

16          **MR. SHAH:**  Well, no.  Let me answer it.  When it comes

17  to omission-based pleading, as the Marshall case sets forth

18  under Maryland law and under the Maryland Consumer Protection

19  Statute, do not have to have the type of specific allegations

20  of fraud that you have to have or that are otherwise required

21  in a straight misrepresentation case.

22          So what we are primarily alleging on the consumer

23  protection claims is that --

24          **THE COURT:**  I'm sorry.  I'm sorry.  If we're going

25  to -- if we're finished talking about your basic fraud and

1    we're going to consumer protection, we can do that.  But that's

2    where we are.  We're now on consumer protection?

3           MR. SHAH:  Well, and maybe I'm not understanding Your

4    Honor's question specifically with respect to fraud.  But the

5    claims that have been assert -- the plaintiffs don't assert a

6    common-law fraud claim.

7           THE COURT:  All right.

8           MR. SHAH:  The claims that are asserted are the state

9    consumer protection statute claim, the breach of contract, the

10   implied duty of good faith and fair dealing claim and then the

11   unjust enrichment claim.

12          THE COURT:  All right.

13          MR. SHAH:  So that's why I was referencing my comments

14   to your question about fraud in the context of what the

15   pleading standard is for an omission-based claim under the

16   Maryland consumer protection statute.

17          THE COURT:  All right.  I was speaking as if there

18   were a common-law fraud claim.

19          But you mentioned unjust enrichment, which gets me off

20   to a tangent.  Isn't that an equitable claim that would not be

21   a jury question?

22          MR. SHAH:  It is an equitable claim, but the case law

23   makes it clear that the equitable claim can be pled in the

24   alternative to breach of contract.

25          THE COURT:  I'm not saying you can't.  I'm just saying

 1   that that one would be a nonjury claim, wouldn't it?

 2        **MR. SHAH:**  That's my understanding.

 3        **THE COURT:**  That's fine.  All right.

 4        Okay.  Mr. Brennen, let's address the -- what we've

 5   had so far, which is some expanding of the position that you

 6   had a fraudulent claim.  You had a fraudulent scheme which --

 7   what do you want to say about that?  Which I think we've now

 8   agreed, well, if you had one, then they could get their tuition

 9   back.

10        **MR. BRENNEN:**  Well, Your Honor, there's not a lot to

11   say about the fraudulent scheme allegation because there's not

12   a lot alleged about it.

13        As Your Honor knows, there was an original Complaint

14   in this case filed in January.  And then after we filed a

15   Motion to Dismiss, the First Amended Complaint that we're here

16   on today was filed in March.

17        Other than the addition of some specific facts with

18   respect to the newly added plaintiff, Ms. Goldbas, the only

19   other changes factually were the introduction of words like

20   "intentional" and "intentional scheme," which -- completely

21   devoid of any facts giving rise to or suggesting what it was

22   they discovered, because it was also supposed to be a concealed

23   scheme to delay intentionally.

24        And there's no allegation in the Amended Complaint as

25   to any of the specifics of the scheme or how in that period of

1  time between when they filed the Complaint based on the same

2  facts that didn't allege an intentional scheme, suddenly

3  there's an intentional scheme in the new complaint.

4          And the fact of the matter is, Your Honor, that there

5  aren't any facts to support that allegation.

6          The two cases or the case that counsel just referred

7  to, the Marshall case, we've dealt with this in our papers,

8  this idea that, well, because it's a nondisclosure consumer

9  fraud allegation, we don't have to have the specifics required

10 by 9B, and they refer to the Marshall case.

11         Well, in the Marshall case, there was, in fact, very

12 specific allegations and documents that were attached to the

13 Complaint referencing the allegedly false and fraudulent

14 statements, none of which is in this case.

15         This case is a lot like the case Murphy versus

16 Capella Education, which is a Fourth Circuit case from last

17 year, which also -- and the plaintiff in that case tried to

18 bring claims under, in that instance, the Virginia Consumer

19 Protection Act for failing to disclose facts about the

20 university's operation of a Ph.D. program in leadership.

21         And the Fourth Circuit in that case did hold the

22 plaintiff to the heightened pleading standards of 9(b) and

23 upheld the dismissal of those claims, which did include facts

24 like:  They should have disclosed this material fact about the

25 graduation rate or other facts that they actually put in their

1  Complaint.  But nonetheless, the Fourth Circuit found that that

2  was not sufficient to plausibly plead a claim under the act.

3       Ultimately, Your Honor, the naked conclusory

4  allegation of a scheme here is just like the allegation of a

5  conspiracy that was made in the Vollmar versus O.C. Seacrets

6  case that Your Honor dismissed.  And it's very much like the

7  allegation of an antitrust conspiracy in the Twombly case and

8  the allegation of a policy to discriminate against certain

9  ethnic minorities in the Iqbal case by putting them in solitary

10  confinement.

11       In each of those instances, in Twombly and Iqbal, the

12  Supreme Court held that just saying "conspiracy" when the facts

13  you look -- the specific facts alleged could give rise to an

14  inference that is a completely proper activity going on or a

15  possibility of misconduct, that's not enough to plead a

16  plausible claim of fraud.

17       And I think Your Honor was hitting the nail on the

18  head when you asked the question if the facts that you've

19  alleged, the conduct that you've identified could just as

20  easily be the result of negligence, then -- as an intentional

21  scheme, then they haven't fulfilled their pleading obligations

22  in establishing sufficient facts to support a claim of

23  intentional scheme.

24       THE COURT:  Well, in judging adequacy for

25  plausibility, do we take into account what a plaintiff could be

expected to know in a given context if this was a defective
product and you would expect that the plaintiff would know
exactly what the product was, would be able to point to
specific things that says that it's obvious that this was done
intentionally?

And here the plaintiff wouldn't have the ability
without some discovery to flesh this out, particularly to have
some indication of what is the way that Walden is operating.

Certainly it would be relevant to know if the -- how
the faculty is treated with regard to continuing or indeed to
know to some degree what's going on.

Is everybody put off?  Are there ever any degrees
issued?  Et cetera.  I mean, wouldn't there be at least a
minimal discovery that would be --

MR. BRENNEN:  Absolutely not, Your Honor.

THE COURT:  Okay.  So that you're not prepared to say,
Well, if there were discovery, you'd see that a reasonable
percentage of people don't have this problem?  You're not
willing to say that?

MR. BRENNEN:  They haven't even defined the problem.

THE COURT:  Well, the problem is, as alleged, that --

MR. BRENNEN:  Do people --

THE COURT:  -- nobody is getting a reasonable
evaluation and, nobody is getting past the point where they
have to pay more tuition.  That's the essential allegation.

1 That's what a scheme kind of means, is that nobody gets it.

2 So -- but --

3   **MR. BRENNEN:** Well --

4  **THE COURT:** And that a certain minimal amount of

5 discovery might very well determine the degree of plausibility.

6   **MR. BRENNEN:** Your Honor, that's exactly the kind of

7 thing that the Supreme Court says the courts are not going to

8 do; that, you know, in <u>Iqbal</u>, there were specific allegations

9 that Attorney General Ashcroft had implemented this policy in

10 the wake of 9/11 to put certain ethnic minorities and Muslims

11 into severe restricted solitary confinement.

12   The plaintiff in that case was able to allege that

13 that exactly happened to him, but the best he could do is to

14 say, They've got this policy, but he didn't have any facts to

15 support that.

16   But to use Your Honor's --

17  **THE COURT:** Well, it's a little more than that in this

18 Complaint. There's not only three plaintiffs, but there are --

19 admittedly, hearsay -- but at least references the fact that

20 some considerable number of other students are saying the same

21 thing happened to them, so it's not exactly just one plaintiff.

22   **MR. BRENNEN:** Well, Your Honor, two things: One, we'd

23 like to review with Your Honor the specific facts that are

24 alleged by these plaintiffs, and we -- because we believe they

25 don't support this general allegation --

1              THE COURT:  Please do.

2         MR. BRENNEN:  -- that you're describing now.

3              THE COURT:  Please do so Mr. Shah can respond to it.

4         MR. BRENNEN:  With regard to the attachment of alleged

5    postings by anonymous people on the Internet, selected

6    presumably with a view towards not putting on any comments that

7    were positive, that is pretty clearly not something the Court

8    could consider.

9              THE COURT:  Well, one way you can respond to that is

10   in a memorandum.  Maybe there are some positive postings; maybe

11   there aren't.

12             But, in any event, all I know is that a bunch of

13   people said these bad things.  That doesn't mean that they're

14   right, but --

15        MR. BRENNEN:  You don't even know that, Your Honor.

16   You know that somebody at a computer somewhere --

17             THE COURT:  That's right.

18        MR. BRENNEN:  -- wrote those things down.

19             THE COURT:  Could have been a dog.  Could have been a

20   dog.

21        MR. BRENNEN:  It could have been one person.

22             THE COURT:  Although I hesitate to use a dog example

23   because of the reports of dogs getting admitted to certain

24   online universities.

25             Nevertheless, I don't know if that's Walden or not,

1   but that doesn't matter.

2          Okay.

3          **MR. SHAH:**  And, Your Honor, if I may, you know, I

4   think from plaintiff's perspective, we just reject the notion

5   that this -- these allegations sound in negligence as opposed

6   to sound in fraud and sound in tort.  And we reject that

7   position.

8          **THE COURT:**  Well, we've -- I think we've cleared that

9   up.

10         **MR. SHAH:**  Yes.  You know, just by way of example --

11         **THE COURT:**  He's saying just 'cause you say this is an

12  intentional fraud, intentional scheme doesn't mean that you've

13  got enough pleadings to make it a plausible claim.  That's what

14  he's --

15         **MR. SHAH:**  Well, I understand we have a burden to make

16  a pleading plausible, and I think where we allege a school with

17  the business model and then specific plaintiffs who have

18  encountered the same type of issues as they try to navigate

19  this process --

20         **THE COURT:**  What do you mean by "a business model"?

21  What -- why wouldn't a for-profit enterprise like this have a

22  business model that says, Let's get as much tuition as we can?

23  Where does -- what does that tell us?

24         **MR. SHAH:**  Well, I'm not saying that in and of itself

25  that that is -- gives rise to a cause of action, but it does

provide context for the allegations regarding the intentional scheme, a scheme which is geared towards generating substantial amount of profit at the expense of the students.

And I think that it certainly, in the totality, is fair to take into account the type of business model that Walden University has as, say, perhaps the University of Maryland in terms of the environment in which its students operate to help put into context the allegations of fraudulent intentional conduct.  I don't think they can be separated.

**THE COURT:**  What do you mean by a business model other than to say, "We're going to offer this service, and we're going to get tuition"?  And, of course, inherent in it is the fact that the more tuition we get the student to pay, the more money we make.  I mean, what's inherently wrong?  What's wrong with that?

**MR. SHAH:**  Well, again, I think it's -- it is contextual in terms of an -- allegations.

**THE COURT:**  Okay.

**MR. SHAH:**  It speaks to the incentive to not permit timely completion of these processes.

**THE COURT:**  Okay.  Again, I want to talk about -- you still have also a breach-of-contract theory; correct, Mr. Shah?

**MR. SHAH:**  Correct, Your Honor.

**THE COURT:**  All right.  Let me just ask Mr. Brennen.

I mean, students pay tuition; correct?

          **MR. BRENNEN:**  Yes, they do, Your Honor.

          **THE COURT:**  Okay.  So as a matter of contract law, you owe them something.  You owe them something more than to say, Thank you for your tuition; go away.  Right?

          So tell me what it is that in the matter of -- what do you owe a student who pays tuition?

          **MR. BRENNEN:**  They -- as Judge Davis recognized in the Onawola case versus Johns Hopkins and the Maryland Court of Special Appeals in the Harwood case, there's an implied contract that if the student completes the requirements for a degree, that the university will not arbitrarily or capriciously refuse to bestow that degree.  That's what they're entitled to.

          **THE COURT:**  Absolutely.  Absolutely.  I don't think there's any disagreement.

          And bear in mind, the plaintiffs are saying that you deliberately put an impediment so that the students couldn't do what would entitle them to the degree.  That's their allegation.

          **MR. BRENNEN:**  That's their very conclusory allegation.

          **THE COURT:**  Well, that's it.  Okay.  Fine.

          **MR. BRENNEN:**  And if I might, Your Honor, just to address --

          **THE COURT:**  But that's -- we got past a whole lot of stuff.  And we're now down -- that's the contract, Mr. Shah.

1    You agree that's the contract; right?

2         MR. SHAH:  Yes, Your Honor.

3         THE COURT:  Okay.  Now, it says you haven't alleged

4    sufficiently, plausibly that the school put an impediment.

5    Okay?  Now, that's different from a fraud claim.  That's a

6    contract claim.

7         Okay.  So now tell us how you've alleged or what

8    you've alleged to say they put in an impediment.  Mr. Brennen

9    will respond to it.  And we'll see whether what you've got is

10   plausible or not.

11        MR. SHAH:  Sure, Your Honor.  And just in terms of on

12   contract, it says a party to a contract should be prohibited

13   from acting in a manner as to prevent the other party from

14   performing his obligations under the contract.

15        THE COURT:  Absolutely.  I have no disagreement about

16   that.

17        MR. SHAH:  That's exactly what we've alleged here.

18   The agreement was that we have these five steps that you need

19   to adhere to in order to get to the end of this process; and

20   what we've said is that through the manner in which Walden

21   deals with its faculty that it creates hurdle after hurdle to

22   make sure that these five steps cannot be completed in a timely

23   manner; and that it requires from a contractual standpoint.

24        THE COURT:  I don't know what you mean by "in a timely

25   manner."  I think you're making the allegation they can't be

1  completed at all.

2       **MR. SHAH:**  Well, in large part, that's correct.  And

3  certainly we've seen that from the plaintiffs in the other

4  examples in the Complaint.

5       But it is a failure to act -- for Walden to act in the

6  manner -- in a manner that is consistent with the contract.

7  They have an obligation to allow the students to work through

8  these steps and not create hurdles when it comes to faculty

9  responsiveness, faculty turnover, faculty availability that

10  makes it -- that prohibits students from working through those

11  steps.

12       **THE COURT:**  Well, let's -- okay.  I mean, that's a

13  little repetitious of what you've already said.  But let's take

14  this.  Let's take Plaintiff A, whoever Plaintiff A is.  And

15  suppose the evidence is, if we get there, that Plaintiff A has

16  submitted a certain paper and the university said it's not good

17  enough.  Okay?  And you're saying that's part of the scheme,

18  et cetera.

19       Well, suppose it turns out, as a matter of fact, it's

20  a pretty terrible paper and that any competent faculty member

21  would say, This is garbage and is not acceptable.  What does

22  that do for that plaintiff, Plaintiff A?  It's -- actually,

23  she's not entitled to proceed.  She would not be entitled to

24  proceed if she had the best possible faculty member.  Where are

25  we with that plaintiff?  Does that plaintiff then still have a

1    claim?

2           MR. SHAH:  Well, I think that when it comes to breach

3    of contract on the whole, I think that if there are impediments

4    that are in place as a result of institutional policy, all

5    right, that those impediments are faced by not only the three

6    named plaintiffs, but by the members of the class.

7           THE COURT:  We are far -- wait a minute.  We are far

8    from talking about class right now.

9           In order to even think about class, we need a viable

10   lead plaintiff.  So let's talk about a plaintiff.  Where are

11   we, if, in fact, Student A, or every one of your -- to any one

12   of your people, all of your people --

13          MR. SHAH:  Right.

14          THE COURT:  -- they wouldn't have been allowed to

15   proceed by any competent faculty member.

16          Now, I recognize that we're getting into the area on

17   which we are not going to be debating from Plaintiff

18   affirmatively saying I was qualified and you unlawfully

19   rejected me.

20          This is a defense position.  The defense position was:

21   Let's assume we had this scheme, and let's assume this and

22   let's assume that.  If, in fact, the plaintiff wasn't entitled

23   to be allowed to proceed, she doesn't collect anything.

24          Now, what's wrong with that defense theory as an

25   affirmative defense?

1          MR. SHAH:  Well, if we get into discovery and we get

2     into issues of summary judgment, certainly we would acknowledge

3     that Walden is entitled to its defenses.

4          But I think that it's very difficult for me to answer

5     that in the absence of having a full picture in terms of what

6     the --

7          THE COURT:  But that answer has serious implications,

8     doesn't it?

9          MR. SHAH:  Again, I think it's contextual.  I think --

10         THE COURT:  Well, I don't know that we're talking

11    about context at all.  Give me -- let's make a very specific

12    contention that is the basis of your theory with regard to your

13    lead plaintiff, whoever it is.  And he says, I submitted

14    Document A, Document B, and Document C; they were all turned

15    down because of this illegal scheme; right?

16         MR. SHAH:  Yes.

17         THE COURT:  That's what you're saying.  All right.

18         The defendant says, as an affirmative defense, whether

19    it's in summary judgment or at trial, even if we had this

20    scheme and we were terrible and all that stuff, no reasonable

21    faculty member would have approved Document A, B, and C; and if

22    they -- if that is the fact, then this plaintiff would not be

23    able to recover; correct?

24         MR. SHAH:  Well, subject to our ability to counter

25    that if we disagreed with that notion, then certainly they

 1    would, I suspect, challenge the adequacy and typicality of that

 2    plaintiff to represent the class.

 3         **THE COURT:**  Well, no.  It's more significant than

 4    that.  This is an important question.  Don't underestimate the

 5    significance of this.

 6         I can see Mr. Maloney looking at me, so he knows what

 7    I'm talking about.

 8         That plaintiff can't -- if it's a fact, that plaintiff

 9    can't recover; correct?

10         **MR. MALONEY:**  Your Honor, can I join in on this?

11         **THE COURT:**  Mr. Maloney, you know, what is it they

12    say?

13         **MR. MALONEY:**  I heard my name shouted out somewhere.

14         **THE COURT:**  I wish -- Mr. Maloney, of course, please

15    participate.  I was going to say something funny, only because

16    it's you.  Of course, you can.

17         But let me --

18         **MR. MALONEY:**  Your Honor, if it's a fairly debatable

19    question, of course, Walden can exercise its reasonable

20    discretion and say, This does not meet academic standards and

21    you don't pass.  And that's not a plaintiff.  That's not a --

22    that's not this case.

23         But if that were the issue here and it's simply a

24    question of academic discretion, we wouldn't be -- this would

25    not be a case.

1     The claims here are these people would submit papers

2  week after week after week, and no one would call -- they

3  didn't get any response.

4     And then, after months, the faculty member would be

5  gone and another one would come and they would be gone.

6     Looking at Zitter here, Zitter says that for six

7  years, she had been working day after day after day to get

8  responses from the faculty in this so-called 14-day deadline.

9  They have a 14-day turnaround deadline.  She would go three or

10 four months.  She goes through six, seven years without getting

11 very much response on this.  And as a result -- and --

12     **THE COURT:**  I'm having a different -- everything you

13 say is right, but I have a different concern here, big-picture

14 concern; and that is I don't think you're disagreeing.  I don't

15 think it's incorrect to say that as far as -- if I name one of

16 these plaintiffs, then it would look like I'm picking on that

17 one, but that Plaintiff A, that a defense, perhaps an

18 affirmative defense by the school, would be the stuff that this

19 plaintiff submitted was inadequate, not even arguably

20 inadequate.  It was inadequate.  And if they established that,

21 there's no -- pleading stage and looking down the line, then

22 Plaintiff A can't recover tuition; right?

23     **MR. MALONEY:**  Academic insufficiency is an absolute

24 affirmative defense.  And unless they were arbitrary or

25 capricious about it, that's not going to be an issue in this

case.

     **THE COURT:**  Mr. Maloney, Mr. Maloney, let me -- yes,
and this takes me to this question, which is:  How could we
ever certify a class when each individual plaintiff could be
vulnerable to an academic insufficiency defense?

     **MR. SHAH:**  Because every single plaintiff, Your Honor,
would be paying tuition -- if our allegations are proven to be
correct, would be stepping into a situation where the deck was
purposefully and intentionally stacked against them.  And if
they had known those facts, if we were able to prove them, they
would have never paid a dime of tuition to Walden University in
the first place, whether they were an A-plus student or a
D-plus student.

     **MR. MALONEY:**  And the delays here are not associated
with the quality of their academic submissions.

     **THE COURT:**  I admit this is a class certification
issue.

     **MR. MALONEY:**  Yes.

     **THE COURT:**  But let me give you an example of a case
that I've been involved in that is a -- but I'll change the
facts, but it isn't going to change the facts significantly
because you know what's on the public record.

     But let's assume there is a claim that a certain
hospital did unnecessary operations.

     Yes, I see.  Okay.  And that --

1          **MR. MALONEY:**  I'm feeling my stent right here

2     (indicating).

3          **THE COURT:**  I see.  All right.  You're taking that

4     extra medication.

5          **MR. MALONEY:**  Indeed.

6          **THE COURT:**  All right.  Patient goes to this hospital.

7     They do some tests on you.  They send the test to some -- they

8     say they send the test to some laboratory.  They say they get

9     back the results.  And they say you need this operation, and

10    they give you the operation.  And they do this to a lot of

11    people.

12         And then comes along and the patients sue, but no

13    patient can prove that they really didn't need the operation.

14    Where are we with that?

15         Now, admittedly in one example it was settled.  But

16    where are you with that, Mr. Maloney, now that you know all the

17    facts?

18         **MR. MALONEY:**  I think Dr. Maizel should have paid.  I

19    mean, to deal with -- to deal with this situation right here,

20    that really is not where we're going to end up here.  We're

21    going to end up here with a review process that didn't

22    function.  There was an advertisement that you're going to hear

23    back and get feedback in 14 days.  That was all part of the

24    marketing process.

25         **THE COURT:**  Well, that's one example of -- that's

right.  That's one example.

MR. MALONEY:  But this was not -- if the allegations were just, We have a disagreement about whether the paper about Ulysses F. Grant is worthy of an F, a C, or an A, we wouldn't be here.  This is not focusing on arbitrary bad grades or anything like this.

THE COURT:  Oh, so you're back at the ab initio, the first tuition.

MR. SHAH:  The problem is at the inception; that's exactly right, Your Honor.  The problem is --

THE COURT:  You're not talking about attacking the extra tuition for the fourth paper.  You're saying at the beginning, at the threshold.

MR. MALONEY:  From day one.

MR. SHAH:  Setting foot into a process that is, if we prove it, as described.

THE COURT:  That even if your plaintiff was academically insufficient, they would still be entitled to recover because they were promised --

MR. MALONEY:  Yes.  Assume all of Walden's judgments, academic judgments are 100 percent correct.  We'd still be in the same position, because the delays here were extraordinary.  The process they advertised, the 14-day turnaround process did not exist because the faculty never complied with it.  When they -- and then the faculty turned over.

So these kids were in an endless -- students were in an endless loop which would take five or six years just to earn a few credits, 'cause no one would respond to their phone calls.  No one would review their papers.  It's not that they got bad grades.  They didn't get any grades 'cause nobody would review their papers in the first place.

We're not here to argue As versus Cs versus Fs.

**MR. SHAH:**  It's the overall process.

**THE COURT:**  All right.  Well, you've clarified it.

Mr. Brennen, it's been clarified that the gripe is the first tuition payment.  So, I mean, we're not talking about the fourth one.  We're talking about the first one and then all subsequent.  All right.  Okay.  That's their claim.

**MR. BRENNEN:**  Yeah.  I'm almost at a loss to where to begin to respond to --

**THE COURT:**  Oh, at the beginning.

**MR. BRENNEN:**  Well, that's good, because it appears that Mr. Maloney and I are reading different copies of the First Amended Complaint, because most of what he just referred to specifically with respect to Plaintiff Zitter and certainly with respect to the allegations are nowhere in this Complaint.

Just a couple of examples are we've heard twice about an advertisement about a 14-day rule.  That's not -- there's no alleged advertisement in the First Amended Complaint; there wasn't an alleged advertisement in the original Complaint.

And the allegation that the delays with respect to the named plaintiffs in this case had nothing to do with academic performance is completely inconsistent with the facts that -- the specific facts that are alleged.

And I'm happy that we could go through any one of the plaintiffs. And you will find that there are issues where they were -- their delay, as they would characterize it, was exactly the result of a prospectus, for example, from -- with respect to Plaintiff Travis, twice submitted a Prospectus and twice it was rejected as insufficient.

And with respect to Plaintiff Travis, at least one of those occasions after that, she took a leave of absence. She voluntarily chose to take a leave of absence, causing a delay, so that she could work on her prospectus while she was not enrolled at Walden and not paying any tuition. So this notion that the delays -- the alleged delays have nothing to do with academics and all to do with the supposed --

**THE COURT:** Can we address what they're alleging and not what you want them to allege. They're alleging that the paid tuition and the process was fraudulent. Even if you deserved delays, you were promised you would get an adequate and timely review. That's what they're saying.

The fact that you didn't have adequate papers, the fact that you yourself caused part of your delay doesn't eliminate what they're complaining about. They are complaining

about, for lack of a better word, false advertising at the

beginning.  You're not getting what you said you were promised;

that's all.

**MR. BRENNEN:**  Well, I have to disagree, Your Honor.

They're not -- there is no complaint of false advertising in

any factual --

**THE COURT:**  They are complaining about the -- if I'm

using the word "false advertising" as if there's an

advertisement alleged, which there isn't, although heaven only

knows they will add that to an Amended Complaint, which I don't

know has any great function here.  You were promised what you

said, that if you complied with these provisions, you get a

degree; and that you put impediments in it, so that at the

beginning, you wrongly took their tuition.  That's what they're

saying.  Now, let's --

**MR. BRENNEN:**  That's what they're saying.  They just

haven't alleged any facts that -- from which anyone could infer

that such a scheme was in existence when they each enrolled

first in Walden.

I point out that one of the plaintiffs, Plaintiff

Travis, was enrolled in Walden's psychology Master's program

and completed it.  There's no allegations about that in the

Amended Complaint, and she continued on from there to the Ph.D.

There's no -- there's simply no allegations to support

the intentional scheme.  I'm not going to belabor that point.

1          But let's talk about this 14-day thing.  I thought we

2     were up here -- at this juncture we're talking about the

3     breach-of-contract claim when Mr. Maloney has referred to this

4     14-day thing.

5          They mentioned the 14-day response deadline or rule in

6     their amended -- in their first complaint.  They didn't say how

7     it was represented, how it was communicated to them as a

8     contractual promise.  They just baldly asserted it.

9          And then we pointed out in our original Motion to

10     Dismiss that, well, they haven't alleged that, but maybe

11     they're referring to something in the student handbook which

12     speaks to a policy to have faculty respond to students within

13     14 days.

14          We pointed out in that Motion to Dismiss that, well,

15     the handbook also has the express disclaimer that says the

16     handbook does not create a contract.  It also contains a

17     provision that says, We reserve the right to revise this.  And

18     we also pointed out that the District of Oregon last year

19     specifically found, because of those provisions, the handbook

20     didn't create a contract.

21          So that's what we said in our Motion to Dismiss.  And

22     then they, instead of responding to that, they filed their

23     Amended Complaint.  And now they back away a little bit, but we

24     still hear about the 14-day thing.  But they still don't allege

25     where and how this alleged contractual obligation was

1    communicated to them.

2         And interestingly, in their opposition to our Motion

3    to Dismiss, in order to suggest to the Court that, you know,

4    they don't want to interfere with the operations of the

5    university's academic programs in a way that would put them

6    afoul of the bar against claims for educational malpractice,

7    regardless of what theory they're brought under, they asserted

8    that they're not asking the Court -- they wouldn't be asking

9    the Court to enjoin or find that every time this 14-day rule

10   was violated was even a problem.

11        So if that's the case, how that could simultaneously

12   also be a contractual obligation is simply lost on

13   Walden University.

14        But, Your Honor, I think it would be helpful if we --

15   you know, we've had these timelines we've provided to counsel

16   and we provided to the Court in hard copy and we can put it up

17   on the screen.  And we can review the actual progress of one of

18   these named plaintiffs and see whether they -- the allegations

19   that are actually in the First Amended Complaint bear out the

20   kind of things that are being said in this argument.

21        THE COURT:  That's fine.  That's fine.

22        MR. BRENNEN:  I'm going to ask my colleague,

23   Ms. Pontone, to go through those timelines with Your Honor.

24        THE COURT:  So we're looking at Travis.

25        MS. PONTONE:  Yes, Your Honor.

1          **MR. MALONEY:**  Your Honor, can I just make an

2     observation?  We don't object to the Court hearing this to the

3     extent that the allegations here reference directly specific

4     paragraphs of the Complaint.  This is a 12(b)(6) argument.

5          However, there are some statements that are made here.

6     We just got this this morning, about 8:15, from the other side.

7          **THE COURT:**  You haven't responded yet in writing.

8          **MR. MALONEY:**  And we're hoping to have something in

9     the next 20 minutes.  But the -- I'll give the Court an

10    example.  Where we're dealing with right in the middle, it

11    says -- dealing with Travis, it says [reading]:  Resulting in

12    Walden refunding her tuition for this quarter.

13         Well, that's just a statement that has been added

14    here.  That is nowhere in the Complaint.

15         In other words, these are facts outside of the

16    Complaint that the defense is trying to introduce improperly in

17    this 12(b)(6) proceeding.

18         So to the extent there are references to the

19    Complaint, fine.  But to the extent there are statements in

20    here that are outside the four corners of the complaint, we

21    would object.  And that's one of them.

22         **THE COURT:**  I accept your objection and -- but let's

23    go through with what they want to point out, Mr. Maloney.

24         **MR. MALONEY:**  Yes, Your Honor.

25         **MS. PONTONE:**  Thank you, Your Honor.

1          **THE COURT:**  We're looking at Travis.

2          **MS. PONTONE:**  Your Honor, we would also point out that

3   this was in our original motion; and if plaintiff wanted to

4   respond to these things and say they were untrue.  They could

5   have done that.

6          But, in any case, we will go through and just show you

7   exactly where in the Complaint it is supported.

8          The claim is basically that this process is fraught

9   with inefficiency and that Walden does not properly regulate

10  the turnover are the two things that you are going to be asked

11  to decide.

12         Ms. Travis in California begins pursuing her Ph.D. in

13  psychology at Walden in 2010.  For approximately 18 months,

14  until 2012, she is taking the coursework.  So when counsel

15  said, Oh, there's six or seven years, well, see, Your Honor, in

16  the beginning, they're doing courses, which they do just fine.

17  And despite the fact that they say there are delays throughout

18  their career, there is nothing alleged with respect to those

19  courses.  And, in fact, they talk about how great they do in

20  them.

21         During that period when she is doing her coursework,

22  Ms. Travis asked Dr. Monica Sutton and Leslie Jackson to serve

23  as her dissertation committee in the future.  She's not ready

24  to begin yet.

25         And she decides in the summer of 2012, yes, she's

1  ready to begin and she will be beginning.  And then she

2  contacts Dr. Jackson, who says, Hey, I'm not now available.

3  It's 18 -- you know, a period of time has gone by, more than a

4  year; I'm not available right now to be your dissertation

5  chair.

6          So she gets Dr. Richard Cicchetti, about whom she

7  makes --

8          **THE COURT:**  Slow down.  Slow down.

9          **MS. PONTONE:**  Okay.  Thank you, Your Honor.  I'm just

10  trying to speed it along because I've got a bit to say.  I

11  don't want to bore you to tears.

12          But Ms. -- Dr. Cicchetti, who she does not in any way

13  complain about his timeliness, becomes her dissertation chair.

14  And so she begins the dissertation writing, which is all they

15  are complaining about, in September of 2012.  She does the

16  coursework.  She submits a prospectus to Dr. Sutton for review.

17          Dr. Sutton responds, and they're saying more than a

18  month.  So it takes Dr. Sutton a few weeks after -- it depends.

19  In the Complaint they say 14 business days, 14 calendar days.

20  So she's either a week or two, quote/unquote, late on this

21  noncontractual 14-day.

22          And it goes along.  She approves it.  She submits her

23  prospectus to the program director, Dr. Raymond Trybus, to

24  review in January of 2013.  So she's been writing for, you

25  know, a quarter and a bit.  And Dr. Trybus rejects it.

1        Now, Your Honor, you need to understand what the
2   prospectus is.  The prospectus is a full outline of the
3   dissertation, so it's going to describe what she's doing, what
4   her thesis is, et cetera.  And Dr. Trybus rejects it.  And,
5   again, it is -- you know, there's a period of, I think it's
6   20 -- I counted the days.  21 days is how long it takes, so
7   we're not talking about huge blocks of time.
8        She takes -- then what she does is she takes a leave
9   of absence, and that's denoted in red.  And I really don't
10  think that -- in fact, the Complaint at 34 says they agree that
11  she takes a leave of absence.
12       **MR. BRENNEN:**  94.
13       **MS. PONTONE:**  I'm sorry.  94.  Although she's not
14  enrolled at this point, she submits her prospectus again to
15  Dr. Cicchetti.  It's rewritten for review, and then Dr. Sutton
16  resigned.  And when Dr. Sutton resigned, they put in Dr. Marc
17  Mooney.  Dr. Marc Mooney is obtained and becomes the committee
18  member.
19       But during this period of time when there's a delay in
20  turnover, she's not enrolled at Walden at all.  She did -- then
21  she comes back in June of 2013 for the summer quarter, and she
22  does have difficulty in getting responses from Dr. Mooney.  And
23  this results in Walden refunding her tuition for that quarter.
24  She files an appeal.  All the states that regulate Walden and
25  all of the licensures, the learning commissions require that

1  you have an internal process if students are dissatisfied.  She

2  timely files an appeal, and Walden agrees that the amount of

3  time is inappropriate.  They take 63 days.  It's about --

4          **THE COURT:**  Is that what you're objecting to,

5  Mr. Maloney?

6          **MR. MALONEY:**  It is.

7          **MS. PONTONE:**  And you object --

8          **MR. MALONEY:**  Well, there's nothing in the Complaint

9  about that.

10         **THE COURT:**  Is that in the Complaint?

11         **MR. MALONEY:**  No.

12         **THE COURT:**  The refund?

13         **MR. BRENNEN:**  What's in the Complaint, Your Honor, is

14  that -- an allegation of how many quarters she was there and

15  how many she paid for.  And if you look at the allegations

16  there, she's enrolled for more quarters than she paid for.

17  That's why.  And we said that in our --

18         **THE COURT:**  I don't think for present purposes whether

19  she got a refund or not makes any difference.

20         **MR. BRENNEN:**  Thank you, Your Honor.

21         **MS. PONTONE:**  Okay.  Thank you, Your Honor.

22         So she enrolls again -- sorry.

23         Then she takes another leave, Your Honor.  She's on

24  another leave of absence, and she submits her prospectus again

25  to Dr. Trybus.

1          **THE COURT:**  I guess leave of absence means you're not

2     paying for something because it's not like you're --

3          **MS. PONTONE:**  Yes, Your Honor, not paying.  She's not

4     enrolled.

5          **THE COURT:**  You're not there.  The only thing is

6     you're just not paying.

7          **MS. PONTONE:**  You're not paying.  Although,

8     Your Honor, she's alleging, "I submitted things at that point."

9     Well, she's not enrolled, so she can't submit things.  But

10    that's the kind of delay they're complaining about.  She's not

11    enrolled, and she does get a new -- she gets somebody to

12    replace Dr. Mooney.  Dr. Walters replaced Dr. Mooney.

13          Meanwhile, Dr. -- her chair is -- Cicchetti is there

14    the whole time.  And her program director, Dr. Trybus, they're

15    not changing.  It's not a, you know, completely shifting cast

16    of characters.  This is the guy who is -- she submits it for

17    review, and it's not -- she's not responded to during the

18    period she's not enrolled.

19          But when December 2nd rolls again -- rolls around, she

20    reenrolls.  Dr. Trybus immediately gets back to her and tells

21    her that it's rejected, and the comments are given.  You know,

22    whenever they reject something, they say, Well, here are the

23    things you have to do.  These are the things that must be --

24    must be changed.

25          So she then works diligently for three quarters, and

1   she does make progress.  She works to improve the prospectus.

2   The Complaint says she submits her prospectus to the research

3   department.  And her -- she submits it -- this is interesting,

4   on June 25th.  By July 9th, her prospectus is approved, timely

5   approved, even though we've got a holiday.  So, you know,

6   that's the 14 days.

7              And all the other places we've been through,

8   Your Honor, they haven't alleged these delays with the

9   exception of, of course, huge exception of Dr. Mooney and a

10  couple of days on some of these others.

11             She submits, then, her proposal.  This is Step III of

12  the process, Your Honor.  The proposal is actually writing the

13  first three chapters of the dissertation.  So she's got to

14  write the bibliography.  She's got to submit a summary.  And

15  she also has to show what exactly she's going to do in the

16  study, what her sample's going to be, all those -- what kind of

17  questions are going to be asked, how it's going to be graded,

18  et cetera.  So she's got to submit all that.

19             And so what she does is she submits the proposal and

20  requests the assignment of the URR, which is a university

21  research reviewer who reviews the research for substance.  But

22  at that point the proposal's not approved.  The URR doesn't

23  look at it until the proposal is actually approved.

24             And then again, goes on a leave of absence, her third

25  leave of absence at that period of time.

1    So in -- and that's all the Complaint talks about with

2    respect to Ms. Travis.

3    So basically to recap, she's been enrolled since --

4    from 2010 till November of 2014.  18 months of that has been

5    coursework.  And she's had -- I think if you look at the green

6    on the chart, Your Honor, I guess three different people who

7    have held -- the second member of the -- of her committee and

8    Dr. Walters remains her -- remained her person for the rest of

9    the time, well, 2013.  So that's Ms. Travis.  That's her.

10    Next let's go to Ms. Zitter.  Who is the second --

11    **THE COURT:**  Well, before we leave Plaintiff Travis --

12    **MS. PONTONE:**  Yep.

13    **THE COURT:**  -- the proposition is that on the face of

14    the Complaint, she did not suffer any undue prolongation.

15    **MS. PONTONE:**  Yes, Your Honor.  I mean, if you look at

16    the general prolongation, it's more caused by her leaving in

17    the middle of the process.  She's got to start -- you know,

18    she's got to come back and start all over again, and these

19    professors have to gear up to deal with her proposals.

20    So, yes, Your Honor, that's exactly what we're saying,

21    although, again, this analysis requires Your Honor to say, This

22    is fraught with inefficiencies.  This is too long for a

23    university.  It's too long to have it be 21 days rather than 14

24    days.

25    **THE COURT:**  That's not what they're alleging.

**MS. PONTONE:** Well, that's --

**THE COURT:** That's not what they're alleging. I mean, it would be great if that's what they were alleging. They're alleging that this was all a sham and a scheme, all combined, that there was not going to be -- I'll just call it any kind of review other than what it takes to extract more money. That's their allegation.

**MS. PONTONE:** But they don't -- there's no -- there's no factual support for that.

**THE COURT:** Okay. That's fine.

**MS. PONTONE:** I mean, and that's --

**THE COURT:** Let's not --

**MS. PONTONE:** Okay. Well, let's go on to Ms. Zitter, then.

Ms. Zitter lives in Illinois. She's also pursuing a Ph.D. in psychology. It takes her three years to do her dissertation coursework, so twice what it takes Ms. Travis. And there's no complaint about that, however.

She has had seven advisors over the six years. And only three of those six years counsel referred to she's actually in the writing process, which is what they're complaining about.

There are no promises alleged. The only specific delay identifies Dr. Apsche, and there's no information at all about where she is in the process.

We know -- she says everyone has had at least one replacement, and they've been delayed at least once.  But we don't hear any specifics about how she was delayed or what she was delayed on and whether the delay was academically justified, et cetera.

She withdraws from Walden in February 2012.  There's no allegation that she made an internal complaint, and we don't assert that there was one.  There's no excuse for the delay in how she discovered this scheme that she's now come back to the Court with, and there are no facts whatsoever about a scheme.

And, in fact, what she's specifically saying is things like they don't regulate that process enough, Your Honor.  That's the scheme.  They don't -- they're not -- they're not watching the turnover, they're not insisting that people reply to me within 14 days.

**THE COURT:**  Mr. Shah, unless you're objecting, let her finish.

**MS. PONTONE:**  Thank you, Your Honor.

And I should, by the way, say Ms. Travis -- the only allegation they make as to Ms. Travis, anything said, is that Ms. Travis says she was by some unnamed person at some unnamed time, certainly not in the marketing, that you can do the writing within 13 months if it's properly planned.  That's all.  That's the only allegation.

And, again, Your Honor, this is after the Motion to

Dismiss.  So they're on notice that we're looking for specific statements that were made.

So Ms. Goldbas is newly added to the complaint.  She's the new plaintiff.  She hails from New York.  She is a lawyer. And, Your Honor, Walden students generally are working adults, and all these people are.

She's enrolled in 2010 in the Ph.D. in psychology. She has Yells and Gil as her dissertation chair.  She also, by the way, takes three years like Ms. Travis -- I mean Zitter, as opposed to Travis who takes -- who gets it done in 18 months. Students are different.  Students, for any number of reasons, take different time for things.

So she takes three years.  Dr. Perry is her program chair.  And at the prospectus stage, sorry, your program chair who, again, remains constant, just like Travis, the program chair isn't changing.  She does have changes, which we note. In April of 2014, Dr. Gil was replaced.  But note what the Complaint says, and this is Complaint at 126.

Dr. Leanne Stadtlander replaced Gil because of Gil's, quote, complete ineffectiveness and the need for a different type of methodologist.

It was Ms. Goldbas who got the change.  She was unhappy with the effectiveness of the professor and got him changed.  That's what the Complaint says.

Dr. Perry rejected the prospectus, and he's the

program chair.  So it's submitted.  It takes, again, about a
month, February 3rd to March 3rd, for that to be rejected.  And
she takes a leave of absence again in 2015.  So that's -- those
are the allegations.

She says she -- while they say she suffered numerous
unspecified delays for lack of responsiveness, they don't tell
us when they are or what happened or -- and so there's no basis
for the Court to say that wasn't justified based on what was
submitted or how long it would -- or how long it should take to
make these kinds of comments.

The only claim she makes -- and this is also
interesting in the way it's phrased, Your Honor.  In the
Complaint she says -- it's a throwaway.  She's now stalled in
the prospectus stage with no hope of completing the
dissertation within the 18-month period that was represented to
her.  But there's no representation of who represented it,
when, what happened, which we do think is required in this
case, Your Honor.  And remember this is the Complaint -- the
complainant that's added after the Motion to Dismiss.

So with that -- and then we have the -- well, is it 18
months?  Is it -- Travis says it could be within 13 months.  So
there is no representation, Your Honor, about any set period of
time that it would take to write a dissertation, nor could they
be.  They all depend on students and how well they perform and
how fast they can do things and what's going on in their job,

et cetera.

So while they say at the opposition at 19, they take no issue with the academic requirements that require these reviews; in fact, when you go back to the actual words that they've written in the Complaint, they're asking the Court to say this is an inefficient process and they're not regulating the faculty enough. That's what the Complaint says.

And that, Your Honor, I think Mr. Brennen will talk about the educational malpractice. But those are the facts. And the, you know, the other people that are on the Internet, Your Honor, we think they're not bound by Rule 11. They're not properly under consideration in the case.

**THE COURT:** Well, can Mr. Shah respond to that?

**MR. BRENNEN:** Sure.

**THE COURT:** Did you want to respond now, Mr. Shah?

**MR. SHAH:** Sure, Your Honor. Just briefly.

And not to go through point by point, 'cause obviously we don't -- didn't prepare a rebuttal chart. But just, for example, with respect to Plaintiff Zitter, I believe counsel indicated that there were no specific allegations regarding her issues.

Again, by way of example, Paragraph 105, for example, between September and November 2011, Plaintiff Zitter requested on three separate occasions that Dr. Jack Apsche, her dissertation supervisor committee member at that time, review

her dissertation. In an e-mail response to Plaintiff Zitter, Dr. Apsche stated, quote, You can expect to receive a response when I read it. If that does not suffice, please consider me withdrawn as your committee member, end quote.

Not only did he fail to respond within the 14-day period; he simply never responded with feedback.

In addition -- Paragraph 106 [reading]: In addition, Plaintiff Zitter was forced to seek new dissertation supervisory committee chairs and members due to faculty resignations, faculty dismissals, ineffectiveness, and unresponsive -- unresponsiveness -- I'm sorry, unresponsiveness of faculty on at least five separate occasions.

And with respect to the allegation that Ms. Goldbas was taking issue with the academic side, in Paragraph 126, when she was told that she had to change the basis of her prospectus, she was required to find a new dissertation supervisory committee member because she was required -- she needed a different type of methodologist. So she wasn't saying that the person was ineffective. She was being required to make that change.

At base -- and I just want to go back to the nature of our allegations which don't sound in negligence. In Ross versus Creighton University, it says that these types of claims can proceed where an objective assessment is being made as to whether an institution made a good-faith effort to perform on

its promise.

And it's -- this goes back to our position that whether you're looking at it from a breach of contract or implied duty of good faith and fair dealing claim or looking at it from a statutory consumer fraud claim based on omission, if Plaintiffs are correct and if their experience has mirrored the experiences of thousands of other students and we can prove our allegations and prove the existence of this scheme, then that speaks to each of the students' experiences at Walden University from the get-go.

And, you know, for that reason, we believe that these allegations are more than sufficient on the causes of action. And it's not just the three named plaintiffs that are feeling as though that this is not a mere negligent act on behalf of a few people at Walden.

You know, again, Paragraph 132, one of the postings [reading]: Do not waste your money. My Walden experience, which is their motto has -- has been nothing but a massive headache and a very expensive one. Committee members, academic reviewers, IRB reviewers, and URR personnel have clearly been schooled in the "stall as long as you can so we get more money" department.

And that's exactly what the plaintiffs here are saying as well.

THE COURT: I'm not exactly sure about what these

1  postings mean in the current context.  If it's in the Complaint

2  to say that there have been postings that are negative about

3  Walden, okay, but we get into these -- I'm not sure -- you want

4  to say that everything that's said in these postings is a

5  specific allegation that you're making?  No, I don't think you

6  want to do that.

7         MR. SHAH:  Again, it goes to the totality of the

8  pleading and --

9         THE COURT:  Well, you want to say that Walden must

10  have been on notice that there were these complaints; is that

11  what you're saying?  I --

12         MR. SHAH:  Am I saying -- well, most assuredly, Walden

13  was on notice that --

14         THE COURT:  Most assuredly.

15         MR. SHAH:  It was its scheme.  So based on the

16  allegations, it was clearly on notice, Your Honor.

17         THE COURT:  Well, in today's world, I don't know

18  whether this is a random sampling or this is cherry-picked or

19  lemon-picked or what-have-you.  I'm not sure about that.

20         Okay.  Why don't we give the reporter a ten-minute

21  break at this point and we'll reconvene.

22     (Recess taken.)

23         THE COURT:  Okay.  Let's see.

24         Mr. Brennen, were you going to respond to this or

25  Ms. Pontone?

1          **MR. BRENNEN:**  I will respond to it, Your Honor.

2          **THE COURT:**  Wait a minute.  Mr. Shah, what are you

3     saying?

4          **MR. SHAH:**  Your Honor, if I may, I know that I left

5     off; I had just mentioned two of the three plaintiffs in

6     response to the chart.  With the Court's permission, I would

7     just like to mention one quick comment about Ms. Travis as

8     well, who is the first of the three plaintiffs.

9          And just by way of example -- and I know that her

10    experience was downplayed by counsel.  But Paragraph 81, on

11    July 30th, 2013, a full 62 days after Plaintiff Travis

12    initially sent Dr. Mooney her prospectus, Dr. Mooney answered

13    Plaintiff Travis and apologized for not responding earlier,

14    writing [reading]:  This is unacceptable.  I really do

15    understand that time is money.

16         62 days is almost a full quarter with nothing

17    happening, with the tuition being collected certainly and kept

18    by Walden.

19         And I would just also add that, you know, the

20    allegations are not that there's just one Dr. Mooney, but that

21    the faculty is full of Dr. Mooneys as a result of this scheme.

22         And if the Court has any concern or any thought at all

23    that maybe these are just kind of three isolated individuals

24    who have stepped forward to serve as named plaintiffs, since

25    filing the First Amended Complaint, plaintiffs' counsel has

1    been contacted by well over a hundred students with similar

2    stories and similar concerns.  And we would be happy to -- to

3    amend as well.

4         THE COURT:  You can be very happy to, but that's not

5    proper.  That's not proper.  I mean, we want to start with

6    that, and you -- I don't even know where to begin to say you

7    don't want to be talking about attorney-client communications

8    with hundreds of people.

9         MR. SHAH:  Well, no, no.

10        THE COURT:  It's not in the Complaint.

11        MR. SHAH:  I'm not making a proffer to those

12   communications, but I think what this points out is that even

13   just looking at the timeline for each of the three plaintiffs

14   that's been presented, that each timeline provides specific

15   examples of precisely the type of delay that we have alleged,

16   that the plaintiffs have alleged constitute the barriers to

17   completing the process.

18        THE COURT:  But you're not alleging -- that's not your

19   complaint.  Your complaint is we're induced to enter into this

20   agreement by virtue of the representation, which we'll get

21   into, that you would have an adequate review and an adequate

22   shot and you're not getting it.  That's your allegation.

23        MR. SHAH:  With respect to the contract, the

24   allegation is that --

25        THE COURT:  With regard to your consumer protection

1    claims.

2         **MR. SHAH:**  Well, with consumer protection claim, it is

3    predicated on the fact that Walden knew about the barriers that

4    it was erecting.  And it didn't disclose to those people going

5    into these two programs to pay tuition, that it erected these

6    barriers, absolutely, yes.

7         **THE COURT:**  Right.  Whether a particular individual

8    had a one-day extension or a two-year extension doesn't matter.

9    They wouldn't -- or they had no extension on your theory.

10        **MR. SHAH:**  It's all part of the larger scheme, that's

11   correct.

12        **THE COURT:**  We'll come back to that.

13        Counsel, do you want to say something?

14        **MR. BRENNEN:**  Yes, Your Honor.

15        First, I want to make it clear.  I just want to make

16   sure counsel's representing to this Court that Ms. Travis paid

17   tuition for that summer quarter 2013 and Walden kept that money

18   and there was no refund.  Is that the representation that's

19   being made to the Court?

20        **THE COURT:**  Whatever is in the Complaint is in the

21   Complaint.  I'm not -- I wouldn't put the burden on him to

22   remember that kind of detail.  What difference does it make?

23        **MR. BRENNEN:**  It makes a huge deal of difference,

24   Your Honor, if -- because we know that not to be the case,

25   whether it's in the Complaint or not.  And I just want to be

1    clear whether it's being represented to the contrary.

2            **THE COURT:**  Well, I don't -- I've got to tell you,

3    Mr. Brennen, that in terms of the adequacy of the Complaint,

4    that particular allegation that she paid or didn't pay the

5    extra quarter doesn't matter.  Ultimately it will be

6    straightened out.

7            **MR. BRENNEN:**  Your Honor, with that, I will get back

8    to what counsel was referring to before we broke.  He

9    referenced the <u>Ross versus Creighton</u> case.  As we discussed

10    earlier in the hearing, it's generally recognized, the implied

11    contract between the student and the university is that the

12    student completes the required coursework for degree; the

13    university will not arbitrarily or capriciously not bestow the

14    decree -- the degree that's been completed.

15            We all recognize that's not this case, because it's

16    admitted that, of course, that the plaintiffs here did not

17    complete the requirements for the Ph.D.

18            The <u>Ross versus Creighton</u> case reflects what has been

19    identified as a very narrow exception to the education

20    malpractice bar, barring claims --

21            **THE COURT:**  Mr. Maloney, would you stand up and scream

22    that we're not talking about a negligence claim and we're not

23    talking about malpractice.  Just scream, please.

24            **MR. MALONEY:**  We're not here for educational

25    malpractice.  No negligence.

1          THE COURT:  Because --

2              MR. MALONEY:  Was that loud enough, Your Honor.

3          THE COURT:  It would not be good if I raised my voice.

4              MR. MALONEY:  Thank you, Your Honor.

5          THE COURT:  We're not concerned about a negligence

6     claim.  We are not concerned about anything that is defended by

7     educational malpractice.  We have an allegation that we've

8     talked about.  I don't know what else to say.

9              MR. BRENNEN:  Well, Your Honor -- and I'm not going to

10    belabor it because I don't want counsel to get hoarse yelling

11    on the Court's behalf.  But we believe and it's in our papers

12    that these are claims -- they say they're not alleging the

13    educational malpractice; but essentially these are all just

14    repackaged educational malpractice claims.  But that's the last

15    thing I'm going to say about it.

16             The Ross case, as I said, is a case that has this

17    niche claim where a student can show -- in addition to the

18    implied contract where you get a degree if you complete the

19    coursework, if a student can show specific promises by the

20    university to the student for specific things and the

21    university completely fails to provide what it's promised in

22    those specific promises, then he can pursue a

23    breach-of-contract claim.

24             In that case, Mr. Ross was a basketball player who was

25    recruited to Creighton.  His prior academic performance in high

school was not, let's say, quite up to the rigor demanded by Creighton's usual curriculum. And his allegation in that case was that Creighton made a specific promise to him to provide specific services, including tutoring and other help so that he would succeed.

He alleged that those -- that the tutoring, et cetera, was not provided at all; and, therefore, the Seventh Circuit found that he had pled a claim.

We don't have any specific promises anywhere close to what was found to be pursuable in Ross in this case.

We keep hearing about the context, and I'm not going to bother with the Internet postings issue, because I think for reasons we've already stated in our papers, they're not something that the Court should or can --

**THE COURT:** I understand a complaint is that the contract that we all agreed was raised, which is if you do what you're supposed to academically, you'll get a degree. The argument is the school put impediments in the plaintiffs' performance. That's their argument. That's -- whether it's good enough, bad enough on the facts and allegations, that's their argument.

So they are not arguing about a specific course. That's just where they are. I don't know what else to say about it.

**MR. BRENNEN:** Well, Your Honor, in that sense, this

case is no different from the Onawola case where Judge Davis found that -- again, Dr. Onawola was enrolled at Johns Hopkins University trying to get a Ph.D. in epidemiology. He was there in the program for 14 years, as compared to the experiences of the plaintiffs here. And he sued JHU, claiming that it had taken action to hinder -- intentional action to hinder his progress in that Ph.D. program.

**THE COURT:** And he held that there was not adequate proof of the hindering; right?

**MR. BRENNEN:** Well, and to get around the fact that there wasn't -- well, what Judge Davis found, having reviewed the actual facts of his progress, much as we've done with the Plaintiffs Travis, Zitter, and Goldbas here, is that, quote, The record plainly shows what common sense and common experience teaches: that Dr. Onawola's experience at the university, while not without its setbacks, was nothing outside the usual experience of a doctoral student in a high-quality, rigorous program.

Now, Dr. Onawola tried to get around that by saying, Well, the reason they're hindering me, Judge Davis, is that -- because they're motivated by racial animus, that this is a discrimination against Dr. Onawola, who was Nigerian. And Judge Davis there said that's just a completely conclusory allegation. I don't find any support in the Complaint, and just as there's no support in the Complaint for this, existence

1    of this -- this alleged intentional scheme to delay students.

2    And the context that we keep hearing about is, well,

3    Walden is a for-profit institution and it collects tuition.

4    Well, that is no different than the argument that was

5    made and rejected by the Supreme Court in Twombly where the

6    plaintiff there alleged in an attempted antitrust conspiracy

7    class action that on the "Baby Bells" that had been created

8    after the breakup of AT&T were engaged in a conspiracy; and all

9    they could allege factually is, well, they were all engaged in

10   similar business practices, parallel business activities, which

11   were perfectly reasonable in their individual sense with

12   respect to each company.  But that was the only fact that was

13   alleged and that it was a -- the conclusory allegation on top

14   of that, that it -- there's an antitrust conspiracy here.

15   Well, the Supreme Court said that's not good enough.

16   So just saying Walden University, which is an

17   accredited university -- it's been around for many years.  It

18   provides valuable services to working adults seeking to get

19   degrees.  The fact that they make money, that doesn't make --

20   the pure claim, "they're engaged in a scheme," that does not

21   make that a plausible claim.

22   **THE COURT:**  All right.  Thank you.

23   But getting back to what the case is, Mr. Shah, not

24   what it's not, one of the things that you're alleging is

25   that -- or you're contending, that there was an inducement.

There was, in other words, a false statement by omission that induced people to enroll.

Now, there's an allusion in the argument to some advertising. But where is there in the Complaint something that has a factual basis for the contention, which could be quite significant, that Walden communicated, by advertisement or otherwise, to prospective students and said whatever the heck they said?

MR. SHAH: Well -- and I take it Your Honor is talking now about the consumer fraud claims with respect to the inducement.

THE COURT: Well, it possibly does other things. But I am saying that it would -- if there was an advertisement, what did it -- no, I don't say the Complaint should say; what does it say?

MR. SHAH: Okay. So two points on that. First, from the omission-based claim, there doesn't need to be a specific representation that we're relying on.

But I will say as to a specific representation, the handbook goes on in great detail about the five-step process that I've discussed with Your Honor --

THE COURT: The handbook is, as I understand it, not provided to prospective students but to students.

MR. SHAH: I think every single person that begins the dissertation or thesis process, every single student certainly

1    has an understanding what that process is and what that process

2    requires.

3         THE COURT:  Let me repeat that in case we've missed

4    something.  The Complaint doesn't say, nor does it leap out at

5    me as common sense, that somebody who is thinking about

6    enrolling is going to get the handbook.  But certainly somebody

7    who's thinking about enrolling is going to presumably see an

8    advertisement or get some kind of communication from the

9    school.  That's what I'm asking about.

10        MR. SHAH:  I think implicit in the Complaint is that

11   someone starting this process, including the three named

12   plaintiffs, would have had an understanding as to what steps

13   they were required to take in the context of paying tuition to

14   Walden in order to complete the process.

15        THE COURT:  I don't know what you mean by

16   "implicitly."  There's no allegation of anything that was said.

17   Why is it so difficult for a Complaint to say they advertised

18   whatever the heck they said, 14 days or whatever the heck they

19   said?  Why is it absent from the Complaint?

20        MR. SHAH:  Well, I -- whether it's difficult or not, I

21   assume it would not be difficult to say that.

22        Plaintiffs' omission-based claims under the Maryland

23   Act and the California, Illinois, and New York Act, they're

24   fraud -- their fraudulent claims are predicated on Walden's

25   knowledge of its scheme and its failure to disclose that

1    scheme.  That is actionable under all of the statutes,

2    independent of being affirmative misrepresentation.

3         **THE COURT:**  Walden didn't say nothing to people.  It

4    must have had something.  It must have had a Web page.  It must

5    have had something that said -- it's not in the Complaint.  All

6    I'm asking is:  If we're going to have something based upon "I

7    was falsely induced -- we/they were falsely induced to register

8    and start this process," where is the communication that we can

9    say, "Oh, but you didn't say this or you falsely said that"?

10        **MR. SHAH:**  Understood.  And beyond the handbook and

11   the representations about the process, the Complaint doesn't

12   speak to that further.

13        **THE COURT:**  Okay.  All right.  What else do you want

14   to address?  Well, we have waiver and limitations, but that's

15   really affirmative defenses.  I don't see that -- that's not

16   going to knock it out at the Complaint stage.

17        **MR. SHAH:**  And we submit the case law, and we agree

18   with Your Honor on that.

19        I know we touched on unjust enrichment earlier.  If

20   Your Honor has any questions about that claim, I'd be happy to

21   answer them.  Suffice to say that we believe on these -- on

22   this pleading, that we've alleged that a benefit was conferred;

23   that benefit was retained; and that it would be unjust to

24   retain that benefit.  So . . .

25        **THE COURT:**  Any further -- I would like talk to about

the class action allegations also while we're here, and then we can meet with counsel and talk about where we're going.

In regard to everything we've discussed so far, does defense want to say anything?

**MR. BRENNEN:** Just one thing in response to your last exchange there, Your Honor, just to point out that we raised the exact question that Your Honor just raised as to if there's some representation out there, why isn't it in this Complaint? We raised that in our Motion to Dismiss the original Complaint. They've been on notice that we're going to be making these same assertions; and yet three months later, they file a new one, still nothing.

**THE COURT:** All right. One of the things is that this is a tentative class action. And, of course, that requires, I guess, at least one plaintiff to survive this missile.

But do you want to address that? The class action would be -- what's the essence of the class action? That we get something whereby we can have a class that is numerous without undue individualized issues, et cetera? Do you want to address that? It may be premature, but where is this heading?

**MR. SHAH:** Sure, Your Honor.

In terms of a road map -- and you're correct, assuming that one or more of the plaintiffs' claims are permitted to move forward. What we would then propose would be a discovery schedule where we would take, you know, the standard discovery.

1    Following that period, we would move for class

2 certification under Rule 23 --

3        **THE COURT:**  Yeah, I know.

4      **MR. SHAH:**  -- inclusive of our expert reports.  And

5 the scope and nature of that class would be determined by which

6 of the plaintiffs were permitted to move forward as well as

7 which laws we elected to move under.

8        But we would -- our intention would be to proffer

9 damages reports at class certification, which we would hope

10 would demonstrate to the Court why damages could be calculated

11 on a class-wide basis, assuming we were able to prevail on our

12 theory of liability.

13      **THE COURT:**  Well, from what I understand -- and

14 jumping to the damage point and recognizing this would have to

15 be debated later in light of the actual Complaint, that your

16 claim was for a refund of tuition.  That's what your claim is.

17      **MR. SHAH:**  I think that the damages would be derived

18 from, right, tuition refund.  Obviously, any damage model is

19 going to be guided in large part by what discovery

20 demonstrates.  But certainly --

21      **THE COURT:**  Well, that may be, but isn't each

22 plaintiff, if they prevail, a member of the class, entitled to

23 a refund of the tuition?  Isn't that your claim?

24      **MR. SHAH:**  Yes.

25      **THE COURT:**  Not exactly something that would be

1    difficult for discovery.  Okay.

2         And that would include all students, whether -- how

3    about a student who actually graduated and actually got --

4    isn't complaining about the timing?

5         MR. SHAH:  Well, as to that issue, in any damage

6    model, there may be offsets based upon what is shown in

7    discovery.

8         And the cases, including the Cohen case out of the

9    Seventh Circuit, made clear that the certified class may

10   contain class members who hadn't been damaged.  And under that

11   circumstance, that may very well be a situation where that

12   individual class member hasn't suffered damage, and that would

13   be accounted for in the damage modeling.

14        THE COURT:  Well, I don't know what you mean by -- I

15   mean, I understand the words you're saying, but in this case --

16   so Class Plaintiff No. 37 just wouldn't recover.  There would

17   be a claim process.

18        MR. SHAH:  Well, they wouldn't recover in the amount

19   attributable -- and, again, recognizing that, I'm talking

20   without the benefit of an economist or the record.

21        But as a general matter, what I would say from

22   experience is that not only would that person not recover, but

23   that amount of tuition wouldn't be accounted for in connection

24   with an aggregate damage number submitted by plaintiffs' expert

25   at class certification.

1          **THE COURT:**  Again, we're not there yet.

2          How would you overcome -- the defense is unlikely to

3    miss any valid defense.  In fact, they're unlikely to miss any

4    defense, valid or not.  So I'm sure they're going to raise

5    anything.

6          Well, how about the concern that -- particularly in

7    terms of one of these consumer protection, reliance or

8    reasonable reliance is to know of it; correct?

9          **MR. SHAH:**  Well, there are a couple things.  I think,

10   again, reliance can often be presumed in the face of certain

11   evidence.  And I think that based on the allegations that we

12   have here, to the extent a statute requires reliance, that

13   we're going to be able to show that there is a presumption.

14         Other statutes that we've sued on don't have a

15   reliance requirement, so that won't be an issue if those

16   statutes are permitted to move forward.

17         And, again, broadly looking at it, if we prove our

18   allegations, we believe we'll be -- you know, that would

19   demonstrate that at the time that each of these students

20   stepped into this process, they were being faced with a rigged

21   process.

22         So we think that we can readily calculate damages, and

23   our experts can readily calculate damages based on that without

24   getting into --

25         **THE COURT:**  I know you have a lot of cases, and I know

it's easy to talk about generalities without specifics.  But

isn't this case rather simple in terms of damages?  What do you

need an expert to say Mary Jones paid $10,000 of tuition?  If

she hadn't been misled by whatever the heck it is, she wouldn't

have paid anything.  So her damages are $10,000.  I mean, what

is it that I'm missing?

        And one of the concerns that I have is that you're not

focusing on this case.  This is just like a generic

cookie-cutter case that has nothing to do with the specifics.

But what's the great complexity about the damage aspect of this

case?

        **MR. SHAH:**  Well, I don't think it is particularly

complex, given the theory that we have set forth.

        I do think that Mr. Brennen would suggest that

certification wouldn't be appropriate under the law if I didn't

submit an expert report in connection with my motion for class

certification.  That's all I'm saying.

        **THE COURT:**  All right.  That's fine.

        Recognizing that the class certification is premature,

is there anything else?

        **MR. BRENNEN:**  Yes, Your Honor.

        And as you point out, it wasn't really on the plate

for today.  But we would certainly, in the event that any of

these plaintiffs' claims were to survive our Motion to Dismiss,

we think that the next appropriate stage, given the weaknesses

1    that we have identified, would be discovery with respect to

2    those plaintiffs and an opportunity to demonstrate on summary

3    judgment that they don't have any viable claims and, therefore,

4    there isn't a viable class plaintiff.

5            One thing with respect to this damage discussion,

6    frankly, I think what counsel just described, in response to

7    the Court's question, really speaks to the fact that this is

8    not, and these types of claims could never appropriately be the

9    subject of a class action.  The individual experiences are just

10   too varied, even between these three plaintiffs, in terms of,

11   you know, taking leaves of absences and et cetera.

12           But Plaintiff Goldbas is the supposed class plaintiff

13   for the eleventh cause of action or Count 11, which is

14   purportedly asserted under New York general business law,

15   Section 349.  And we've cited cases to the Court in our papers,

16   one of them being Diamond versus Darden Restaurants, Inc.,

17   which is a 2014 Southern District of New York case.

18           It's well-established law in New York that if the only

19   damage that you're seeking on a claim under that statute is the

20   refund of the money that you paid for the good or service that

21   you allegedly were fraudulently induced into buying, that's not

22   sufficient damage to state a claim, so she would be out on that

23   basis for that claim, for that alone.

24           As far as, as I said, just speaks to my first point

25   about maintainability, that we don't think that it would be

1    appropriate to get into class discovery.  It would be more

2    appropriate to focus on these plaintiffs to see whether they

3    actually have a viable claim on the facts once the defense have

4    an opportunity to fill in the blanks.

5            **THE COURT:**  You're right about that.  It's premature.

6    But, you know, we're together.  And this is -- I'm

7    understanding this is a preliminary discussion, but I'm trying

8    to ascertain where we are.

9            First of all, Mr. Shah, is Mr. Brennen right that the

10   New York Act on which you're relying does not cover a refund,

11   not that you wouldn't have some other cause of action for a

12   refund, but it's not for refund; is that accurate?

13        **MR. SHAH:**  That is most assuredly not my understanding

14   of Section 349.  Under that interpretation, if someone

15   purchased a defective vacuum and were seeking a refund of the

16   defective vacuum, which would be the classic consumer fraud

17   case based on, say, a representation that it had a million

18   horsepower when it had 50 horsepower, then according to

19   Mr. Brennen, that wouldn't be recoverable under that consumer

20   protection statute.  Having practiced in this area for some 15

21   years, I certainly don't have that understanding of New York's

22   Consumer Protection Law.

23        **THE COURT:**  All right.  Well, this is not the time to

24   debate that.

25            But also, you're also seeking a national class;

1    correct?

2         **MR. SHAH:**  That's correct, Your Honor.

3         **THE COURT:**  Okay.  Which would mean that we would hear

4    concerns about 50 different state laws.

5         **MR. SHAH:**  No.  Under the national class, if that were

6    permitted to move forward under certification, all of the

7    claims of the students nationwide would be adjudicated or

8    considered under the Maryland law claims asserted in the First

9    Amended Complaint.

10        The Motion to Dismiss did not address any of the

11   choice-of-law issues.  The defendant --

12        **THE COURT:**  I understand.  Your position would be that

13   if we end up with a certification, New York law would be

14   irrelevant.  It would be Maryland law?  Okay.  I mean, that's

15   your position.

16        **MR. SHAH:**  Yeah.

17        **THE COURT:**  But it is relevant in terms of the

18   individual plaintiff's claim.

19        **MR. SHAH:**  The claims under California, Illinois, and

20   New York State law were asserted in the alternative in the

21   event that the Court ultimately were to decide that Maryland

22   law doesn't apply to all of the students nationwide.

23        The Court has not been asked to reach that issue.

24        **THE COURT:**  And Maryland law would apply to everything

25   for what reason, other than the fact that we're here?  Because

1  the owner of Walden is based in Maryland?  Is that what it is?

2          MR. SHAH:  Among other things, the --

3          THE COURT:  Like what other things?

4          MR. SHAH:  Sure.  Well, the allegations would be from

5  a contact standpoint that the conduct emanated from here, that

6  the schemes were developed here, those kind of allegations.

7          MR. BRENNEN:  Your Honor --

8          THE COURT:  Wait.  Whoa.  I understood that this

9  Walden was -- if it has a base, it's based in Minneapolis or

10 Minnesota; is that right?  I mean, I don't --

11         MR. BRENNEN:  That is correct, Your Honor.

12         THE COURT:  Pardon?

13         MR. BRENNEN:  It's headquartered in Minnesota.  It's a

14 Delaware LLC.

15         THE COURT:  I don't see in the Complaint something

16 that says something about Maryland.  Again, it's premature,

17 but --

18         MR. BRENNEN:  I would suggest, Your Honor, that

19 perhaps this case was brought here because they initially sued

20 Laureate as well, which is headquartered in Baltimore, but has

21 been -- was dismissed from the case with the Amended Complaint.

22         THE COURT:  Bring it for a lot of reasons.  Maybe they

23 like this Court, Mr. Brennen.

24         MR. BRENNEN:  I wouldn't blame them.

25         THE COURT:  Maybe they hope they got Judge So-and-so

1    down the hall and not me.  I don't know.

2            But what's the difference?

3            Yes, Mr. Shah?

4            **MR. SHAH:**  No.

5            **THE COURT:**  All right.  That's fine.

6            All right.  Why don't we confer about where we're

7    going in chambers.  Is the hearing finished?

8            **MR. BRENNEN:**  Unless Your Honor has any further

9    questions.

10           **THE COURT:**  No, I don't think so.

11           See you guys in a few minutes.

12       (Court adjourned 12:11 p.m.)

13

14       I, Douglas J. Zweizig, RDR, CRR, do hereby certify that

15   the foregoing is a correct transcript from the stenographic

16   record of proceedings in the above-entitled matter.

17

                    _____/s/_____

18

                      Douglas J. Zweizig, RDR, CRR
19                    Registered Diplomate Reporter
                      Certified Realtime Reporter
20                    Federal Official Court Reporter

21                      DATE:  November 18, 2015

22

23

24

25

**$**

$10,000 [2]   74/3 74/5

**'**

'cause [4]   26/11 38/3 38/5
  55/17

**/**

/s [1]   79/17

**0**

0235 [2]   1/4 2/3

**1**

100 percent [1]   37/21
101 [1]   1/24
105 [1]   55/22
106 [1]   56/7
11 [3]   24/10 55/11 75/13
12 [2]   43/4 43/17
126 [2]   53/18 56/14
12:11 [1]   79/12
13 [2]   52/23 54/21
132 [2]   13/19 57/16
14 [10]   12/20 36/23 41/13 45/19
  45/19 49/6 50/23 52/15 65/4
  68/18
14-day [11]   34/8 34/9 37/23
  38/23 41/1 41/4 41/5 41/24 42/9
  45/21 56/5
15 [1]   76/20
16 [1]   1/9
18 [6]   44/13 45/3 50/4 53/10
  54/20 79/21
18-month [1]   54/15
19 [1]   55/2

**2**

20 [2]   43/9 46/6
2010 [3]   44/13 50/4 53/7
2011 [1]   55/23
2012 [4]   44/14 44/25 45/15 52/6
2013 [5]   45/24 46/21 50/9 59/11
  61/17
2014 [1]   50/4 53/17 75/17
2015 [3]   1/9 54/3 79/21
21 [2]   46/6 50/23
21201 [1]   1/25
229 [3]   17/13 18/6 18/8
23 [1]   71/2
25th [1]   49/4
2nd [1]   48/19

**3**

30th [1]   59/11
34 [1]   46/10
349 [2]   75/15 76/14
37 [1]   72/16
3rd [2]   54/2 54/2

**4**

4th [1]   1/24

**5**

50 [2]   76/18 77/4
51 [1]   1/9
5C [1]   1/9

**6**

62 [2]   59/11 59/16
63 [1]   47/3
67 [1]   18/7

**8**

80 percent [1]   15/14
81 [1]   59/10
8:15 [1]   43/6

**9**

9/11 [1]   24/10
94 [2]   46/12 46/13
9B [1]   21/10
9th [1]   49/4

**A**

A-plus [1]   35/12
ab [1]   37/7
ab initio [1]   37/7
ability [2]   23/6 32/24
able [6]   23/3 24/12 32/23 35/10
  71/11 73/13
about [97]
above [1]   79/16
above-entitled [1]   79/16
absence [11]   11/7 32/5 39/12
  39/13 46/9 46/11 47/24 48/1
  49/24 49/25 54/3
absences [1]   75/11
absent [1]   68/19
absolute [1]   34/23
absolutely [9]   8/14 9/12 12/24
  17/8 23/15 28/14 28/14 29/15
  61/6
academic [12]   33/20 33/24 34/23
  35/5 35/15 37/21 39/2 42/5 55/3
  56/14 57/19 63/25
academically [4]   8/19 37/18
  52/4 64/17
academics [1]   39/17
accept [1]   43/22
acceptable [1]   30/21
according [2]   4/3 76/18
account [2]   22/25 27/5
accounted [2]   72/13 72/23
accredited [1]   66/17
accurate [2]   4/7 76/12
acknowledge [1]   32/2
act [8]   21/19 22/2 30/5 30/5
  57/14 68/23 68/23 76/10
acting [1]   29/13
action [14]   15/24 15/25 26/25
  57/12 65/6 65/6 66/7 70/1 70/14
  70/16 70/17 75/9 75/13 76/11
actionable [1]   69/1
activities [2]   14/23 66/10
activity [1]   22/14
Acts [1]   17/9
actual [4]   42/17 55/4 65/12
  71/15
actually [13]   3/5 12/7 15/5
  16/17 21/25 30/22 42/19 49/12
  49/23 51/21 72/3 72/3 76/3
add [2]   40/10 59/19
added [4]   20/18 43/13 53/3
  54/19
addition [6]   13/19 14/9 20/17
  56/7 56/7 63/17
additional [7]   4/25 7/1 9/18
  10/12 10/12 10/14 15/20
address [9]   6/18 8/20 20/4
  28/23 39/18 69/14 70/16 70/20
  77/10
addressed [1]   5/17
adequacy [3]   22/24 33/1 62/3

adequate [6]   16/22 39/21 39/23
  60/21 60/21 65/8
adequately [2]   5/24 9/23
adhere [2]   11/1 29/19
adjourned [1]   79/12
adjudicated [1]   77/7
admit [1]   35/16
admitted [2]   25/23 62/16
admittedly [2]   24/19 36/15
adults [2]   53/5 66/18
advertised [2]   37/23 68/17
advertisement [8]   36/22 38/23
  38/24 38/25 40/9 67/6 67/13
  68/8
advertising [4]   40/1 40/5 40/8
  67/4
advisors [1]   51/19
affirmative [6]   31/25 32/18
  34/18 34/24 69/2 69/15
affirmatively [1]   31/18
afoul [1]   42/6
after [14]   10/23 20/14 29/21
  34/2 34/2 34/4 34/7 34/7 39/12
  45/18 52/25 54/19 59/11 66/8
again [32]   5/22 6/19 6/20 6/20
  6/20 7/13 7/18 13/6 27/16 27/21
  32/9 46/5 46/14 47/22 47/24
  48/19 49/24 50/18 50/21 52/25
  53/15 54/1 54/3 55/22 57/16
  58/7 65/2 72/19 73/1 73/10
  73/17 78/16
against [5]   6/10 22/8 35/9 42/6
  65/22
aggregate [1]   72/24
agree [3]   29/1 46/10 69/17
agreed [2]   20/8 64/16
agreement [3]   4/24 29/18 60/20
agrees [1]   47/2
al [3]   1/3 1/5 2/4
Alex [1]   2/11
Alexander [1]   1/17
all [81]
allegation [37]   4/16 14/1 14/20
  14/22 14/24 16/19 16/22 17/22
  20/11 20/24 21/5 21/9 22/4 22/4
  22/7 22/8 23/25 24/25 28/19
  28/20 29/25 39/1 47/14 51/7
  52/7 52/20 52/24 56/13 58/5
  60/22 60/24 62/4 63/7 64/2
  65/24 66/13 68/16
allegations [37]   4/18 9/13
  11/16 13/6 14/13 14/25 15/2
  15/3 17/2 18/19 21/12 24/8 26/5
  27/1 27/8 27/17 35/7 37/2 38/21
  40/22 40/24 42/18 43/3 47/15
  54/4 55/20 56/22 57/8 57/12
  58/16 59/20 64/20 70/1 73/11
  73/18 78/4 78/6
allege [9]   13/13 14/5 15/7 21/2
  24/12 26/16 39/19 41/24 66/9
alleged [40]   4/15 5/9 5/24 6/13
  7/19 9/10 9/23 11/9 13/25 14/18
  15/14 17/23 20/12 22/13 22/19
  23/21 24/24 25/4 29/3 29/7 29/8
  29/17 38/24 38/25 39/4 39/16
  40/9 40/17 41/10 41/25 44/18
  49/8 51/23 60/15 60/16 64/6
  66/1 66/6 66/13 69/22
allegedly [2]   21/13 75/21
alleging [14]   4/25 13/3 13/4
  18/22 39/18 39/19 48/8 50/25
  51/2 51/3 51/4 60/18 63/12

**A**

alleging... [1]  66/24
allow [1]  30/7
allowed [2]  31/14 31/23
allusion [1]  67/3
almost [3]  13/20 38/14 59/16
alone [1]  75/23
along [3]  36/12 45/10 45/22
already [3]  5/13 30/13 64/13
also [19]  2/19 15/7 15/17 20/22
 21/17 27/22 41/15 41/16 41/18
 42/12 44/2 49/15 51/15 53/8
 54/11 59/19 70/1 76/25 76/25
alternative [3]  17/5 19/24
 77/20
although [8]  10/10 10/16 15/12
 25/22 40/9 46/13 48/7 50/21
am [3]  3/19 58/12 67/13
amend [1]  60/3
amended [14]  18/4 18/5 20/15
 20/24 38/19 38/24 40/10 40/23
 41/6 41/23 42/19 59/25 77/9
 78/21
Among [1]  78/2
amount [6]  6/10 24/4 27/3 47/2
 72/18 72/23
analogy [1]  7/17
analysis [1]  50/21
analyze [1]  5/12
analyzed [1]  6/19
animus [1]  65/21
anonymous [1]  25/5
another [5]  6/20 7/16 34/5
 47/23 47/24
answer [5]  12/19 18/16 32/4
 32/7 69/21
answered [1]  59/12
Anthony [2]  1/20 2/19
antitrust [3]  22/7 66/6 66/14
any [48]  3/8 5/6 8/10 8/13 9/22
 10/5 12/14 14/22 20/21 20/25
 21/5 23/12 24/14 25/6 25/12
 28/15 30/20 31/11 31/15 34/3
 38/5 39/5 39/15 40/6 40/11
 40/17 44/6 45/12 47/19 50/14
 51/5 52/3 53/11 54/22 59/22
 59/22 64/9 65/24 69/20 69/25
 71/18 72/5 73/3 73/3 74/23 75/3
 77/10 79/8
anyhow [1]  6/5
anyone [1]  40/17
anything [12]  12/8 16/16 17/11
 31/23 37/6 52/20 63/6 68/16
 70/4 73/5 74/5 74/20
anywhere [2]  10/16 64/9
apologized [1]  59/13
appeal [2]  46/24 47/2
Appeals [1]  28/9
appears [1]  38/17
apply [3]  11/8 77/22 77/24
appropriate [4]  74/15 74/25
 76/1 76/2
appropriately [1]  75/8
approved [5]  32/21 49/4 49/5
 49/22 49/23
approves [1]  45/22
approximately [1]  44/13
April [1]  53/17
Apsche [3]  51/24 55/24 56/2
arbitrarily [2]  28/11 62/13
arbitrary [2]  34/24 37/5

are [107]
area [2]  31/16 76/20
aren't [2]  21/5 25/11
arguably [1]  34/19
argue [1]  38/7
arguing [3]  12/11 18/15 64/22
argument [7]  42/20 43/4 64/18
 64/19 64/21 66/4 67/3
around [4]  48/19 65/10 65/19
 66/17
as [70]  4/14 6/11 13/9 14/2
 14/9 15/9 16/8 17/20 18/17
 19/17 20/13 20/24 22/19 22/20
 23/21 26/5 26/18 26/22 26/22
 27/6 28/2 28/7 29/13 30/19 31/4
 31/24 32/18 34/11 34/15 34/15
 37/16 38/7 39/7 39/10 40/8 41/7
 44/23 52/20 53/8 53/9 56/4
 56/24 57/14 57/21 57/21 57/24
 59/7 59/21 59/24 60/3 62/9
 62/19 63/16 65/4 65/12 65/25
 67/19 67/22 68/5 68/12 70/7
 71/6 71/6 72/5 72/21 74/22
 75/24 75/24 75/24 78/20
ascertain [1]  76/8
Ashcroft [1]  24/9
ask [5]  10/3 14/22 18/4 27/24
 42/22
asked [6]  4/23 22/18 44/10
 44/22 49/17 77/23
asking [5]  42/8 42/8 55/5 68/9
 69/6
aspect [1]  74/10
assert [3]  19/5 19/5 52/8
asserted [6]  19/8 41/8 42/7
 75/14 77/8 77/20
assertions [1]  70/11
assessment [1]  56/24
assignment [1]  49/20
associated [1]  35/14
assume [7]  10/15 31/21 31/21
 31/22 35/23 37/20 68/21
assuming [3]  5/20 70/22 71/11
assuredly [3]  58/12 58/14 76/13
attached [1]  21/12
attachment [1]  25/4
attacking [3]  3/23 15/10 37/11
attempted [1]  66/6
attorney [2]  24/9 60/7
Attorney General [1]  24/9
attorney-client [1]  60/7
attributable [1]  72/19
availability [2]  13/10 30/9
available [3]  10/13 45/2 45/4
away [2]  28/4 41/23

**B**

Baby [1]  66/7
back [21]  4/22 7/9 8/5 10/6
 11/5 11/24 20/9 36/9 36/23 37/7
 41/23 46/21 48/20 50/18 52/9
 55/4 56/21 57/2 61/12 62/7
 66/23
bad [5]  7/23 25/13 37/5 38/5
 64/20
baldly [1]  41/8
Baltimore [3]  1/10 1/25 78/20
bar [3]  6/10 42/6 62/20
Baron [2]  1/20 2/18
barriers [3]  60/16 61/3 61/6
barring [1]  62/20
base [2]  56/21 78/9

based [16]  12/12 18/17 19/15
 21/1 54/8 57/5 58/15 67/17
 68/22 69/6 72/6 73/11 73/23
 76/17 78/1 78/9
basic [1]  18/25
basically [4]  12/6 17/8 44/8
 50/3
basis [6]  32/12 54/7 56/15 67/5
 71/11 75/23
basketball [1]  63/24
be [117]
bear [2]  28/16 42/19
because [36]  5/11 5/13 5/25
 6/21 6/25 7/4 8/9 9/10 15/19
 20/11 20/22 21/8 24/24 25/23
 32/15 33/15 35/6 35/22 37/19
 37/22 37/24 38/17 38/19 41/19
 45/10 48/2 53/19 56/17 61/24
 62/15 63/1 63/10 64/12 65/21
 77/25 78/19
becomes [2]  45/13 46/17
been [31]  6/13 6/18 19/5 25/19
 25/19 25/21 31/14 34/7 35/20
 38/10 43/13 45/24 49/7 50/3
 50/4 52/2 57/18 57/20 58/2
 58/10 60/1 60/14 62/14 62/18
 66/7 66/17 70/10 72/10 74/4
 77/23 78/21
before [8]  1/11 2/2 2/4 4/23
 8/3 12/4 50/11 62/8
begin [4]  38/15 44/24 45/1 60/6
beginning [6]  37/13 38/16 40/2
 40/14 44/16 45/1
begins [4]  8/4 44/12 45/14
 67/24
behalf [5]  2/14 2/18 10/5 57/14
 63/11
being [11]  7/2 13/7 42/20 56/19
 56/24 59/17 61/19 62/1 69/2
 73/20 75/16
belabor [2]  40/25 63/10
believe [6]  24/24 55/19 57/11
 63/11 69/21 73/18
Bells [1]  66/7
benefit [4]  69/22 69/23 69/24
 72/20
best [7]  3/25 24/13 30/24
bestow [2]  28/12 62/13
better [1]  40/1
between [4]  21/1 55/23 62/11
 75/10
beyond [1]  69/10
bibliography [1]  49/14
big [1]  34/13
big-picture [1]  34/13
bill [2]  10/23 10/24
bit [3]  41/23 45/10 45/25
blame [1]  78/24
blanks [1]  76/4
blocks [1]  46/7
bootstrap [1]  18/9
bore [1]  45/11
both [3]  2/23 11/19 12/3
bother [1]  64/12
bound [1]  55/11
breach [7]  19/9 19/24 27/22
 31/2 41/3 57/3 63/23
breach-of-contract [3]  27/22
 41/3 63/23
break [1]  58/21
breakup [1]  66/8
Brennen [20]  1/19 2/14 2/24

**B**

Brennen... [17]   3/21 4/10 7/25
8/21 9/24 11/16 20/4 27/24 29/8
38/10 55/8 58/24 62/3 74/14
76/9 76/19 78/23
briefly [2]   13/5 55/16
bring [4]   5/10 7/16 21/18 78/22
bringing [2]   15/23 15/25
broadly [1]   73/17
broke [1]   62/8
brought [2]   42/7 78/19
bunch [1]   25/12
burden [2]   26/15 61/21
business [11]   7/4 15/1 26/17
26/20 26/22 27/5 27/10 45/19
66/10 66/10 75/14
buttressed [1]   14/12
buying [1]   75/21

**C**

calculate [2]   73/22 73/23
calculated [1]   71/10
calendar [1]   45/19
California [3]   44/12 68/23
77/19
call [2]   34/2 51/5
called [1]   34/8
calls [1]   38/4
can [39]   3/23 7/24 8/1 9/4 13/2
18/4 19/1 19/23 25/3 25/9 26/22
27/9 33/6 33/10 33/16 33/19
36/13 39/18 42/16 42/17 43/1
52/22 54/25 55/13 56/2 56/24
57/7 57/21 60/4 63/17 63/19
63/22 64/14 69/8 70/2 70/18
73/10 73/22 73/23
can't [6]   19/25 29/25 33/8 33/9
34/22 48/9
candidates [2]   9/17 9/17
canned [1]   15/9
cannot [2]   5/17 29/22
Capella [1]   21/16
Capella Education [1]   21/16
capricious [1]   34/25
capriciously [2]   28/12 62/13
care [2]   3/15 3/16
career [1]   44/18
case [67]   3/3 3/6 3/7 3/12 6/9
6/21 7/17 8/11 8/16 9/9 9/21
11/5 12/12 15/23 18/17 18/21
19/22 20/14 21/6 21/7 21/10
21/11 21/14 21/15 21/15 21/16
21/17 21/21 22/6 22/7 22/9
24/12 28/8 28/9 33/22 33/25
35/1 35/19 39/2 42/11 44/6
54/18 55/12 61/24 62/9 62/15
62/18 63/16 63/16 63/24 64/2
64/10 65/1 65/1 66/23 68/3
69/17 72/8 72/15 74/2 74/8 74/9
74/11 75/17 76/17 78/19 78/21
cases [5]   6/8 21/6 72/8 73/25
75/15
cast [1]   48/15
cause [3]   26/25 75/13 76/11
caused [2]   39/24 50/16
causes [2]   5/16 57/12
causing [1]   39/13
certain [9]   7/17 10/10 22/8
24/4 24/10 25/23 30/16 35/23
73/10
certainly [16]   9/25 16/6 17/9

23/9 27/4 30/3 32/2 32/25 38/20
52/22 59/17 67/25 68/6 71/20
74/23 76/21
certification [9]   35/16 71/2
71/9 72/25 74/15 74/17 74/19
77/6 77/13
certified [2]   72/9 79/19
certify [2]   35/4 79/14
cetera [11]   12/20 17/10 23/13
30/18 46/4 49/18 52/5 55/1 64/6
70/19 75/11
chair [8]   45/5 45/13 48/13 53/8
53/14 53/14 53/16 54/1
chairs [1]   56/9
challenge [1]   33/1
chambers [1]   79/7
change [6]   10/19 35/20 35/21
53/22 56/15 56/20
changed [2]   48/24 53/24
changes [2]   20/19 53/16
changing [2]   48/15 53/16
chapters [1]   49/13
characterize [1]   39/7
characters [1]   48/16
chart [3]   50/6 55/18 59/6
cherry [1]   58/18
cherry-picked [1]   58/18
choice [1]   77/11
choice-of-law [1]   77/11
chose [1]   39/13
Cicchetti [4]   45/6 45/12 46/15
48/13
Circuit [5]   21/16 21/21 22/1
64/7 72/9
circular [1]   18/12
circumstance [1]   72/11
circumstances [1]   14/8
cited [1]   75/15
CIVIL [2]   1/4 2/3
claim [60]   4/11 8/9 8/13 8/23
9/2 9/3 9/7 9/10 9/23 9/24 10/9
10/10 11/7 12/8 16/23 17/4 19/6
19/9 19/10 19/11 19/15 19/18
19/20 19/22 19/23 20/1 20/6
22/2 22/16 22/22 26/13 29/5
29/6 31/1 35/23 38/13 41/3 44/8
54/11 57/4 57/5 61/2 62/22 63/6
63/17 63/23 64/8 66/20 66/21
67/17 69/20 71/16 71/16 71/23
72/17 75/19 75/22 75/23 76/3
77/18
claimed [1]   10/4
claiming [1]   65/5
claims [34]   3/14 3/22 3/24 5/14
6/10 6/11 7/14 8/15 8/17 11/7
17/8 17/19 18/23 19/5 19/8
21/18 21/23 34/1 42/6 56/23
61/1 62/20 63/12 63/14 67/10
68/22 68/24 70/23 74/24 75/3
75/8 77/7 77/8 77/19
clarification [1]   8/3
clarified [2]   38/9 38/10
clarity [1]   12/1
class [31]   13/8 31/6 31/8 31/9
33/2 35/4 35/16 66/7 70/1 70/14
70/16 70/17 70/18 71/1 71/5
71/9 71/11 71/22 72/9 72/10
72/12 72/16 72/25 74/16 74/19
75/4 75/9 75/12 76/1 76/25 77/5
class-wide [1]   71/11
classic [1]   76/16
classmates [1]   14/14

clear [4]   19/23 61/15 62/1 72/9
cleared [1]   26/8
clearly [3]   25/7 57/20 58/16
client [3]   5/5 9/3 60/7
clients [1]   10/5
close [1]   64/9
cognizable [1]   8/9
Cohen [1]   72/8
colleague [1]   42/22
collect [3]   4/5 4/25 31/23
collected [1]   59/17
collects [2]   15/15 66/3
combined [1]   51/4
come [5]   15/15 34/5 50/18 52/9
61/12
comes [11]   2/4 13/6 13/9 14/6
17/18 18/14 18/16 30/8 31/2
36/12 46/21
coming [2]   16/7 16/9
comment [1]   59/7
comments [4]   19/13 25/6 48/21
54/10
commissions [1]   46/25
committee [9]   13/17 44/23 46/17
50/7 55/25 56/4 56/9 56/17
57/19
common [5]   19/6 19/18 65/14
65/14 68/5
common-law [2]   19/6 19/18
communicated [3]   41/7 42/1 67/6
communication [2]   68/8 69/8
communications [2]   60/7 60/12
company [1]   66/12
compared [2]   14/2 65/4
competent [2]   30/20 31/15
complain [2]   7/5 45/13
complainant [1]   54/19
complaining [1]   39/25 39/25
40/7 45/15 48/10 51/22 72/4
complaint [79]   5/10 9/14 12/7
14/7 15/10 15/14 16/20 18/4
18/5 20/13 20/15 20/24 21/1
21/3 21/21 22/1 24/18 30/4
38/19 38/21 38/24 38/25 40/5
40/10 40/23 41/6 41/23 42/19
43/4 43/14 43/16 43/19 43/20
44/7 45/19 46/10 47/8 47/10
47/13 49/2 50/1 50/14 51/18
52/7 53/3 53/18 53/18 53/24
54/13 54/18 55/5 55/7 58/1
59/25 60/10 60/19 60/19 61/20
61/21 61/25 62/3 64/15 65/24
65/25 67/4 67/14 68/4 68/10
68/17 68/19 69/5 69/11 69/16
70/8 70/9 71/15 77/9 78/15
78/21
complaints [3]   13/20 13/21
58/10
complete [4]   53/20 62/17 63/18
68/14
completed [4]   29/22 30/1 40/22
62/14
completely [6]   20/20 22/14 39/3
48/15 63/21 65/23
completes [2]   28/10 62/12
completing [2]   54/14 60/17
completion [1]   27/20
complex [1]   74/13
complexity [1]   74/10
complied [2]   37/24 40/12
comply [1]   6/14
computer [2]   6/3 25/16

## C

concealed [2]   17/13 20/22
concern [4]   34/13 34/14 59/22
73/6
concerned [2]   63/5 63/6
concerns [3]   60/2 74/7 77/4
conclusory [4]   22/3 28/20 65/23
66/13
conduct [9]   9/14 9/15 15/3
15/18 16/2 17/3 22/19 27/9 78/5
confer [1]   79/6
conferred [1]   69/22
confinement [2]   22/10 24/11
confronting [1]   3/4
connection [2]   72/23 74/16
Connelly [1]   11/6
consider [2]   25/8 56/3
considerable [1]   24/20
consideration [1]   55/12
considered [1]   77/8
consistent [2]   6/22 30/6
conspiracy [6]   22/5 22/7 22/12
66/6 66/8 66/14
constant [1]   53/15
constitute [1]   60/16
consumer [19]   17/4 17/9 17/19
18/18 18/22 19/1 19/2 19/9
19/16 21/8 21/18 57/5 60/25
61/2 67/10 73/7 76/16 76/19
76/22
contact [1]   78/5
contacted [1]   60/1
contacts [1]   45/2
contain [1]   72/10
contains [1]   41/16
contending [1]   66/25
contention [3]   6/16 32/12 67/5
context [12]   14/15 16/1 16/7
19/14 23/1 27/1 27/8 32/11 58/1
64/11 66/2 68/13
contextual [2]   27/17 32/9
contextually [1]   14/25
continually [1]   11/16
continue [2]   16/10 16/13
continued [1]   40/23
continuing [1]   23/10
contract [25]   6/12 16/24 17/10
19/9 19/24 27/22 28/2 28/10
28/25 29/1 29/6 29/12 29/12
29/14 30/6 31/3 41/3 41/16
41/20 57/3 60/23 62/11 63/18
63/23 64/16
contractual [4]   29/23 41/8
41/25 42/12
contrary [1]   62/1
cookie [1]   74/9
cookie-cutter [1]   74/9
copies [1]   38/18
copy [1]   42/16
corners [1]   43/20
correct [24]   3/9 3/10 3/23 5/18
7/15 9/25 12/15 12/24 27/22
27/23 27/25 30/2 32/23 33/9
35/8 37/21 57/6 61/11 70/22
73/8 77/1 77/2 78/11 79/15
could [32]   4/11 5/4 5/5 5/9
6/22 7/2 7/5 7/11 7/19 8/12
20/8 22/13 22/19 22/25 24/13
25/8 25/19 25/19 25/21 35/3
35/4 39/5 39/14 40/17 42/11
44/4 54/21 54/23 66/9 67/5

couldn't [2]   7/9 28/17
counsel [14]   2/6 2/22 21/6
42/15 44/14 51/20 55/19 59/10
59/25 61/13 62/8 63/10 70/2
75/6
counsel's [1]   61/16
Count [1]   75/13
counted [1]   46/6
counter [1]   32/24
couple [4]   6/20 38/22 49/10
73/9
course [10]   6/2 6/4 27/12 33/14
33/16 33/19 49/9 62/16 64/22
70/14
courses [3]   15/9 44/16 44/19
coursework [7]   44/14 44/21
45/16 50/5 51/17 62/12 63/19
court [36]   1/1 1/24 2/2 2/4 5/9
5/17 8/6 8/8 8/13 8/18 22/12
24/7 25/7 28/8 42/3 42/8 42/9
42/16 43/2 43/9 52/10 54/8 55/5
59/22 61/16 61/19 64/14 66/5
66/15 71/10 75/15 77/21 77/23
78/23 79/12 79/18
Court's [3]   59/6 63/11 75/7
Courtroom [1]   1/9
courts [4]   6/9 8/15 8/17 24/7
cover [1]   76/10
create [3]   30/8 41/16 41/20
created [2]   11/13 66/7
creates [1]   29/21
credence [1]   15/2
credits [1]   38/3
Creighton [7]   6/8 6/9 56/23
62/9 62/18 63/25 64/3
Creighton's [1]   64/2
CRR [3]   1/23 79/14 79/18
Cs [1]   38/7
current [2]   10/20 58/1
curriculum [1]   64/2
cut [1]   11/25
cutter [1]   74/9

## D

D-plus [1]   35/13
damage [10]   71/14 71/18 72/5
72/12 72/13 72/24 74/10 75/5
75/19 75/22
damaged [1]   72/10
damages [7]   71/9 71/10 71/17
73/22 73/23 74/2 74/5
Darden [1]   75/16
DATE [1]   79/21
Davis [5]   28/7 65/1 65/11 65/20
65/23
day [16]   34/7 34/7 34/7 34/8
34/9 37/14 37/23 38/23 41/1
41/4 41/5 41/24 42/9 45/21 56/5
61/8
days [16]   12/20 36/23 41/13
45/19 45/19 46/6 46/6 47/3 49/6
49/10 50/23 50/24 52/15 59/11
59/16 68/18
deadline [3]   34/8 34/9 41/5
deal [4]   36/19 36/19 50/19
61/23
dealing [4]   19/10 43/10 43/11
57/4
deals [1]   29/21
dealt [1]   21/7
debatable [1]   33/18

debate [1]   76/24
debated [1]   71/15
debating [1]   31/17
deceive [1]   17/16
December [1]   48/19
December 2nd [1]   48/19
decide [3]   8/18 44/11 77/21
decides [1]   44/25
deck [1]   35/8
decree [1]   62/14
defeated [1]   12/13
defective [3]   23/1 76/15 76/16
defendant [4]   2/14 9/15 32/18
77/11
defendants [4]   1/6 1/18 4/6
12/14
defended [1]   63/6
defense [3]   3/18 7/13 7/23
31/20 31/20 31/24 31/25 32/18
34/17 34/18 34/24 35/5 43/16
70/4 73/2 73/3 73/4 76/3
defenses [2]   32/3 69/15
defined [1]   23/20
defrauded [1]   6/17
degree [11]   16/14 23/11 24/5
28/11 28/12 28/18 40/13 62/12
62/14 63/18 64/17
degrees [3]   16/17 23/12 66/19
Delaware [1]   74/10
delay [12]   4/25 20/23 39/7
39/13 39/24 46/19 48/10 51/24
52/4 52/8 60/15 66/1
delayed [3]   52/2 52/3 52/4
delays [10]   14/12 35/14 37/22
39/1 39/16 39/16 39/21 44/17
49/8 54/6
deliberate [2]   12/13 13/4
deliberately [1]   28/17
demanded [1]   64/1
demonstrate [3]   71/10 73/19
75/2
demonstrates [1]   71/20
denoted [1]   46/9
department [2]   49/3 57/22
depend [1]   54/24
depends [1]   45/18
derived [1]   71/17
describe [1]   46/3
described [4]   6/8 16/3 37/16
75/6
describing [1]   25/2
deserved [1]   39/21
despite [1]   44/17
detail [2]   61/22 67/20
determine [1]   24/5
determined [1]   71/5
developed [1]   78/6
devoid [1]   20/21
Diamond [1]   75/16
did [15]   7/3 12/16 12/17 17/15
21/21 21/23 35/24 37/23 46/20
50/14 55/15 56/5 62/16 67/14
77/10
didn't [19]   5/24 12/15 14/5
18/11 21/2 24/14 34/3 36/13
36/21 38/5 39/23 41/6 41/20
55/18 61/4 62/4 69/3 69/9 74/15
difference [4]   47/19 61/22
61/23 79/2
different [12]   29/5 34/12 34/13
38/18 50/6 53/11 53/12 53/20
56/18 65/1 66/4 77/4

**D**

difficult [6]   11/14 32/4 68/17
68/20 68/21 72/1
difficulties [1]   14/12
difficulty [3]   11/11 13/18
46/22
diligently [1]   48/25
dime [1]   35/11
Diplomate [1]   79/19
directly [3]   15/1 15/16 43/3
director [2]   45/23 48/14
disagree [2]   11/17 40/4
disagreed [1]   32/25
disagreeing [1]   34/14
disagreement [3]   28/15 29/15
37/3
disclaimer [1]   41/15
disclose [3]   21/19 61/4 68/25
disclosed [1]   21/24
discovered [2]   20/22 52/9
discovery [12]   23/7 23/14 23/17
24/5 32/1 70/24 70/25 71/19
72/1 72/7 75/1 76/1
discretion [2]   33/20 33/24
discriminate [1]   22/8
discrimination [1]   65/22
discuss [2]   3/13 4/15
discussed [3]   62/9 67/21 70/3
discussion [2]   75/5 76/7
Dismiss [10]   20/15 41/10 41/14
41/21 42/3 53/1 54/19 70/9
74/24 77/10
dismissal [1]   21/23
dismissals [1]   56/10
dismissed [4]   3/14 3/23 22/6
78/21
dissatisfied [1]   47/1
dissertation [18]   4/4 4/12 11/2
44/23 45/4 45/13 45/14 46/3
49/13 51/17 53/8 54/15 54/23
55/25 56/1 56/8 56/16 67/25
DISTRICT [4]   1/1 1/1 41/18
75/17
diversity [2]   5/20 8/8
DIVISION [1]   1/2
do [51]   3/25 6/5 7/2 12/15
13/13 13/24 14/22 14/25 16/7
16/16 16/22 18/19 19/1 20/7
22/25 23/22 24/8 24/13 25/1
25/3 26/20 27/10 28/1 28/5
28/17 30/22 36/7 36/10 39/2
39/16 39/17 44/16 44/19 48/23
49/15 51/16 52/22 54/17 54/25
57/17 58/6 59/14 61/13 64/16
69/13 70/16 70/19 74/2 74/9
74/14 79/14
Docket [1]   2/3
doctoral [4]   9/16 11/14 17/15
65/17
doctrine [1]   11/8
Document [4]   32/14 32/14 32/14
32/21
documents [1]   21/12
does [27]   7/17 9/6 15/5 26/23
26/23 26/25 30/21 30/25 33/20
41/16 44/9 45/12 45/15 46/8
46/22 48/11 49/1 49/19 53/16
56/3 61/22 66/20 67/12 67/15
68/4 70/3 76/10
doesn't [15]   11/8 25/13 26/1
26/12 31/23 32/8 39/24 49/22

61/8 62/5 66/19 67/17 68/4
69/11 77/22
dog [3]   25/19 25/20 25/22
dogs [1]   25/23
doing [5]   14/18 14/19 44/16
44/21 46/3
dollars [1]   6/20
don't [65]   3/11 3/12 5/25 6/4
10/20 11/25 12/3 12/3 13/2
16/11 18/5 19/5 21/9 23/18
24/25 25/15 25/25 27/9 28/14
29/24 32/10 33/4 33/21 34/14
34/14 40/10 41/24 42/4 43/2
45/11 46/9 47/18 51/8 52/3 52/7
52/12 52/13 54/6 55/18 56/22
58/5 58/17 58/20 60/6 60/7 62/2
63/8 63/10 64/9 64/23 65/24
67/14 68/15 69/15 72/14 73/14
74/12 75/3 75/25 76/21 78/10
78/15 79/1 79/6 79/10
done [8]   10/3 13/24 14/2 14/21
23/4 44/5 53/10 65/12
Douglas [3]   1/23 79/14 79/18
down [8]   12/6 25/18 28/25 32/15
34/21 45/8 45/8 79/1
downplayed [1]   59/10
Dr [1]   48/13
Dr. [40]   36/18 44/22 45/2 45/6
45/12 45/16 45/17 45/18 45/23
45/25 46/4 46/15 46/15 46/16
46/16 46/17 46/22 47/25 48/12
48/12 48/12 48/14 48/20 49/9
50/8 51/24 53/13 53/17 53/19
53/25 55/24 56/2 59/12 59/12
59/20 59/21 65/2 65/15 65/19
65/22
Dr. Apsche [2]   51/24 56/2
Dr. Cicchetti [2]   45/12 46/15
Dr. Gil [1]   53/17
Dr. Jack [1]   55/24
Dr. Jackson [1]   45/2
Dr. Leanne [1]   53/19
Dr. Maizel [1]   36/18
Dr. Marc [2]   46/16 46/17
Dr. Monica [1]   44/22
Dr. Mooney [7]   46/22 48/12
48/12 49/9 59/12 59/12 59/20
Dr. Mooneys [1]   59/21
Dr. Onawola [3]   65/2 65/19
65/22
Dr. Onawola's [1]   65/15
Dr. Perry [2]   53/13 53/25
Dr. Raymond [1]   45/23
Dr. Richard [1]   45/6
Dr. Sutton [5]   45/16 45/17
45/18 46/15 46/16
Dr. Trybus [5]   45/25 46/4 47/25
48/14 48/20
Dr. Walters [2]   48/12 50/8
draw [1]   16/10
due [2]   14/21 56/9
during [3]   44/21 46/19 48/17
duty [2]   19/10 57/4

**E**

e-mail [1]   56/1
each [10]   13/14 22/11 35/4
40/18 57/9 60/13 60/14 66/12
71/21 73/19
earlier [1]   59/13 62/10 69/19
earn [1]   38/2
easier [1]   16/6

easily [1]   22/20
easy [1]   74/1
economist [1]   72/20
education [4]   7/6 17/15 21/16
62/19
educational [8]   6/11 11/8 42/6
55/9 62/24 63/7 63/13 63/14
effect [1]   16/20
effectiveness [1]   53/23
effectuated [1]   11/15
effort [4]   10/24 12/14 12/19
56/25
either [1]   45/20
elected [1]   71/7
eleventh [1]   75/13
eliminate [1]   39/25
else [7]   10/18 13/1 17/11 63/8
64/23 69/13 74/20
emanated [1]   78/5
encountered [2]   14/14 26/18
encountering [1]   14/11
end [5]   29/19 36/20 36/21 56/4
77/13
endless [2]   38/1 38/2
engage [1]   5/5
engaged [4]   4/12 66/8 66/9
66/20
engages [2]   4/3 15/17
enjoin [1]   42/9
enough [12]   6/25 8/24 12/18
22/15 26/13 30/17 52/12 55/7
63/2 64/20 64/20 66/15
enrichment [3]   19/11 19/19
69/19
enroll [1]   67/2
enrolled [13]   39/15 40/18 40/21
46/14 46/20 47/16 48/4 48/9
48/11 48/18 50/3 53/7 65/2
enrolling [2]   68/6 68/7
enrolls [1]   47/22
ensure [1]   10/20
enter [1]   60/19
enterprise [1]   26/21
entitle [1]   28/18
entitled [8]   28/13 30/23 30/23
31/22 32/3 37/18 71/22 79/16
environment [1]   27/7
epidemiology [1]   65/3
equitable [3]   19/20 19/22 19/23
erected [1]   61/5
erecting [1]   61/4
Esquire [7]   1/16 1/16 1/17 1/19
1/19 1/20 1/20
essence [2]   14/3 70/17
essential [1]   23/25
essentially [1]   63/13
established [2]   34/20 75/18
establishing [1]   22/22
et [14]   1/3 1/5 2/4 12/20 17/10
23/13 30/18 46/4 49/18 52/5
55/1 64/6 70/19 75/11
et al [1]   2/4
et cetera [11]   12/20 17/10
23/13 30/18 46/4 49/18 52/5
55/1 64/6 70/19 75/11
ethnic [2]   22/9 24/10
evaluation [1]   23/24
even [14]   5/24 7/19 23/20 25/15
31/9 32/19 34/19 37/17 39/20
42/10 49/5 60/6 60/12 75/10
event [3]   25/12 74/23 77/21
eventually [1]   9/5

**E**

ever [2]   23/12 35/4
every [7]   9/16 13/10 31/11 35/6
  42/9 67/24 67/25
everybody [2]   14/20 23/12
everyone [1]   52/1
everything [5]   12/4 34/12 58/4
  70/3 77/24
everything's [1]   11/25
evidence [4]   18/3 18/10 30/15
  73/11
exact [1]   70/7
exactly [14]   13/20 23/3 24/6
  24/13 24/21 29/17 37/10 39/7
  44/7 49/15 50/20 57/23 57/25
  71/25
example [19]   8/18 8/18 13/15
  16/17 17/3 17/12 18/6 25/22
  26/10 35/19 36/15 36/25 37/1
  39/8 43/10 55/19 55/22 55/22
  59/9
examples [6]   13/17 13/20 14/10
  30/4 38/22 60/15
exception [4]   6/10 49/9 49/9
  62/19
excess [1]   5/16
exchange [1]   70/6
excuse [1]   52/8
exercise [1]   33/19
exist [1]   37/24
existence [3]   40/18 57/8 65/25
expanding [1]   20/5
expect [2]   23/2 56/2
expected [1]   23/1
expense [1]   27/3
expensive [1]   57/19
experience [7]   57/6 57/17 59/10
  65/15 65/15 65/17 72/22
experiences [7]   2/23 13/15
  14/15 57/7 57/9 65/5 75/9
expert [4]   71/4 72/24 74/3
  74/16
experts [1]   73/23
explain [1]   8/1
explains [2]   11/6 11/6
express [1]   41/15
extension [3]   61/8 61/8 61/9
extent [5]   16/22 43/3 43/18
  43/19 73/12
extra [3]   36/4 37/12 62/5
extract [3]   9/18 16/13 51/6
extraordinary [1]   37/22
extreme [1]   9/6
extremely [1]   3/3

**F**

face [3]   11/7 50/13 73/10
faced [3]   13/7 31/5 73/20
fact [29]   12/16 13/3 15/4 16/12
  17/16 21/4 21/11 21/24 24/19
  27/13 30/19 31/11 31/22 32/22
  33/8 39/23 39/24 44/17 44/19
  46/10 52/11 55/4 61/3 65/10
  66/12 66/19 73/3 75/7 77/25
facts [32]   4/15 5/8 6/13 6/24
  17/14 18/1 20/17 20/21 21/2
  21/5 21/19 21/23 21/25 22/12
  22/13 22/18 22/22 24/14 24/23
  35/10 35/21 35/21 36/17 39/3
  39/4 40/17 43/15 52/10 55/9
  64/20 65/12 76/3

factual [3]   40/6 51/9 67/5
factually [2]   20/19 66/9
faculty [27]   11/10 11/10 11/11
  12/22 13/9 13/18 14/23 14/25
  23/10 29/21 30/8 30/9 30/9
  30/20 30/24 31/15 32/21 34/4
  34/8 37/24 37/25 41/12 55/7
  56/9 56/10 56/12 59/21
fail [1]   56/5
failed [3]   6/14 17/14 17/25
failing [1]   21/19
fails [1]   63/21
failure [2]   30/5 68/25
fair [3]   19/10 27/5 57/4
fairly [2]   16/4 33/18
faith [5]   12/14 12/19 19/10
  56/25 57/4
false [5]   21/13 40/1 40/5 40/8
  67/1
falsely [3]   69/7 69/7 69/9
far [6]   20/5 31/7 31/7 34/15
  70/3 75/24
fast [1]   54/25
February [2]   52/6 54/2
February 2012 [1]   52/6
February 3rd [1]   54/2
federal [11]   1/24 5/21 8/6 8/8
  8/13 15/16 15/22 16/8 16/9
  16/15 79/20
Federal Court [2]   8/6 8/8
fee [1]   10/11
feedback [3]   36/23 56/6
feeling [2]   36/1 57/13
fees [1]   10/16
few [4]   38/3 45/18 57/15 79/11
file [1]   70/11
filed [5]   20/14 20/14 20/16
  21/1 41/22
files [1]   46/24 47/2
filing [1]   59/25
fill [1]   76/4
finally [2]   4/24 9/21
find [5]   16/22 39/6 42/9 56/16
  65/24
finding [1]   14/21
fine [11]   3/17 10/1 20/3 28/21
  42/21 42/21 43/19 44/16 51/10
  74/18 79/5
finish [3]   15/19 15/20 52/17
finished [3]   12/5 18/25 79/7
first [23]   2/22 3/8 11/11 11/22
  20/15 35/12 37/8 38/6 38/11
  38/12 38/19 38/24 40/19 41/6
  42/19 49/13 59/8 59/25 61/15
  67/16 75/24 76/9 77/8
five [10]   10/24 10/25 11/18
  12/8 13/16 29/18 29/22 38/2
  56/12 67/20
five-step [4]   10/25 11/18 12/8
  67/20
flesh [1]   23/7
Floor [1]   1/24
focus [4]   5/23 9/14 15/13 76/2
focusing [2]   37/5 74/8
Following [1]   71/1
foot [1]   37/15
for-profit [2]   26/21 66/3
forced [1]   56/8
foregoing [1]   79/15
forth [4]   9/13 13/19 18/17
  74/13
forward [6]   9/9 59/24 70/24

71/6 73/16 77/6
found [8]   6/9 12/20 22/1 41/19
  64/8 64/10 65/2 65/11
four [3]   12/10 34/10 43/20
fourth [5]   21/16 21/21 22/1
  37/12 38/12
Fourth Circuit [3]   21/16 21/21
  22/1
frankly [1]   75/6
fraud [31]   9/2 9/3 9/7 9/10
  9/22 9/24 11/7 12/13 12/16 13/4
  16/23 17/8 17/8 17/8 17/18 18/3
  18/20 18/25 19/4 19/6 19/14
  19/18 21/9 22/16 26/6 26/12
  29/5 57/5 67/10 68/24 76/16
fraudulent [19]   4/25 5/5 5/15
  5/24 8/25 14/2 16/12 16/16
  17/25 18/10 18/10 18/11 20/6
  20/6 20/11 21/13 27/8 39/20
  68/24
fraudulently [1]   75/21
fraught [2]   44/8 50/22
Friday [1]   1/9
Fs [1]   38/7
fulfilled [1]   22/21
full [5]   32/5 46/2 59/11 59/16
  59/21
function [2]   36/22 40/11
fundamentally [1]   10/22
funding [3]   15/16 15/22 16/15
funds [4]   15/15 16/8 16/9 16/13
funny [1]   33/15
further [5]   14/16 15/2 69/12
  69/25 79/8
future [2]   10/20 44/23

**G**

garbage [1]   30/21
GARBIS [3]   1/11 2/15 2/17
gear [1]   50/19
geared [1]   27/2
general [5]   24/9 24/25 50/16
  72/21 75/14
generalities [1]   74/1
generally [2]   13/14 53/5 62/10
generating [1]   27/2
generic [1]   74/8
get [44]   3/3 5/22 7/1 7/9 8/5
  8/17 12/1 12/6 16/17 17/6 17/7
  17/9 20/8 26/22 27/12 27/13
  29/19 30/15 32/1 32/1 34/3 34/7
  36/8 36/23 38/5 39/21 40/12
  48/11 57/10 57/21 58/3 60/20
  62/7 63/10 63/18 64/17 65/3
  65/10 65/19 66/18 68/6 68/8
  70/18 76/1
get-go [1]   57/10
gets [7]   6/1 19/19 24/1 45/6
  48/11 48/20 53/10
getting [10]   23/23 23/24 25/23
  31/16 34/10 40/2 46/22 60/22
  66/23 73/24
Gil [3]   53/8 53/17 53/19
Gil's [1]   53/19
give [8]   10/6 15/2 22/13 32/11
  35/19 36/10 43/9 58/20
given [4]   23/1 48/21 74/13
  74/25
gives [1]   26/25
giving [1]   20/21
go [17]   4/22 11/3 11/24 13/11
  14/16 28/4 34/9 39/5 42/23

**G**

go... [8]   43/23 44/6 50/10
  51/13 55/4 55/17 56/21 57/10
goes [7]   34/10 36/6 45/22 49/24
  57/2 58/7 67/20
going [45]   8/17 9/1 11/22 14/4
  17/6 17/21 18/24 19/1 22/14
  23/11 24/7 27/11 27/12 31/17
  33/15 34/25 35/21 36/20 36/21
  36/22 40/25 42/22 44/10 46/3
  49/15 49/16 49/17 49/17 51/5
  54/25 58/24 61/4 63/9 63/15
  64/11 68/6 68/7 69/6 69/16 70/2
  70/10 71/19 73/4 73/13 79/7
Goldbas [6]   20/18 53/3 53/22
  56/13 65/13 75/12
gone [3]   34/5 34/5 45/3
good [27]   2/7 2/9 2/11 2/13
  2/15 2/17 2/19 2/21 5/1 6/19
  6/25 7/21 7/21 8/24 9/2 12/14
  12/18 12/19 19/10 30/16 38/17
  56/25 57/4 63/3 64/20 66/15
  75/20
good-faith [3]   12/14 12/19
  56/25
got [20]   4/24 24/14 26/13 28/24
  29/9 38/5 43/6 45/10 47/19 49/5
  49/13 49/14 49/18 50/17 50/18
  53/22 53/23 62/2 72/3 78/25
gotten [1]   9/21
graded [1]   49/17
grades [3]   37/5 38/5 38/5
graduated [1]   72/3
graduation [1]   21/25
Grant [1]   37/4
gravamen [1]   9/12
great [5]   40/11 44/19 51/3
  67/20 74/10
green [1]   50/5
gripe [2]   15/10 38/10
growth [1]   15/3
guess [3]   48/1 50/6 70/15
guided [1]   71/19
guy [1]   48/16
guys [1]   79/11

**H**

had [33]   6/22 12/14 13/21 18/9
  18/11 20/5 20/6 20/6 20/8 24/9
  30/24 31/21 32/19 34/7 35/10
  39/2 42/15 50/5 51/19 52/1
  56/15 59/5 61/8 61/9 64/8 65/6
  66/7 68/12 69/4 69/4 69/5 76/17
  76/18
hadn't [2]   72/10 74/4
hails [1]   53/4
hall [1]   79/1
handbook [8]   41/11 41/15 41/16
  41/19 67/20 67/22 68/6 69/10
happened [4]   24/13 24/21 54/7
  54/17
happening [1]   59/17
happy [5]   2/22 39/5 60/2 60/4
  69/20
hard [2]   4/1 42/16
Harwood [1]   28/9
has [32]   6/1 6/13 6/14 6/18
  27/6 30/15 32/7 40/11 41/3
  41/15 43/13 45/3 49/15 50/4
  51/19 52/1 53/8 57/6 57/18
  57/18 59/22 59/25 62/18 63/16

67/5 68/1 69/20 74/9 77/23 78/9
  78/20 79/8
hasn't [1]   72/12
have [103]
haven't [8]   9/23 22/21 23/20
  29/3 40/17 41/10 43/7 49/8
having [5]   5/10 5/13 13/16 32/5
  34/12 65/11 76/20
he [16]   8/4 24/13 24/14 32/13
  33/6 38/19 56/5 56/6 62/8 63/22
  64/4 64/6 64/8 65/4 65/5 65/8
he's [3]   26/11 26/14 53/25
head [1]   22/18
headache [1]   57/19
heading [1]   70/20
headquartered [2]   78/13 78/20
hear [6]   5/25 9/5 36/22 41/24
  52/3 77/3
heard [2]   33/13 38/22
hearing [8]   1/13 2/5 17/7 43/2
  62/10 64/11 66/2 79/7
hearsay [1]   24/19
heart [1]   11/3
heaven [1]   40/9
heck [4]   67/8 68/18 68/18 74/4
heightened [1]   21/22
held [4]   8/16 22/12 50/7 65/8
help [2]   27/8 64/4
helpful [2]   10/2 42/14
her [40]   39/14 43/12 44/12
  44/21 44/23 45/13 45/22 46/4
  46/14 46/23 47/24 48/13 48/14
  48/20 48/21 49/2 49/3 49/4
  49/11 49/16 49/24 50/7 50/8
  50/8 50/9 50/16 50/19 51/16
  51/16 52/16 53/8 53/13 54/16
  55/20 55/24 56/1 56/15 59/9
  59/12 74/5
here [46]   2/22 3/4 7/18 8/21
  8/23 8/25 10/22 11/9 11/25
  12/22 14/9 20/15 22/4 23/6
  29/17 33/23 34/1 34/6 34/13
  35/14 36/1 36/19 36/20 36/21
  37/5 37/22 38/7 40/11 41/2 43/3
  43/5 43/14 43/20 48/22 57/23
  62/16 62/24 65/5 65/13 66/14
  70/1 73/12 77/25 78/5 78/6
  78/19
hereby [2]   3/14 79/14
hesitate [3]   7/16 12/4 25/22
Hey [1]   45/2
high [2]   63/25 65/17
high-quality [1]   65/17
higher [1]   7/5
him [4]   24/13 53/23 61/21 64/3
hinder [2]   65/6 65/7
hindering [2]   65/9 65/20
his [26]   29/14 45/13 63/25 64/2
  65/7 65/12
hitting [1]   22/17
hoarse [1]   63/10
hold [1]   21/21
holiday [1]   49/5
Honor [99]
Honor's [4]   11/4 18/14 19/4
  24/16
HONORABLE [1]   1/11
hope [3]   54/14 71/9 78/25
hoping [1]   43/8
Hopkins [1]   28/8 65/3
horsepower [2]   76/18 76/18
hospital [2]   35/24 36/6

hour [1]   3/11
how [25]   16/11 16/15 16/17
  20/25 23/9 29/7 35/3 41/6 41/7
  41/25 42/11 44/19 46/6 47/14
  47/15 49/17 52/3 52/9 54/9 54/9
  54/24 54/25 72/2 73/2 73/6
however [2]   43/5 51/18
huge [3]   46/7 49/9 61/23
hundred [1]   60/1
hundreds [1]   60/8
hurdle [2]   29/21 29/21
hurdles [2]   11/13 30/8
hypothetical [1]   6/7

**I**

I'd [3]   5/25 9/4 69/20
I'll [5]   9/5 11/3 35/20 43/9
  51/5
I'm [51]   2/22 4/2 4/14 5/22
  6/24 7/18 8/4 11/25 15/23 16/5
  16/15 17/7 17/24 18/15 18/15
  18/24 18/24 19/3 19/25 19/25
  26/24 33/7 34/12 34/16 36/1
  38/14 39/5 40/7 40/25 42/22
  45/2 45/4 45/9 46/13 56/11
  57/25 58/3 58/19 60/11 61/21
  63/9 63/15 64/11 68/9 69/6
  72/19 73/4 74/6 74/17 76/6 76/7
I've [5]   7/14 35/20 45/10 62/2
  67/21
idea [1]   21/8
identified [3]   22/19 62/19 75/1
identifies [1]   51/24
identify [1]   2/6
III [1]   49/11
III of [1]   49/11
illegal [1]   32/15
Illinois [3]   51/15 68/23 77/19
immediately [1]   48/20
immune [3]   9/3 9/7 9/22
impediment [2]   28/17 29/4 29/8
impediments [5]   13/7 31/3 31/5
  40/13 64/18
implemented [1]   24/9
implicated [2]   8/10 8/16
implications [1]   32/7
implicit [1]   68/10
implicitly [1]   68/16
implied [5]   19/10 28/9 57/4
  62/10 63/18
important [2]   3/3 33/4
impossible [1]   11/14
improperly [1]   43/16
improve [1]   49/1
inadequate [4]   11/17 34/19
  34/20 34/20
inappropriate [1]   47/3
Inc [1]   75/16
incentive [2]   15/20 27/19
inception [1]   37/9
include [3]   15/3 21/23 72/2
including [3]   64/4 68/11 72/8
inclusive [1]   71/4
incompetence [1]   14/3
inconsistent [1]   39/3
incorrect [1]   34/15
increase [1]   9/2
indeed [2]   23/10 36/5
independent [1]   69/2
indicated [1]   55/20
indicating [1]   36/2
indication [1]   23/8

## I

individual [6]   35/4 61/7 66/11
  72/12 75/9 77/18
individualized [2]   15/11 70/19
individuals [1]   59/23
induced [5]   60/19 67/2 69/7
  69/7 75/21
inducement [2]   66/25 67/11
ineffective [1]   56/19
ineffectiveness [2]   53/20 56/10
inefficiencies [1]   50/22
inefficiency [1]   44/9
inefficient [1]   55/6
infer [1]   40/17
inference [1]   22/14
information [1]   51/24
inherent [1]   27/12
inherently [1]   27/14
initially [2]   59/12 78/19
initio [1]   37/7
insisting [1]   52/14
instance [2]   11/12 21/18
instances [3]   6/12 13/16 22/11
instead [1]   41/22
institution [2]   56/25 66/3
institutional [1]   31/4
instruction [2]   15/6 15/8
insufficiency [1]   34/23 35/5
insufficient [4]   4/15 4/19
  37/18 39/10
integral [1]   13/10
intent [1]   14/2
intention [1]   71/8
intentional [20]   9/14 9/14
  12/13 12/23 15/2 16/2 16/2
  20/20 20/20 21/2 21/3 22/20
  22/23 26/12 26/12 27/1 27/9
  40/25 65/6 66/1
intentionally [5]   9/17 14/21
  20/23 23/5 35/9
interesting [3]   5/19 49/3 54/12
interestingly [1]   42/2
interfere [1]   42/4
internal [2]   47/1 52/7
Internet [3]   25/5 55/10 64/12
interpretation [1]   76/14
interrupt [1]   11/20
introduce [1]   43/16
introduction [1]   20/19
invalid [2]   4/18 4/21
involved [2]   8/17 35/20
involvement [1]   11/11
involving [1]   13/9
Iqbal [3]   22/9 22/11 24/8
IRB [1]   57/20
irrelevant [1]   77/14
is [270]
isn't [13]   4/7 15/8 18/12 19/20
  35/21 40/9 53/16 70/8 71/21
  71/23 72/4 74/2 75/4
isolated [1]   59/23
issue [10]   5/23 33/23 34/25
  35/17 55/3 56/14 64/12 72/5
  73/15 77/23
issued [1]   23/13
issues [9]   10/21 13/8 14/11
  26/18 32/2 39/6 55/21 70/19
  77/11
it [186]
it's [75]   3/3 4/1 5/23 6/19
  7/21 7/21 8/9 9/1 9/2 12/9
  13/23 15/8 17/1 18/9 21/8 22/6
  23/4 24/17 24/21 27/16 30/16
  30/19 30/22 32/4 32/9 32/19
  33/3 33/8 33/16 33/18 33/23
  34/15 38/4 38/8 38/10 45/3 46/3
  46/5 46/15 47/3 48/2 48/15
  48/17 48/21 49/17 50/16 50/23
  52/23 54/1 54/12 54/13 57/2
  57/13 58/1 60/10 61/10 61/25
  62/1 62/10 62/15 63/11 63/21
  64/19 66/17 66/24 68/20 69/5
  74/1 75/18 76/5 76/12 78/9
  78/13 78/13 78/16
its [11]   15/18 17/14 27/7 29/21
  32/3 33/19 57/1 58/15 65/16
  68/25 68/25
itself [2]   15/1 26/24

## J

Jack [1]   55/24
Jackson [2]   44/22 45/2
James [2]   1/16 2/9
January [2]   20/14 45/24
JHU [1]   65/5
job [1]   54/25
Johns [2]   28/8 65/3
Johns Hopkins [1]   28/8
Johns Hopkins University [1]
  65/3
join [1]   33/10
Jones [1]   74/3
JUDGE [10]   1/11 2/15 2/17 11/6
  28/7 65/1 65/11 65/20 65/23
  78/25
judging [1]   22/24
judgment [2]   32/2 32/19 75/3
judgments [2]   37/20 37/21
July [2]   49/4 59/11
July 30th [1]   59/11
July 9th [1]   49/4
jumping [1]   71/14
juncture [1]   41/2
June [2]   46/21 49/4
June 25th [1]   49/4
jurisdiction [1]   5/21
jury [2]   12/20 19/21
just [66]   3/7 5/21 6/7 7/12 8/5
  11/3 11/20 12/1 14/9 14/16
  17/10 17/12 19/25 21/6 22/4
  22/12 22/19 24/21 26/4 26/10
  26/11 27/24 28/22 29/11 37/3
  38/2 38/19 38/22 40/16 41/8
  43/1 43/6 43/13 44/6 44/16 45/9
  48/6 51/5 53/15 55/16 55/18
  56/21 57/13 59/5 59/7 59/9
  59/19 59/20 59/23 60/13 61/15
  61/25 62/23 63/13 64/23 65/23
  65/25 66/16 70/5 70/6 70/7
  72/16 74/8 75/6 75/9 75/24
justified [2]   52/5 54/8

## K

Kathleen [1]   1/19
Kathy [1]   2/15
keep [3]   7/24 64/11 66/2
keeping [1]   6/4
keeps [1]   15/21
kept [2]   59/17 61/17
kids [1]   38/1
kind [11]   18/9 24/1 24/6 42/20
  48/10 49/16 51/5 59/23 61/22
  68/8 78/6

kinds [1]   54/10
knew [1]   61/3
knock [1]   69/16
know [57]   2/23 4/1 9/5 10/20
  13/2 15/9 16/23 23/1 23/2 23/9
  23/11 24/8 25/12 25/15 25/16
  25/25 26/3 26/10 29/24 32/10
  33/11 35/22 36/16 40/11 42/3
  42/15 45/3 45/25 46/5 48/15
  48/21 49/5 50/17 52/1 55/10
  57/11 57/16 58/17 59/4 59/9
  59/19 60/6 61/24 63/8 64/23
  68/15 69/19 70/25 71/3 72/14
  73/8 73/18 73/25 73/25 75/11
  76/6 79/1
knowing [2]   9/14 16/7
knowingly [1]   17/13
knowledge [1]   68/25
known [1]   35/10
knows [3]   20/13 33/6 40/10
Kraus [2]   1/20 2/19

## L

laboratory [1]   36/8
lack [3]   13/17 40/1 54/6
large [2]   30/2 71/19
larger [1]   61/10
last [4]   21/16 41/18 63/14 70/5
late [1]   45/20
later [2]   70/11 71/15
Laureate [1]   78/20
law [18]   8/15 18/18 19/6 19/18
  19/22 28/2 69/17 74/15 75/14
  75/18 76/22 77/8 77/11 77/13
  77/14 77/20 77/22 77/24
laws [3]   8/10 71/7 77/4
lawsuit [1]   7/2
lawyer [1]   53/4
lead [2]   31/10 32/13
leadership [1]   21/20
Leanne [1]   53/19
leap [1]   68/4
learning [1]   46/25
least [9]   11/4 16/8 23/13 24/19
  39/11 52/1 52/2 56/12 70/15
leave [11]   39/12 39/13 46/8
  46/11 47/23 47/24 48/1 49/24
  49/25 50/11 54/3
leaves [1]   75/11
leaving [1]   50/16
left [1]   59/4
legal [3]   5/22 10/10 10/16
lemon [1]   58/19
lemon-picked [1]   58/19
Leslie [1]   44/22
let [14]   5/21 6/17 9/20 10/3
  11/20 14/16 14/22 18/16 27/24
  33/17 35/2 35/19 52/16 68/3
let's [24]   4/22 5/12 9/9 13/23
  14/16 20/4 26/22 30/12 30/13
  30/14 31/10 31/21 31/21 31/22
  32/11 35/23 40/15 41/1 43/22
  50/10 51/12 51/13 58/23 64/1
liability [2]   5/6 71/12
licensure [1]   7/7
licensures [1]   46/25
light [1]   71/15
like [23]   3/5 7/17 11/4 16/18
  16/24 20/19 21/15 21/24 22/4
  22/6 24/23 26/21 34/16 37/6
  48/2 52/12 53/9 53/15 59/7
  69/25 74/8 78/3 78/23

## L

likely [3]   7/6 16/11 16/16
limitations [1]   69/14
line [4]   15/19 15/21 15/21
  34/21
literacy [1]   6/3
little [4]   18/12 24/17 30/13
  41/23
lives [1]   51/15
LLC [3]   1/5 2/4 78/14
Lombard [1]   1/24
long [8]   7/4 12/9 46/6 50/22
  50/23 54/9 54/9 57/21
look [7]   17/3 22/13 34/16 47/15
  49/23 50/5 50/15
looking [14]   6/23 10/15 10/16
  10/18 33/6 34/6 34/21 42/24
  44/1 53/1 57/3 57/4 60/13 73/17
loop [1]   38/2
lose [1]   7/6
loss [1]   38/14
lost [1]   42/12
lot [8]   14/19 20/10 20/12 21/15
  28/24 36/10 73/25 78/22
loud [1]   63/2
love [1]   9/4

## M

made [14]   6/13 12/14 12/19
  17/25 22/5 43/5 52/7 53/2 56/24
  56/25 61/19 64/3 66/5 72/9
mail [1]   56/1
maintainability [1]   75/25
Maizel [1]   36/18
make [19]   11/13 16/5 16/22
  26/13 26/15 27/14 29/22 32/11
  43/1 49/1 52/20 54/10 56/20
  61/15 61/15 61/22 66/19 66/19
  66/21
makes [8]   16/11 16/15 19/23
  30/10 45/7 47/19 54/11 61/23
making [4]   29/25 58/5 60/11
  70/10
Maloney [19]   1/16 2/8 3/1 3/8
  3/15 4/6 5/1 7/12 33/6 33/11
  33/14 35/2 35/2 36/16 38/18
  41/3 43/23 47/5 62/21
malpractice [10]   6/11 11/8 42/6
  55/9 62/20 62/23 62/25 63/7
  63/13 63/14
manner [6]   29/13 29/20 29/23
  29/25 30/6 30/6
many [5]   14/13 16/17 47/14
  47/15 66/17
map [1]   70/22
Marc [2]   46/16 46/17
March [2]   20/16 54/2
March 3rd [1]   54/2
marketing [3]   15/5 36/24 52/22
Marshall [4]   18/17 21/7 21/10
  21/11
MARVIN [1]   1/11
Mary [1]   74/3
MARYLAND [16]   1/1 1/10 1/25
  17/4 18/18 18/18 19/16 27/7
  28/8 68/22 77/8 77/14 77/21
  77/24 78/1 78/16
massive [1]   57/18
Master's [3]   9/17 17/14 40/21
material [3]   17/14 18/1 21/24
materials [1]   3/2

matter [14]   2/2 2/4 6/24 7/20
  9/1 21/4 26/1 28/2 28/5 30/19
  61/8 62/5 72/21 79/16
may [10]   2/21 10/10 12/16 26/3
  59/4 70/20 71/21 72/6 72/9
  72/11
maybe [7]   19/3 25/10 25/10
  41/10 59/23 78/22 78/25
me [26]   7/17 9/20 10/3 10/6
  11/20 13/2 14/16 14/22 18/16
  19/19 27/24 28/5 31/19 32/4
  32/11 33/6 33/17 35/2 35/3
  35/19 52/15 56/3 65/20 68/3
  68/5 79/1
mean [35]   5/20 7/13 11/25 12/6
  12/9 13/1 14/3 15/9 16/5 16/12
  18/12 23/13 25/13 26/12 26/20
  27/10 27/14 27/25 29/24 30/12
  36/19 38/11 50/15 51/2 51/11
  53/9 58/1 60/5 68/15 72/14
  72/15 74/5 77/3 77/14 78/10
means [3]   8/5 24/1 48/1
Meanwhile [1]   48/13
measure [1]   3/3
medication [1]   36/4
meet [3]   12/22 33/20 70/2
member [2]   30/20 30/24 31/15
  32/21 34/4 46/18 50/7 55/25
  56/4 56/17 71/22 72/12
members [6]   13/8 13/17 31/6
  56/9 57/19 72/10
memorandum [1]   25/10
mention [1]   59/7
mentioned [5]   14/10 15/22 19/19
  41/5 59/5
mere [1]   57/14
merits [1]   6/21
methodologist [2]   53/21 56/18
middle [2]   43/10 50/17
might [2]   24/5 28/22
million [1]   76/17
mind [1]   28/16
minimal [2]   23/14 24/4
minimum [1]   11/12
Minneapolis [1]   78/9
Minnesota [2]   78/10 78/13
minorities [2]   22/9 24/10
minute [4]   5/12 31/7 58/20 59/2
minutes [2]   43/9 79/11
miracle [1]   4/11
mirror [1]   13/20
mirrored [1]   57/6
misconduct [1]   22/15
misled [1]   74/4
misrepresentation [2]   18/21
  69/2
miss [2]   73/3 73/3
missed [2]   17/24 68/3
missile [1]   70/15
missing [1]   74/6
MJG [2]   1/4 2/3
MJG-15-0235 [2]   1/4 2/3
model [9]   15/1 15/13 26/17
  26/20 26/22 27/5 27/10 71/18
  72/6
modeling [1]   72/13
moment [1]   11/5
money [12]   7/21 7/22 16/5 16/7
  27/14 51/6 57/17 57/21 59/15
  61/17 66/19 75/20
Monica [1]   44/22
month [3]   45/18 54/2 54/15

months [9]   34/4 34/10 44/13
  50/4 52/23 53/10 54/21 54/21
  70/11
Mooney [9]   46/17 46/17 46/22
  48/12 48/12 49/9 59/12 59/12
  59/20
Mooneys [1]   59/21
more [23]   4/5 7/21 7/22 10/5
  13/14 15/5 16/11 16/15 23/25
  24/17 27/13 27/13 28/3 33/3
  45/3 45/17 47/16 50/16 51/6
  57/12 57/21 70/23 76/1
morning [9]   2/7 2/9 2/11 2/13
  2/15 2/17 2/19 2/21 43/6
most [5]   15/4 38/19 58/12 58/14
  76/13
motion [12]   20/15 41/9 41/14
  41/21 42/2 42/4 53/22 54/19
  70/9 74/16 74/24 77/10
motions [2]   1/13 2/5
motivated [1]   65/21
motivation [3]   16/1 16/4 16/4
motto [1]   57/18
move [7]   9/9 70/24 71/1 71/6
  71/7 73/16 77/6
moving [1]   15/21
Mr. [51]   2/24 3/1 3/8 3/15 4/6
  4/10 5/1 7/12 7/12 7/25 8/1
  8/21 9/5 9/11 9/24 10/3 11/16
  13/23 20/4 25/3 27/22 27/24
  28/25 29/8 33/6 33/11 33/14
  35/2 35/2 36/16 38/10 38/18
  41/3 43/23 47/5 52/16 55/8
  55/13 55/15 58/24 59/2 62/3
  62/21 63/24 66/23 74/14 76/9
  76/9 76/19 78/23 79/3
Mr. Brennen [17]   2/24 4/10 7/25
  8/21 9/24 11/16 20/4 27/24 29/8
  38/10 55/8 58/24 62/3 74/14
  76/9 76/19 78/23
Mr. Maloney [17]   3/1 3/8 3/15
  4/6 5/1 7/12 33/6 33/11 33/14
  35/2 35/2 36/16 38/18 41/3
  43/23 47/5 62/21
Mr. Ross [1]   63/24
Mr. Shah [16]   7/12 8/1 9/5 9/11
  10/3 13/23 25/3 27/22 28/25
  52/16 55/13 55/15 59/2 66/23
  76/9 79/3
Ms [1]   45/12
Ms. [21]   2/25 20/18 42/23 44/12
  44/22 50/2 50/9 50/10 51/13
  51/15 51/17 52/19 52/20 52/21
  53/3 53/9 53/22 56/13 58/25
  59/7 61/16
Ms. Goldbas [4]   20/18 53/3
  53/22 56/13
Ms. Pontone [3]   2/25 42/23
  58/25
Ms. Travis [11]   44/12 44/22
  50/2 50/9 51/17 52/19 52/20
  52/21 53/9 59/7 61/16
Ms. Zitter [3]   50/10 51/13
  51/15
much [5]   15/8 22/6 26/22 34/11
  65/12
multiple [1]   13/19
Murphy [1]   21/15
Muslims [1]   24/10
must [7]   7/25 48/23 48/24 58/9
  69/4 69/4 69/4
my [12]   3/25 8/23 19/13 20/2

## M

my... [8]   33/13 36/1 42/22
  57/17 63/3 74/16 75/24 76/13

## N

nail [1]   22/17
naked [1]   22/3
name [1]   33/13 34/15
named [7]   13/21 31/6 39/2 42/18
  57/13 59/24 68/11
narrow [1]   62/19
national [2]   76/25 77/5
nationwide [2]   77/7 77/22
Naturally [1]   3/2
nature [2]   56/21 71/5
navigate [1]   26/18
near [2]   10/17 15/19
necessary [1]   11/1
need [9]   3/13 29/18 31/9 36/9
  36/13 46/1 53/20 67/17 74/3
needed [1]   56/18
negative [1]   58/2
negligence [18]   3/9 3/12 3/14
  3/22 3/24 5/14 7/14 11/4 11/7
  12/17 14/3 14/22 22/20 26/5
  56/22 62/22 62/25 63/5
negligent [1]   57/14
never [6]   6/23 35/11 37/24 56/6
  75/8
Nevertheless [1]   25/25
new [15]   21/3 48/11 53/4 53/4
  56/8 56/16 68/23 70/11 75/14
  75/17 75/18 76/10 76/21 77/13
  77/20
New York [8]   53/4 68/23 75/14
  75/17 75/18 76/10 77/13 77/20
New York's [1]   76/21
newly [2]   20/18 53/3
next [3]   43/9 50/10 74/25
niche [1]   63/17
Nigerian [1]   65/22
no [64]   1/4 2/24 2/25 3/13 5/7
  6/6 6/16 6/19 6/24 7/10 7/20
  7/21 7/21 8/25 9/2 9/8 10/7
  14/24 16/19 16/20 18/16 20/24
  29/15 32/20 33/3 34/2 34/21
  36/12 38/3 38/4 38/23 40/5
  40/22 40/24 40/24 47/11 51/8
  51/9 51/18 51/23 51/24 52/7
  52/8 52/10 54/7 54/14 54/16
  54/22 55/3 55/20 58/5 60/9 60/9
  61/9 61/18 62/25 65/1 65/25
  66/4 67/14 68/16 77/5 79/4
  79/10
No. [1]   72/16
No. 37 [1]   72/16
nobody [5]   11/22 23/23 23/24
  24/1 38/5
noncontractual [1]   45/21
nondisclosure [1]   21/8
none [2]   3/1 21/14
nonetheless [1]   22/1
nonexistent [2]   3/24 5/13
nonjury [1]   20/1
NORTHERN [1]   1/2
not [195]
note [2]   53/16 53/17
nothing [11]   8/13 39/2 39/16
  44/18 47/8 57/18 59/16 65/16
  69/3 70/12 74/9
notice [5]   53/1 58/10 58/13

58/16 70/10
notion [3]   26/4 32/25 39/15
November [3]   50/4 55/23 79/21
November 2011 [1]   55/23
now [31]   2/2 2/4 7/14 7/25 10/1
  10/3 11/16 17/7 19/2 20/7 25/2
  28/25 29/3 29/5 29/7 31/8 31/16
  31/24 36/15 36/16 40/15 41/23
  45/2 45/4 46/1 52/9 54/13 55/15
  65/19 67/3 67/10
nowhere [2]   38/21 43/14
number [4]   6/22 24/20 53/11
  72/24
numerous [2]   54/5 70/18

## O

O.C. [1]   22/5
O.C. Seacrets [1]   22/5
object [3]   43/2 43/21 47/7
objecting [2]   47/4 52/16
objection [1]   43/22
objective [1]   56/24
obligation [3]   30/7 41/25 42/12
obligations [2]   22/21 29/14
observation [1]   43/2
obtained [1]   46/17
obtaining [2]   11/11 13/18
obvious [1]   23/4
obvious: [1]   16/5
obvious:  to [1]   16/5
obviously [3]   14/6 55/17 71/18
occasions [3]   39/12 55/24 56/12
October [1]   1/9
off [6]   3/7 11/5 11/25 19/19
  23/12 59/5
offer [1]   27/11
offices [1]   7/5
Official [2]   1/24 79/20
offsets [1]   72/6
often [1]   73/10
Oh [4]   37/7 38/16 44/15 69/9
okay [41]   2/21 4/9 5/19 6/1
  7/11 8/22 9/9 10/1 10/2 12/25
  12/25 13/23 16/21 17/17 18/8
  20/4 23/16 26/2 27/18 27/21
  28/2 28/21 29/3 29/5 29/7 30/12
  30/17 35/25 38/13 45/9 47/21
  51/10 51/13 58/3 58/20 58/23
  67/16 69/13 72/1 77/3 77/14
omission [8]   17/3 17/20 18/17
  19/15 57/5 67/1 67/17 68/22
omission-based [4]   18/17 19/15
  67/17 68/22
omitted [1]   17/13
Onawola [5]   28/8 65/1 65/2
  65/19 65/22
Onawola's [1]   65/15
once [4]   7/18 7/20 52/2 76/3
one [46]   6/9 6/23 8/3 10/5 20/1
  20/8 24/21 24/22 25/9 25/21
  31/11 31/11 34/2 34/5 34/15
  34/17 36/15 36/25 37/1 37/14
  38/3 38/4 38/12 38/12 39/5
  39/11 40/20 42/17 43/21 52/1
  52/8 57/16 57/19 59/7 59/20
  61/8 66/24 70/5 70/11 70/13
  70/15 70/23 73/7 74/7 75/5
  75/16
one-day [1]   61/8
online [1]   25/24
only [18]   13/5 13/13 17/4 20/18
  24/18 31/5 33/15 40/9 48/5

51/20 51/23 52/19 52/24 54/11
  56/5 66/12 72/22 75/18
operate [1]   27/8
operating [1]   23/8
operation [5]   13/25 21/20 36/9
  36/10 36/13
operations [2]   35/24 42/4
opportunity [2]   75/2 76/4
opposed [3]   16/8 26/5 53/10
opposition [2]   42/2 55/2
order [8]   4/4 6/2 9/2 16/13
  29/19 31/9 42/3 68/14
Oregon [1]   41/18
original [5]   20/13 38/25 41/9
  44/3 70/9
other [30]   2/23 3/1 3/5 5/20
  13/8 14/14 15/13 16/24 17/5
  20/17 20/19 21/25 24/20 27/10
  29/13 30/3 43/6 43/15 49/7 51/6
  55/10 57/7 64/4 67/1 67/12
  73/14 76/11 77/25 78/2 78/3
others [1]   49/10
otherwise [3]   17/14 18/20 67/7
our [22]   11/16 21/7 32/24 35/7
  41/9 41/21 42/2 44/3 47/17
  56/22 57/2 57/7 63/1 64/13
  70/9 71/4 71/8 71/11 73/17
  73/23 74/24 75/15
out [24]   5/13 5/25 7/14 12/16
  12/17 23/7 30/19 33/13 40/20
  41/9 41/14 41/18 42/19 43/23
  44/2 60/12 62/6 68/4 69/16 70/6
  70/8 72/8 74/22 75/22
outline [1]   46/2
outlines [1]   10/25
outside [3]   43/15 43/20 65/16
over [4]   37/25 50/18 51/19 60/1
overall [2]   17/2 38/8
overcome [1]   73/2
owe [3]   28/3 28/3 28/6
own [1]   13/15
owner [1]   78/1

## P

p.m [1]   79/12
page [2]   18/7 69/4
Page 51 [1]   18/7
paid [12]   10/8 10/23 35/11
  36/18 39/20 47/15 47/16 61/16
  62/4 74/3 74/5 75/20
paper [9]   6/18 6/23 8/19 8/24
  9/1 30/16 30/20 37/3 37/12
papers [8]   21/7 34/1 38/4 38/6
  39/23 63/11 64/13 75/15
paragraph [8]   13/19 17/13 18/6
  55/22 56/7 56/14 57/16 59/10
paragraphs [1]   43/4
parallel [1]   66/10
Pardon [1]   78/12
part [10]   12/7 12/20 12/21
  15/17 30/2 30/17 36/23 39/24
  61/10 71/19
participate [1]   33/15
particular [3]   15/11 61/7 62/4
particularly [3]   23/7 73/6
  74/12
party [2]   29/12 29/13
pass [1]   33/21
past [2]   23/24 28/24
patents [1]   2/24
patient [2]   36/6 36/13
patients [1]   36/12

# P

pay [12]   5/16 6/1 6/20 7/21
  7/22 14/23 14/25 23/25 27/13
  27/25 61/5 62/4
paying [7]   35/7 39/15 48/2 48/3
  48/6 48/7 68/13
payment [1]   38/11
pays [1]   28/6
pending [1]   2/2
people [22]   3/4 12/19 14/9 14/19
  16/9 16/17 23/18 23/22 25/5
  25/13 31/12 31/12 34/1 36/11
  50/6 52/14 53/6 55/10 57/15
  60/8 61/4 67/2 69/3
per [1]   15/5
percent [2]   15/14 37/21
percentage [1]   23/18
percentages [1]   16/18
perfectly [1]   66/11
perform [2]   54/24 56/25
performance [3]   39/3 63/25
  64/19
performing [1]   29/14
perhaps [5]   7/11 8/1 27/6 34/17
  78/19
period [12]   13/16 20/25 44/21
  45/3 46/5 46/19 48/18 49/25
  54/15 54/22 56/6 71/1
permission [1]   59/6
permit [2]   14/20 27/19
permitted [4]   70/23 71/6 73/16
  77/6
Perry [2]   53/13 53/25
person [6]   25/21 50/8 52/21
  56/19 67/24 72/22
personnel [1]   57/20
perspective [1]   26/4
Ph.D [8]   21/20 40/23 44/12
  51/16 53/7 62/17 65/3 65/7
phone [1]   38/3
phrased [1]   54/12
picked [2]   58/18 58/19
picking [1]   34/16
picture [2]   32/5 34/13
place [4]   5/10 31/4 35/12 38/6
places [1]   49/7
plainly [1]   65/14
plaintiff [51]   20/18 21/17
  21/22 22/25 23/2 23/6 24/12
  24/21 30/14 30/14 30/15 30/22
  30/22 30/25 30/25 31/10 31/10
  31/17 31/22 32/13 32/22 33/2
  33/8 33/8 33/21 34/17 34/19
  34/22 35/4 35/6 37/17 38/20
  39/9 39/11 40/20 44/3 50/11
  53/4 55/19 55/23 56/1 56/8
  59/11 59/13 66/6 70/15 71/22
  72/16 75/4 75/12 75/12
Plaintiff Travis [5]   39/9 39/11
  50/11 59/11 59/13
plaintiff's [3]   13/15 26/4
  77/18
plaintiffs [43]   1/3 1/15 2/8
  2/10 2/12 4/3 4/10 4/24 6/21
  9/13 9/23 13/8 13/16 13/21
  14/10 19/5 24/18 24/24 26/17
  28/16 30/3 31/6 34/16 39/2 39/6
  40/20 42/18 57/6 57/13 57/23
  59/5 59/8 59/24 60/13 60/16
  62/16 65/5 65/13 68/12 71/6
  75/2 75/10 76/2

plaintiffs' [6]   59/25 64/18
  68/22 70/23 72/24 74/24
planned [1]   52/23
plate [1]   74/22
plausibility [3]   14/6 22/25
  24/5
plausible [6]   16/23 22/16 26/13
  26/16 29/10 66/21
plausibly [3]   14/1 22/2 29/4
player [1]   63/24
plead [2]   22/2 22/15
pleading [9]   17/20 18/17 19/15
  21/22 22/21 26/16 34/21 58/8
  69/22
pleadings [1]   26/13
please [6]   2/6 25/1 25/3 33/14
  56/3 62/23
pled [3]   6/11 19/23 64/8
plus [1]   35/12 35/13
point [20]   8/3 13/1 13/6 18/14
  23/3 23/24 40/20 40/25 43/23
  44/2 46/14 48/8 49/22 55/17
  55/17 58/21 70/6 71/14 74/22
  75/24
pointed [3]   41/9 41/14 41/18
points [3]   12/15 60/12 67/16
policy [5]   22/8 24/9 24/14 31/4
  41/12
Pontone [5]   1/19 2/16 2/25
  42/23 58/25
portion [1]   16/9
position [11]   7/13 8/1 9/6 20/5
  26/7 31/20 31/20 37/22 57/2
  77/12 77/15
positive [2]   25/7 25/10
possibility [1]   22/15
possible [1]   30/24
possibly [1]   67/12
postings [7]   25/5 25/10 57/16
  58/1 58/2 58/4 64/12
practice [4]   6/22 7/6 7/21
  10/19
practiced [1]   76/20
practices [1]   66/10
precisely [2]   14/14 60/15
predicated [2]   61/3 68/24
preliminary [1]   76/7
premature [4]   70/20 74/19 76/5
  78/16
prepare [1]   55/18
prepared [2]   4/14 23/16
present [1]   47/18
presented [1]   60/14
presenting [1]   12/12
presumably [2]   25/6 68/7
presumed [1]   73/10
presumption [1]   73/13
pretty [3]   7/25 25/7 30/20
prevail [2]   71/11 71/22
prevent [1]   29/13
prevented [1]   11/23
primarily [1]   18/22
prior [1]   63/25
problem [6]   23/18 23/20 23/21
  37/9 37/10 42/10
proceed [5]   30/23 30/24 31/15
  31/23 56/24
proceeding [1]   43/17
proceedings [1]   79/16
process [39]   4/4 4/13 9/16 9/18
  10/25 11/15 11/18 12/9 12/10
  13/11 26/19 29/19 36/21 36/24

37/15 37/23 37/23 38/8 39/20
  44/8 47/1 49/12 50/17 51/21
  51/25 52/12 55/6 60/17 67/20
  67/25 68/1 68/1 68/11 68/14
  69/8 69/11 72/17 73/20 73/21
processes [2]   11/2 27/20
product [2]   23/2 23/3
productive [1]   8/21
professor [1]   53/23
professors [1]   50/19
proffer [2]   60/11 71/8
profit [3]   26/21 27/3 66/3
program [11]   21/20 40/21 45/23
  48/14 53/13 53/14 54/1
  65/4 65/7 65/18
programs [3]   15/18 42/5 61/5
progress [4]   42/17 49/1 65/7
  65/12
progressed [1]   4/17
prohibited [1]   29/12
prohibits [1]   30/10
prolong [1]   9/18
prolongation [2]   50/14 50/16
prolonging [2]   4/4 4/12
promise [6]   6/13 6/15 17/7 41/8
  57/1 64/3
promised [5]   37/19 39/21 40/2
  40/11 63/21
promises [4]   51/23 63/19 63/22
  64/9
proof [1]   65/9
proper [3]   22/14 60/5 60/5
properly [4]   5/9 44/9 52/23
  55/12
proposal [4]   49/11 49/12 49/19
  49/23
proposal's [1]   49/22
proposals [1]   50/19
propose [1]   70/24
proposition [1]   50/13
prospective [2]   67/7 67/23
prospectus [17]   39/8 39/9 39/14
  45/15 45/23 46/2 46/2 46/14
  47/24 49/1 49/2 49/4 53/14
  53/25 54/14 56/16 59/12
protection [15]   17/4 17/9 17/19
  18/18 18/23 19/1 19/2 19/9
  19/16 21/19 60/25 61/2 73/7
  76/20 76/22
prove [11]   4/11 5/4 6/22 7/19
  14/4 35/10 36/13 37/16 57/7
  57/8 73/17
proven [1]   35/7
provide [3]   27/1 63/21 64/3
provided [4]   42/15 42/16 64/7
  67/23
provides [2]   60/14 66/18
provision [1]   41/17
provisions [2]   40/12 41/19
psychology [4]   40/21 44/13
  51/16 53/7
public [1]   35/22
purchased [1]   76/15
pure [1]   66/20
purportedly [1]   75/14
purposefully [2]   4/3 35/9
purposes [1]   47/18
pursuable [1]   64/10
pursue [1]   63/22
pursuing [2]   44/12 51/15
put [14]   14/15 21/25 23/12
  24/10 27/8 28/17 29/4 29/8

**P**

put... [6]  40/13 42/5 42/16
  46/16 61/21 64/18
puts [1]  16/1
putting [3]  11/23 22/9 25/6

**Q**

qualified [1]  31/18
quality [3]  9/1 35/15 65/17
quarter [7]  43/12 45/25 46/21
  46/23 59/16 61/17 62/5
quarters [3]  47/14 47/16 48/25
quest [1]  16/14
question [16]  4/22 5/23 9/22
  10/4 11/4 12/16 19/4 19/14
  19/21 22/18 33/4 33/19 33/24
  35/3 70/7 75/7
questions [3]  49/17 69/20 79/9
qui [2]  15/24 15/25
qui tam [2]  15/24 15/25
quick [1]  59/7
quite [2]  64/1 67/6
quote [5]  45/20 53/20 56/2 56/4
  65/13
quote/unquote [1]  45/20
quoting [1]  4/3

**R**

racial [1]  65/21
raise [1]  73/4
raised [5]  63/3 64/16 70/6 70/7
  70/9
random [1]  58/18
rapid [1]  15/3
rate [1]  21/25
rather [3]  14/21 50/23 74/2
Raymond [1]  45/23
RDR [3]  1/23 79/14 79/18
re [1]  11/3
reach [2]  15/20 77/23
read [2]  3/2 56/3
readily [2]  73/22 73/23
reading [6]  14/7 38/18 43/11
  56/7 57/17 59/14
ready [2]  44/23 45/1
realism [1]  3/4
really [10]  5/23 6/23 8/21
  36/13 36/20 46/9 59/14 69/15
  74/22 75/7
Realtime [1]  79/19
reason [4]  15/17 57/11 65/20
  77/25
reasonable [6]  23/17 23/23
  32/20 33/19 66/11 73/8
reasons [3]  53/11 64/13 78/22
rebuttal [1]  55/18
recap [1]  50/3
receive [1]  56/2
Recess [1]  58/22
recognize [2]  31/16 62/15
recognized [2]  28/7 62/10
recognizing [3]  71/14 72/19
  74/19
reconvene [1]  58/21
record [7]  2/6 11/23 11/24
  35/22 65/14 72/20 79/16
recourse [2]  6/6 6/17
recover [7]  32/23 33/9 34/22
  37/19 72/16 72/18 72/22
recoverable [1]  76/19
recovery [1]  10/4

recruited [1]  63/25
red [1]  46/9
redress [2]  8/5 10/22
reenrolls [1]  48/20
refer [2]  11/24 21/10
reference [1]  43/3
referenced [1]  62/9
references [2]  24/19 43/18
referencing [2]  19/13 21/13
referred [4]  21/6 38/19 41/3
  51/20
referring [2]  41/11 62/8
reflects [1]  62/18
refund [12]  10/7 47/12 47/19
  61/18 71/16 71/18 71/23 75/20
  76/10 76/12 76/12 76/15
refunding [2]  43/12 46/23
refuse [1]  28/12
regard [6]  14/24 23/10 25/4
  32/12 60/25 70/3
regarding [3]  13/7 27/1 55/20
regardless [1]  42/7
register [1]  69/7
Registered [1]  79/19
regulate [3]  44/9 46/24 52/12
regulating [1]  55/6
reject [3]  26/4 26/6 48/22
rejected [6]  31/19 39/10 48/21
  53/25 54/2 66/5
rejects [2]  45/25 46/4
related [1]  14/23
relevant [3]  15/23 23/9 77/17
reliance [5]  73/7 73/8 73/10
  73/12 73/15
relying [2]  67/18 76/10
remained [1]  50/8
remains [2]  50/8 53/15
remedies [2]  10/12 10/14
remember [3]  7/13 54/18 61/22
RENE [1]  1/3
René [1]  2/3
repackaged [1]  63/14
repeat [1]  68/3
repeated [1]  13/17
repetitious [1]  30/13
replace [1]  48/12
replaced [3]  48/12 53/17 53/19
replacement [1]  52/2
reply [1]  52/14
report [1]  74/16
Reported [1]  1/22
reporter [5]  1/24 58/20 79/19
  79/19 79/20
reports [2]  25/23 71/4 71/9
represent [1]  33/2
representation [8]  54/16 54/22
  60/20 61/18 67/18 67/19 70/8
  76/17
representations [1]  69/11
represented [4]  41/7 54/15
  54/16 62/1
representing [1]  61/16
requested [1]  55/23
requests [1]  49/20
require [4]  8/18 12/21 46/25
  55/3
required [10]  11/18 13/11 18/20
  21/9 54/17 56/16 56/17 56/19
  62/12 68/13
requirement [1]  73/15
requirements [3]  28/10 55/3
  62/17

requires [5]  29/23 50/21 68/2
  70/14 73/12
research [3]  49/2 49/21 49/21
reserve [1]  41/17
resignations [1]  56/10
resigned [2]  46/16 46/16
respect [20]  11/18 13/14 15/18
  17/2 19/4 20/18 38/20 38/21
  39/1 39/8 39/11 44/18 50/2
  55/19 56/13 60/23 66/12 67/10
  75/1 75/5
Respectfully [1]  11/17
respond [13]  13/3 25/3 25/9
  29/9 38/3 38/15 41/12 44/4
  55/13 55/15 56/5 58/24 59/1
responded [5]  43/7 48/17 56/6
responding [2]  41/22 59/13
responds [1]  45/17
response [8]  34/3 34/11 41/5
  56/1 56/2 59/6 70/5 75/6
responses [2]  34/8 46/22
responsiveness [4]  13/9 13/18
  30/9 54/6
rest [1]  50/8
Restaurants [1]  75/16
restrain [1]  3/23
restricted [1]  24/11
result [5]  22/20 31/4 34/11
  39/8 59/21
Resulting [1]  43/11
results [2]  36/9 46/23
retain [1]  69/24
retained [1]  69/23
reveal [1]  18/11
review [15]  13/18 15/11 24/23
  36/21 38/4 38/6 39/22 42/17
  45/16 45/24 46/15 48/17 51/6
  55/25 60/21
reviewed [1]  65/11
reviewer [1]  49/21
reviewers [2]  57/20 57/20
reviews [2]  49/21 55/4
revise [1]  41/17
rewritten [1]  46/15
Richard [1]  45/6
Ricke [2]  1/17 2/11
rigged [1]  73/20
right [60]  3/13 3/15 3/17 3/20
  4/2 4/9 4/19 5/3 5/17 7/11 8/14
  9/10 9/24 10/1 10/12 11/3 12/25
  14/6 16/21 17/7 19/7 19/12
  19/17 20/3 25/14 25/17 27/24
  28/4 29/1 31/5 31/8 31/13 32/15
  32/17 34/13 34/22 36/1 36/3
  36/6 36/19 37/1 37/10 38/9
  38/13 41/17 43/10 45/4 61/7
  65/9 66/22 69/13 70/13 71/18
  74/18 76/5 76/9 76/23 78/10
  79/5 79/6
rigor [1]  64/1
rigorous [1]  65/18
rise [3]  20/21 22/13 26/25
road [1]  70/22
roadblocks [2]  9/16 11/13
Robert [3]  1/19 2/13 3/21
rolls [2]  48/19 48/19
Ross [5]  6/9 56/22 62/9 62/18
  63/16 63/24 64/10
rule [5]  38/23 41/5 42/9 55/11
  71/2
Rule 11 [1]  55/11
Rule 23 [1]  71/2

**R**

run [1]   13/25

**S**

said [28]   3/6 4/6 8/25 12/7
  12/16 25/13 29/20 30/13 30/16
  40/2 40/12 41/21 42/20 44/15
  47/17 52/20 58/4 63/16 65/23
  66/15 67/7 67/8 68/16 68/18
  68/19 69/5 69/9 75/24
same [10]   4/22 14/11 14/11
  14/12 14/14 21/1 24/20 26/18
  37/22 70/10
sample's [1]   49/16
sampling [1]   58/18
Sanders [1]   11/5
satisfy [1]   10/24
say [71]   3/5 3/14 4/2 6/4 7/25
  9/1 9/4 9/4 9/10 12/4 13/2 13/3
  13/5 16/12 17/25 20/7 20/11
  23/16 23/19 24/14 26/11 27/6
  27/11 28/3 29/8 30/21 33/12
  33/15 33/20 34/13 34/15 36/8
  36/8 36/9 41/6 44/4 44/17 45/10
  45/19 48/22 50/21 52/19 54/5
  54/8 55/2 55/6 58/2 58/4 58/9
  60/6 61/13 63/8 63/12 63/15
  64/1 64/23 67/14 67/14 67/15
  67/19 68/4 68/17 68/21 69/3
  69/9 69/9 69/21 70/4 72/21 74/3
  76/17
saying [41]   5/3 5/7 5/8 5/15
  6/6 6/24 7/1 7/19 8/4 8/12 8/23
  9/3 12/9 14/5 19/25 19/25 22/12
  24/20 26/11 26/24 28/16 30/17
  31/18 32/17 37/12 39/22 40/15
  40/16 45/17 50/20 52/11 56/18
  57/23 58/11 58/12 59/3 65/19
  66/16 67/13 72/15 74/17
says [26]   11/16 23/4 24/7 26/22
  29/3 29/12 32/13 32/18 34/6
  41/15 41/17 43/11 43/11 45/2
  46/10 49/2 52/1 52/21 53/18
  53/24 54/5 54/13 54/21 55/7
  56/23 78/16
schedule [1]   70/25
scheme [46]   4/25 5/5 5/10 5/15
  5/25 6/5 7/18 8/25 12/21 12/21
  16/12 18/10 18/11 18/11 20/6
  20/11 20/20 20/23 20/25 21/2
  21/3 22/4 22/21 22/23 24/1
  26/12 27/2 27/2 30/17 31/21
  32/15 32/20 40/18 40/25 51/4
  52/9 52/10 52/13 57/8 58/15
  59/21 61/10 66/1 66/20 68/25
  69/1
schemes [1]   78/6
school [6]   26/16 29/4 34/18
  64/1 64/18 68/9
schooled [1]   57/21
scope [1]   71/5
scream [2]   62/21 62/23
screen [1]   42/17
Seacrets [1]   22/5
seated [1]   2/21
second [2]   50/7 50/10
Secondly [2]   4/2 12/12
Section [2]   75/15 76/14
see [20]   2/22 8/20 9/4 9/20
  16/11 17/21 18/8 23/17 29/9
  33/6 35/25 36/3 42/18 44/15

58/23 68/7 69/15 76/2 78/15
  79/11
seek [1]   56/8
seeking [7]   10/7 10/22 11/1
  66/18 75/19 76/15 76/25
seem [2]   3/13 9/6
seems [1]   11/4
seen [1]   30/3
selected [1]   25/5
send [2]   36/7 36/8
sense [4]   64/25 65/14 66/11
  68/5
sent [1]   59/12
separate [3]   13/16 55/24 56/12
separated [1]   27/9
September [2]   45/15 55/23
serious [1]   32/7
serve [2]   44/22 59/24
service [2]   27/11 75/20
services [3]   17/15 64/4 66/18
set [4]   9/13 9/15 54/22 74/13
setbacks [1]   65/16
sets [2]   13/19 18/17
Setting [1]   37/15
settled [1]   36/15
seven [3]   34/10 44/15 51/19
Seventh [2]   64/7 72/9
Seventh Circuit [2]   64/7 72/9
several [1]   13/15
several-year [1]   13/15
severe [1]   24/11
Shah [18]   1/16 2/9 7/12 8/1 9/5
  9/11 10/3 13/23 25/3 27/22
  28/25 52/16 55/13 55/15 59/2
  66/23 76/9 79/3
sham [1]   51/4
she [89]
she's [31]   30/23 44/23 44/25
  45/20 45/24 46/3 46/13 46/20
  47/16 47/23 48/3 48/8 48/9
  48/10 48/17 48/18 49/13 49/14
  49/15 49/18 50/3 50/5 50/17
  50/18 51/15 52/10 52/9 52/11
  53/3 53/7 54/13
shifting [1]   48/15
shocking [1]   7/25
shot [1]   60/22
should [9]   12/10 12/10 21/24
  29/12 36/18 52/19 54/9 64/14
  67/14
shouted [1]   33/13
show [5]   44/6 49/15 63/17 63/19
  73/13
shown [1]   72/6
shows [2]   6/3 65/14
side [3]   3/5 43/6 56/14
sides [2]   2/23 12/3
sign [2]   7/18 7/20
significance [1]   33/5
significant [2]   33/3 67/6
significantly [1]   35/21
similar [3]   60/1 60/2 66/10
simple [1]   74/2
simply [5]   10/7 33/23 40/24
  42/12 56/6
simultaneously [1]   42/11
since [2]   50/3 59/24
single [3]   35/6 67/24 67/25
situation [3]   35/8 36/19 72/11
six [7]   12/10 34/6 34/10 38/2
  44/15 51/19 51/20
Slow [2]   45/8 45/8

so [90]
So-and-so [1]   78/25
so-called [1]   34/8
solitary [2]   22/9 24/11
some [24]   4/11 5/20 10/9 12/1
  16/24 20/5 20/17 23/7 23/8
  23/11 24/20 25/10 36/7 36/7
  36/8 43/5 49/10 52/21 52/21
  67/3 68/8 70/8 76/11 76/20
somebody [5]   6/1 25/16 48/11
  68/5 68/6
somehow [1]   9/3
someone [2]   68/11 76/14
something [22]   8/20 9/5 12/1
  25/7 28/3 28/3 33/15 41/11 43/8
  48/2 48/22 61/13 64/14 67/4
  68/4 69/4 69/5 69/6 70/18 71/25
  78/15 78/16
somewhere [3]   10/15 25/16 33/13
sorry [7]   17/24 18/24 18/24
  46/13 47/22 53/14 56/11
sound [5]   7/17 26/5 26/6 26/6
  56/22
Southern [1]   75/17
speak [1]   69/12
speaking [2]   3/18 19/17
speaks [6]   15/12 27/19 41/12
  57/9 75/7 75/24
Special [1]   28/9
specific [31]   6/13 10/25 14/10
  14/13 14/24 16/19 18/19 20/17
  21/12 22/13 23/4 24/8 24/23
  26/17 32/11 39/4 43/3 51/23
  53/1 55/20 58/5 60/14 63/19
  63/20 63/22 64/3 64/4 64/9
  64/22 67/17 67/19
specifically [8]   11/6 13/14
  15/7 15/14 19/4 38/20 41/19
  52/11
specifics [6]   18/5 20/25 21/9
  52/3 74/1 74/9
speed [1]   45/10
spend [1]   3/11
spends [1]   15/5
stacked [1]   35/9
Stadtlander [1]   53/19
stage [6]   15/19 34/21 53/14
  54/14 69/16 74/25
stall [1]   57/21
stalled [1]   54/13
stand [1]   62/21
standard [3]   17/19 19/15 70/25
standards [2]   21/22 33/20
standpoint [2]   29/23 78/5
start [6]   3/7 7/12 50/17 50/18
  60/5 69/8
starting [1]   68/11
state [8]   7/5 8/15 17/14 18/1
  19/8 75/22 77/4 77/20
stated [2]   56/2 64/13
statement [3]   4/7 43/13 67/1
statements [5]   17/23 21/14 43/5
  43/19 53/2
states [4]   1/1 8/10 8/16 46/24
statute [7]   17/4 18/19 19/9
  19/16 73/12 75/19 76/20
statutes [5]   10/10 17/5 69/1
  73/14 73/16
statutory [2]   6/12 57/5
stenographic [1]   79/15
stent [1]   36/1
step [7]   9/16 10/25 11/18 12/8

**S**

step... [3]   13/11 49/11 67/20
Stephanie [2]   1/20 2/17
stepped [2]   59/24 73/20
stepping [1]   35/8
steps [8]   11/12 12/10 12/10
  29/18 29/22 30/8 30/11 68/12
still [7]   27/22 30/25 37/18
  37/21 41/24 41/24 70/12
stories [1]   60/2
straight [1]   18/21
straightened [1]   62/6
Street [1]   1/24
student [22]   5/16 6/3 6/18 8/4
  15/5 15/11 16/13 27/13 28/6
  28/10 31/11 35/12 35/13 41/11
  62/11 62/12 63/17 63/19 63/20
  65/17 67/25 72/3
students [35]   4/5 7/5 9/19
  10/20 10/23 11/1 13/11 15/15
  15/18 15/19 17/16 24/20 27/3
  27/7 27/25 28/17 30/7 30/10
  38/1 41/12 47/1 53/5 53/11
  53/11 54/24 57/7 60/1 66/1 67/7
  67/23 67/23 72/2 73/19 77/7
  77/22
students' [1]   57/9
study [1]   49/16
stuff [4]   3/1 28/25 32/20 34/18
subject [2]   32/24 75/9
submissions [1]   35/15
submit [9]   4/20 7/4 7/20 34/1
  48/9 49/14 49/18 69/17 74/16
submits [9]   45/16 45/22 46/14
  47/24 48/16 49/2 49/3 49/11
  49/19
submitted [9]   6/25 30/16 32/13
  34/19 39/9 48/8 54/1 54/9 72/24
subsequent [1]   38/13
subsidiary [1]   10/4
substance [1]   49/21
substantial [3]   9/18 16/8 27/2
succeed [1]   64/5
such [5]   4/16 5/8 6/4 7/6 40/18
suddenly [1]   21/2
sue [2]   7/9 36/12
sued [4]   7/2 65/5 73/14 78/19
suffer [1]   50/14
suffered [2]   54/5 72/12
suffice [2]   56/3 69/21
sufficient [5]   8/19 22/2 22/22
  57/12 75/22
sufficiently [1]   29/4
suggest [3]   42/3 74/14 78/18
suggesting [1]   20/21
suing [1]   3/8
summary [5]   5/1 32/2 32/19
  49/14 75/2
summer [3]   44/25 46/21 61/17
supervisor [1]   55/25
supervisory [3]   13/17 56/9
  56/17
support [9]   4/15 21/5 22/22
  24/15 24/25 40/24 51/9 65/24
  65/25
supported [1]   44/7
supports [1]   14/1
suppose [2]   30/15 30/19
supposed [4]   20/22 39/17 64/17
  75/12
supposedly [1]   15/11

Supreme [4]   22/12 24/7 66/5
  66/15
Supreme Court [4]   22/12 24/7
  66/5 66/15
sure [17]   11/21 12/2 13/5 15/23
  16/15 18/2 29/11 29/22 55/14
  55/16 57/25 58/3 58/19 61/16
  70/21 73/4 78/4
survive [2]   70/15 74/24
suspect [1]   33/1
Sutton [6]   44/22 45/16 45/17
  45/18 46/15 46/16
systematic [2]   4/4 4/12

**T**

table [1]   11/5
take [15]   6/2 22/25 27/5 30/13
  30/14 38/2 39/13 47/3 53/12
  54/9 54/23 55/2 67/9 68/13
  70/25
taken [2]   58/22 65/6
takes [15]   35/3 45/18 46/6 46/8
  46/8 46/11 47/23 51/6 51/16
  51/17 53/9 53/10 53/13 54/1
  54/3
taking [4]   36/3 44/14 56/14
  75/11
talk [11]   10/15 10/19 16/23
  27/21 31/10 41/1 44/19 55/8
  69/25 70/2 74/1
talked [1]   63/8
talking [16]   3/11 8/2 18/25
  31/8 32/10 33/7 37/11 38/11
  38/12 41/2 46/7 60/7 62/22
  62/23 67/9 72/19
talks [1]   50/1
tam [2]   15/24 15/25
tangent [1]   19/20
teaches: [1]   65/15
teaches:  that [1]   65/15
tears [1]   45/11
tell [6]   13/2 26/23 28/5 29/7
  54/6 62/2
tells [1]   48/20
ten [1]   58/20
ten-minute [1]   58/20
tend [1]   17/15
tentative [1]   70/14
terms [12]   10/19 13/13 27/7
  27/17 29/11 32/5 62/3 70/22
  73/7 74/2 75/10 77/17
terrible [4]   13/23 13/24 30/20
  32/20
terribly [1]   13/25
test [2]   36/7 36/8
testing [1]   5/22
tests [1]   36/7
tethered [1]   17/19
than [17]   10/5 14/21 15/5 16/12
  20/17 24/17 27/11 28/3 33/3
  45/3 45/17 47/16 50/23 51/6
  57/12 66/4 77/25
Thank [9]   18/8 28/4 43/25 45/9
  47/20 47/21 52/18 63/4 66/22
that [572]
that's [120]
their [30]   7/7 7/9 11/2 14/14
  16/17 20/8 21/25 22/21 28/18
  28/20 35/15 38/3 38/4 38/6
  38/13 39/7 40/14 41/6 41/6
  41/22 42/2 44/18 51/7 54/25
  57/6 57/18 64/19 64/21 66/11

68/24
them [22]   3/5 5/10 5/25 6/9
  10/5 16/6 22/9 24/21 28/3 28/3
  28/18 35/9 35/10 39/19 41/7
  42/1 42/5 43/21 44/20 69/21
  75/16 78/24
then [36]   5/21 6/3 8/12 18/10
  19/10 20/8 20/14 22/20 22/21
  26/17 30/25 32/22 32/25 34/4
  34/16 34/21 36/12 37/25 38/12
  41/9 41/22 45/1 46/8 46/15
  46/20 47/23 48/25 49/11 49/24
  51/14 54/20 57/8 63/22 70/1
  70/24 76/18
theories [1]   16/24
theory [13]   3/9 4/18 4/20 5/4
  5/22 7/23 27/22 31/24 32/12
  42/7 61/9 71/12 74/13
there [69]   5/8 5/15 6/8 6/12
  8/8 10/9 10/10 10/17 12/10
  12/10 15/8 17/10 19/17 20/13
  21/4 21/11 23/12 23/13 23/17
  24/8 24/18 25/10 25/11 30/15
  31/3 35/23 36/22 38/24 39/6
  40/5 40/9 40/23 43/5 43/18
  43/19 44/17 44/18 47/14 47/16
  48/5 48/13 51/5 51/23 52/8
  52/10 54/22 55/20 58/2 58/10
  61/18 65/4 65/8 65/11 65/23
  66/6 66/25 67/1 67/4 67/13
  67/17 70/6 70/8 72/6 72/16 73/1
  73/9 73/13 74/20 75/4
there's [43]   3/13 4/15 5/20 6/5
  6/6 6/16 7/17 8/13 12/8 14/24
  16/19 16/20 20/10 20/11 20/24
  21/3 24/18 28/9 28/15 34/21
  38/23 40/8 40/22 40/24 40/24
  44/15 46/5 46/19 47/8 51/8 51/8
  51/18 51/24 52/6 52/8 54/7
  54/16 59/20 65/25 66/14 67/3
  68/16 70/7
therefore [2]   64/7 75/3
these [53]   6/24 6/24 8/15 10/21
  11/13 12/14 13/11 14/23 15/18
  15/19 17/9 17/23 24/24 25/13
  26/5 27/20 29/18 29/22 30/8
  34/1 34/16 38/1 40/12 42/15
  42/18 43/15 44/4 48/23 49/8
  49/10 50/18 53/6 54/10 55/3
  56/23 57/11 57/25 58/3 58/4
  58/10 59/23 61/5 61/5 63/12
  63/13 69/21 70/10 73/7 73/19
  74/24 75/8 75/10 76/2
thesis [4]   11/2 11/14 46/4
  67/25
they [142]
they're [40]   11/1 14/5 14/18
  14/19 25/13 28/12 39/18 39/19
  39/22 39/25 40/5 40/14 40/16
  41/11 42/7 42/8 44/16 45/17
  48/10 48/14 50/25 51/2 51/3
  51/21 52/13 52/13 52/14 53/1
  53/5 55/6 55/11 55/11 63/12
  64/13 65/20 65/21 66/20 68/23
  73/3 73/4
they've [6]   9/10 13/24 24/14
  52/2 55/5 70/10
thing [13]   13/5 15/13 17/8 18/9
  24/7 24/21 41/1 41/4 41/24 48/5
  63/15 70/5 75/5
things [24]   13/1 16/18 16/24
  23/4 24/22 25/13 25/18 42/20

**T**

things... [16]  44/4 44/10 48/8 48/9 48/23 48/23 52/11 53/12 54/25 63/20 66/24 67/12 70/13 73/9 78/2 78/3
think [49]  3/2 16/1 17/1 17/3 17/12 17/18 18/13 20/7 22/17 26/4 26/8 26/16 27/4 27/9 27/16 28/14 29/25 31/2 31/3 31/9 32/4 32/9 32/9 34/14 34/15 36/18 42/14 46/5 46/10 47/18 50/5 54/17 55/8 55/11 58/5 60/12 64/12 67/24 68/10 71/17 73/9 73/11 73/22 74/12 74/14 74/25 75/6 75/25 79/10
thinking [2]  68/5 68/7
third [1]  49/24
this [154]
those [28]  3/4 10/14 11/12 13/10 15/3 17/6 17/7 21/23 22/11 25/18 30/10 31/5 35/10 39/12 41/19 42/23 44/18 49/16 51/20 54/3 55/9 60/11 61/4 63/22 64/6 73/15 75/2 78/6
though [2]  49/5 57/14
thought [2]  41/1 59/22
thousand [1]  6/20
thousands [2]  10/23 57/7
three [21]  11/12 13/21 24/18 31/5 34/9 48/25 49/13 50/6 51/16 51/20 53/9 53/13 55/24 57/13 59/5 59/8 59/23 60/13 68/11 70/11 75/10
threshold [1]  37/13
through [14]  9/21 11/10 11/12 13/12 29/20 30/7 30/10 34/10 39/5 42/23 43/23 44/6 49/7 55/17
throughout [1]  44/17
throw [1]  5/25
throwaway [1]  54/13
thrown [1]  7/14
tie [1]  15/1
till [1]  50/4
time [16]  21/1 42/9 45/3 46/7 46/19 47/3 48/14 49/25 50/9 52/22 53/12 54/23 55/25 59/15 73/19 76/23
timeline [2]  60/13 60/14
timelines [2]  42/15 42/23
timeliness [1]  45/13
timely [6]  27/20 29/22 29/24 39/22 47/2 49/4
timing [1]  72/4
Timothy [1]  1/16 2/7
today [2]  20/16 74/23
today's [1]  58/17
together [1]  76/6
told [2]  6/18 56/15
too [4]  7/23 50/22 50/23 75/10
took [2]  39/12 40/14
top [1]  66/13
tort [3]  6/11 12/23 26/6
totality [5]  14/7 14/7 17/2 27/4 58/7
touched [1]  69/19
towards [2]  25/6 27/2
transcript [1]  79/15
TRAVIS [26]  1/3 2/3 39/9 39/11 40/21 42/24 43/11 44/1 44/12 44/22 50/2 50/9 50/11 51/17

52/19 52/20 52/21 53/9 53/10 53/15 54/21 59/7 59/11 59/13 61/16 65/13
treated [1]  23/10
trial [1]  32/19
tried [2]  21/17 65/19
true [2]  7/8 15/12
try [9]  3/3 3/6 5/12 5/21 5/22 6/17 10/24 15/20 26/18
Trybus [6]  45/23 45/25 46/4 47/25 48/14 48/20
trying [6]  12/1 18/15 43/16 45/10 65/3 76/7
tuition [44]  4/5 5/1 5/16 6/2 6/5 7/1 7/9 7/24 8/5 9/2 9/18 10/6 10/8 10/23 10/24 20/8 23/25 26/22 27/12 27/13 27/25 28/4 28/6 34/22 35/7 35/11 37/8 37/12 38/11 39/15 39/20 40/14 43/12 46/23 59/17 61/5 61/17 66/3 68/13 71/16 71/18 71/23 72/23 74/3
turnaround [2]  34/9 37/23
turned [2]  32/14 37/25
turnover [5]  11/10 13/10 30/9 44/10 46/20 52/14
turns [1]  30/19
tutoring [2]  64/4 64/6
twice [4]  38/22 39/9 39/9 51/17
two [10]  13/16 15/18 21/6 24/22 44/10 45/20 59/5 61/5 61/8 67/16
two-year [1]  61/8
Twombly [3]  22/7 22/11 66/5 53/21 56/18 60/15
type [7]  16/2 18/19 26/18 27/5 53/21 56/18 60/15
types [6]  13/7 14/11 14/11 14/12 56/23 75/8
typicality [1]  33/1

**U**

ultimately [4]  14/4 22/3 62/5 77/21
Ulysses [1]  37/4
unable [1]  4/10
unacceptable [1]  59/14
under [25]  8/10 10/10 17/4 18/18 18/18 19/15 21/18 22/2 29/14 42/7 55/12 68/22 69/1 71/2 71/7 72/10 74/15 75/14 75/19 76/14 76/19 77/5 77/6 77/8 77/19
underestimate [1]  33/4
understand [15]  3/6 3/22 5/21 9/20 12/22 15/9 18/13 26/15 46/1 59/15 64/15 67/22 71/13 72/15 77/12
understanding [7]  19/3 20/2 68/1 68/12 76/7 76/13 76/21
understood [2]  69/10 78/8
undue [2]  50/14 70/19
unhappy [1]  53/23
UNITED [1]  1/1
universities [2]  15/4 25/24
university [33]  1/5 2/14 2/16 2/18 2/20 6/1 6/14 6/14 6/22 7/1 7/3 9/15 10/8 10/25 11/9 27/6 27/6 28/11 30/16 35/11 42/13 49/20 50/23 56/23 57/10 62/11 62/13 63/20 63/21 65/3 65/16 66/16 66/17
university's [2]  21/20 42/5

unjust [4]  19/11 19/19 69/11 69/23
unlawfully [1]  31/18
unless [3]  34/24 52/16 79/8
unlike [1]  15/4
unlikely [2]  73/2 73/3
unnamed [2]  52/21 52/21
unnecessary [1]  35/24
unquote [1]  45/20
unresponsive [1]  56/11
unresponsiveness [3]  11/10 56/11 56/11
unspecified [1]  54/6
until [2]  44/14 49/23
untrue [1]  44/4
up [13]  6/3 7/18 7/20 9/15 26/9 36/20 36/21 41/2 42/16 50/19 62/21 64/1 77/13
upheld [1]  21/23
upon [3]  12/12 69/6 72/6
URR [3]  49/20 49/22 57/20
us [7]  5/21 6/17 7/21 7/22 26/23 29/7 54/7
use [2]  24/16 25/22
using [2]  8/18 40/8
usual [2]  64/2 65/17
utterly [1]  6/14

**V**

vacuum [2]  76/15 76/16
valid [5]  3/12 4/11 5/4 73/3 73/4
valuable [1]  66/18
varied [1]  75/10
versus [10]  2/3 21/15 22/5 28/8 38/7 38/7 56/23 62/9 62/18 75/16
very [13]  7/4 10/25 21/11 22/6 24/5 28/20 32/4 32/11 34/11 57/19 60/4 62/19 72/11
viable [4]  31/9 75/3 75/4 76/3
view [1]  25/6
violated [1]  42/10
violation [1]  6/12
Virginia [1]  21/18
virtue [1]  60/20
voice [1]  63/3
Vollmar [1]  22/5
voluntarily [1]  39/13
vulnerable [1]  35/5

**W**

wait [4]  5/12 31/7 59/2 78/8
waiver [1]  69/14
wake [1]  24/10
WALDEN [52]  1/5 2/14 2/16 2/18 2/20 4/3 4/11 9/15 10/8 10/25 15/1 15/4 15/15 15/17 15/21 17/13 23/8 25/25 27/6 29/20 30/5 32/3 33/19 35/11 39/15 40/19 42/13 43/12 44/9 44/13 46/20 46/23 46/24 47/2 52/6 53/5 57/10 57/15 57/17 58/3 58/9 58/12 59/18 61/3 61/17 66/3 66/16 67/6 68/14 69/3 78/1 78/9
Walden University [9]  2/20 9/15 10/8 10/25 27/6 35/11 42/13 57/10 66/16
Walden's [3]  37/20 40/21 68/24
Walden, [1]  2/4
Walden, LLC [1]  2/4

**W**

Walters [2]   48/12 50/8
want [30]   3/7 5/25 8/20 11/23
  11/24 12/4 13/1 13/2 20/7 27/21
  39/19 42/4 43/23 45/11 55/15
  56/21 58/3 58/6 58/9 60/5 60/7
  61/13 61/15 61/15 61/25 63/10
  69/13 70/4 70/16 70/19
wanted [1]   44/3
was [102]
wasn't [9]   6/25 12/20 12/21
  31/22 38/25 54/8 56/18 65/11
  74/22
waste [1]   57/17
watching [1]   52/14
way [11]   17/12 23/8 25/9 26/10
  42/5 45/12 52/19 53/9 54/12
  55/22 59/9
we [137]
we'd [3]   6/25 24/22 37/21
we'll [6]   17/7 29/9 58/21 60/20
  61/12 73/18
we're [48]   5/7 6/4 9/1 9/22
  10/16 10/22 12/4 15/10 15/25
  17/6 18/24 18/25 19/1 19/2
  20/15 27/11 27/11 28/25 31/16
  32/10 36/20 36/20 38/7 38/11
  38/12 41/2 42/24 43/8 43/10
  44/1 46/7 50/20 53/1 60/19
  62/22 62/22 62/24 63/5 67/18
  69/6 70/1 70/2 70/10 73/1 73/13
  76/6 77/25 79/6
we've [27]   4/17 4/24 5/13 9/21
  11/9 16/2 20/4 20/7 21/7 26/8
  26/8 29/17 29/20 30/3 38/22
  42/15 42/15 49/5 49/7 63/7
  64/13 65/12 68/3 69/22 70/3
  73/14 75/15
we/they [1]   69/7
weaknesses [1]   74/25
Web [1]   69/4
week [4]   34/2 34/2 34/2 45/20
weeks [1]   45/18
well [106]
well-established [1]   75/18
were [47]   5/8 8/8 12/15 13/7
  19/18 20/19 21/12 23/17 24/8
  25/7 32/14 32/20 33/23 34/24
  35/10 35/12 37/3 37/19 37/22
  38/1 38/1 39/7 39/21 40/2 40/11
  41/2 44/4 51/3 53/2 55/20 58/10
  58/24 66/8 66/9 66/11 68/13
  69/7 71/6 71/11 73/20 74/24
  75/21 76/15 77/5 77/20 77/21
  78/6
what [135]
what's [13]   5/23 16/17 17/23
  23/11 27/14 27/14 31/24 35/22
  47/13 54/25 70/17 74/10 79/2
what-have-you [1]   58/19
whatever [8]   6/2 6/2 11/23
  61/20 67/7 68/18 68/18 74/4
whatsoever [1]   52/10
wheelchairs [1]   2/25
when [26]   11/1 13/6 17/3 17/18
  18/14 18/16 21/1 22/12 22/18
  30/8 31/2 35/4 37/24 40/18 41/3
  44/14 44/21 46/16 46/19 48/19
  54/7 54/17 55/4 56/3 56/14
  76/18
whenever [2]   12/4 48/22

where [44]   6/9 6/12 9/20 10/4
  14/1 14/10 14/20 15/13 16/21
  16/25 17/21 18/4 18/5 19/2
  23/24 26/16 26/23 30/24 31/10
  35/8 36/14 36/16 36/20 38/14
  39/6 41/25 43/10 44/7 51/25
  56/24 60/6 63/17 63/18 64/23
  65/1 66/5 67/4 69/8 70/2 70/20
  70/25 72/11 76/8 79/6
whereby [1]   70/18
whether [19]   6/11 8/19 29/9
  32/18 35/12 37/3 42/18 47/18
  52/4 56/25 57/3 58/18 61/7
  61/25 62/1 64/19 68/20 72/2
  76/2
which [47]   4/23 13/4 15/1 15/22
  17/20 18/3 19/19 20/5 20/6 20/7
  20/20 21/14 21/16 21/17 21/23
  27/2 27/7 29/20 31/17 35/3 38/2
  40/9 40/10 40/17 41/11 44/16
  45/14 49/20 51/21 53/16 54/17
  56/22 57/18 60/20 64/16 66/10
  66/16 67/5 71/5 71/7 71/9 75/13
  75/17 76/10 76/16 77/3 78/20
while [6]   4/6 39/14 54/5 55/2
  65/16 70/1
who [22]   10/23 14/14 26/17 28/6
  45/2 45/12 48/16 49/21 50/6
  50/10 53/10 53/10 53/15 53/22
  54/16 59/8 59/24 63/24 65/22
  68/5 72/3 72/10
who's [2]   3/18 68/7
Whoa [1]   78/8
whoever [2]   30/14 32/13
whole [3]   28/24 31/3 48/14
whom [1]   45/6
why [15]   3/11 3/12 8/7 11/6
  11/8 15/17 19/13 26/21 47/17
  58/20 68/17 68/19 70/8 71/10
  79/6
wide [1]   71/11
will [16]   3/25 13/5 16/9 17/9
  28/11 29/9 39/6 40/10 44/6 45/1
  55/8 59/1 62/5 62/7 62/13 67/19
willing [1]   23/19
wiped [1]   5/13
wish [1]   33/14
withdrawn [1]   56/4
withdraws [1]   52/6
within [7]   12/20 41/12 52/15
  52/23 54/15 54/21 56/5
without [10]   5/5 7/2 7/2 23/7
  34/10 65/16 70/19 72/20 73/23
  74/1
woefully [2]   4/15 11/17
won't [1]   73/15
wondering [1]   17/10
word [2]   40/1 40/8
words [5]   20/19 43/15 55/4 67/1
  72/15
work [2]   30/7 39/14
working [4]   30/10 34/7 53/5
  66/18
works [2]   48/25 49/1
world [1]   58/17
worthy [1]   37/4
would [105]
wouldn't [25]   3/15 3/16 5/9 7/4
  8/4 8/5 12/18 20/1 23/6 23/13
  26/21 31/14 33/24 37/4 42/8
  61/9 61/21 72/16 72/18 72/23
  74/4 74/15 76/11 76/19 78/24

write [3]   6/19 49/14 54/23
writing [7]   43/7 45/14 45/24
  49/12 51/21 52/23 59/14
written [1]   55/5
wrong [5]   5/16 12/8 27/14 27/14
  31/24
wrongly [1]   40/14
wrote [1]   25/18

**Y**

Yeah [3]   38/14 71/3 77/16
year [5]   13/15 21/17 41/18 45/4
  61/8
years [12]   34/7 34/10 38/2
  44/15 51/16 51/19 51/20 53/9
  53/13 65/4 66/17 76/21
yelling [1]   63/10
Yells [1]   53/8
Yep [1]   50/12
yes [22]   4/1 14/17 18/8 26/10
  28/1 29/2 32/16 35/2 35/18
  35/25 37/20 42/25 43/24 44/25
  48/3 50/15 50/20 61/6 61/14
  71/24 74/21 79/3
yet [5]   16/16 43/7 44/24 70/11
  73/1
YOLANDA [2]   1/3 2/3
York [8]   53/4 68/23 75/14 75/17
  75/18 76/10 77/13 77/20
York's [1]   76/21
you [167]
you'd [2]   10/16 23/17
you'll [1]   64/17
you're [53]   5/3 5/15 6/5 6/17
  7/1 8/1 8/12 8/14 9/3 9/7 10/15
  10/18 12/9 12/11 13/3 13/4 14/4
  17/21 23/16 23/18 25/2 29/25
  30/17 32/17 34/14 36/3 36/22
  37/7 37/11 37/12 40/2 47/4 48/1
  48/2 48/5 48/6 48/7 52/16 57/3
  58/5 58/11 60/18 60/22 64/17
  66/24 66/25 70/22 72/15 74/7
  75/19 76/5 76/10 76/25
you've [13]   7/19 12/7 13/24
  14/18 15/22 22/18 22/19 26/12
  29/7 29/8 29/9 30/13 38/9
your [143]
Your Honor [83]
yourself [2]   3/23 39/24
yourselves [1]   2/6

**Z**

Zitter [12]   34/6 34/6 38/20
  50/10 51/13 51/15 53/9 55/19
  55/23 56/1 56/8 65/13
Zweizig [3]   1/23 79/14 79/18